IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

IN RE: INTERIOR MOLDED DOORS
INDIRECT PURCHASER ANTITRUST
LITIGATION

Lead Civil Action No. 3:18-cv-00850-JAG

## OPINION

In this consolidated class action, the plaintiffs contend that Masonite Corporation and JELD-WEN, Inc., unlawfully conspired to fix prices in the market for interior molded doors ("IMDs"). The plaintiffs[1] allege that they bought IMDs at inflated prices indirectly from the defendants through distributors. The plaintiffs seek injunctive relief under the Sherman Act and damages under various state antitrust, consumer protection, and unjust enrichment laws.

The defendants previously moved to dismiss the plaintiffs' consolidated class action complaint (the "initial complaint") for failure to state a claim. Although the Court allowed many of the plaintiffs' claims to proceed, the Court dismissed the claims under the laws of twenty-five states for lack of Article III standing. The plaintiffs have since filed an amended consolidated class action complaint (the "amended complaint"), adding new named plaintiffs to revive several of the previously dismissed state law claims. The defendants have now moved to dismiss some of the revived claims in the amended complaint. For the reasons set forth below, the Court will grant in part and deny in part the motion to dismiss.

---

[1] Groups of consumers have filed two consolidated class actions based on the same price-fixing allegations: this case brought by indirect purchaser plaintiffs and another case brought by direct purchaser plaintiffs. *See In re: Interior Molded Doors Antitrust Litig.*, No. 3:18-cv-718. Because this Opinion only addresses state law claims asserted by the indirect purchaser plaintiffs, the Court will refer to the indirect purchaser plaintiffs as "the plaintiffs."

# I. **BACKGROUND**[2]

In the initial complaint, the plaintiffs asserted claims under the laws of twenty-five states where no named plaintiff lived or suffered harm.  Because the plaintiffs could not show that they sustained an injury in those states, the Court held that they lacked Article III standing to pursue their claims under those states' laws.  Thus, the Court dismissed the claims under the laws of Alabama, Alaska, Colorado, Connecticut, the District of Columbia, Hawaii, Idaho, Iowa, Kansas, Maine, Maryland, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, North Dakota, Rhode Island, South Dakota, Utah, Vermont, Virginia, West Virginia, and Wisconsin. (*Id.* at 23.)  With the Court's permission, the plaintiffs filed the amended complaint to revive several of the previously dismissed state law claims.  (*See* Dk. No. 134.)

The amended complaint added new named plaintiffs who were residents of or sustained an injury in some of the above states (the "new plaintiffs").  The defendants have now moved to dismiss the following claims of the new plaintiffs in the amended complaint: (1) the New Hampshire consumer protection claim; (2) the Utah consumer protection claim; (3) the Maine antitrust claim; (4) the West Virginia consumer protection claim; (5) the Utah consumer protection claim of named plaintiff Collin Salazar Real Estate LLC; and (6) the new plaintiffs' damages claims outside the relevant statutes of limitations.[3]

---

[2] The Court set forth the plaintiffs' factual allegations and the background of this case in detail in its Opinion on the defendants' motion to dismiss the initial complaint.  (*See* Dk. No. 106, at 2-6.)

[3] The defendants also moved to dismiss the new plaintiffs' New Hampshire antitrust claim, the Virginia consumer protection claim, and the Kansas consumer protection claim.  (*See* Dk. No. 143, at 1.)  In their opposition brief, the plaintiffs voluntarily dismissed their Virginia and Kansas consumer protection claims.  (Dk. No. 148, at 5, 9.)  In their reply brief, the defendants withdrew their motion to dismiss the New Hampshire antitrust claim.  (Dk. No. 157, at 1.)

## II. <u>DISCUSSION</u>[4]

### A. *New Hampshire Consumer Protection Claim*

The New Hampshire Consumer Protection Act ("NHCPA") prohibits "any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce *within this state*." N.H. Rev. Stat. § 358-A:2 (emphasis added)); (*see* Am. Compl. ¶ 234.) The defendants argue that the NHCPA requires the plaintiffs to plead that the alleged anticompetitive conduct took place within New Hampshire's borders. The plaintiffs acknowledge that they do not allege any intrastate conduct, but they insist that the NHCPA's broad scope encompasses anticompetitive conduct with indirect effects on New Hampshire consumers.

The New Hampshire Supreme Court has not decided whether the NHCPA applies to anticompetitive conduct that takes place outside the state's borders. In *LaChance v. U.S. Smokeless Tobacco Co.*, 931 A.2d 571 (N.H. 2007), however, the court considered whether indirect purchaser plaintiffs could assert antitrust-type claims under the NHCPA. Holding that the NHCPA's "broad sweep" encompasses such claims, the court explained that the plaintiffs sufficiently stated a claim under the NHCPA by alleging "conduct which was part of trade or commerce that had direct or indirect effects on the people of [New Hampshire]." *Id.* at 578.

---

[4] The defendants have moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). A Rule 12(b)(6) motion gauges the sufficiency of a complaint without resolving any factual discrepancies or testing the merits of the claims. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering the motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)). The principle that a court must accept all allegations as true, however, does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a Rule 12(b)(6) motion to dismiss, a complaint must state facts that, when accepted as true, state a claim to relief that is plausible on its face. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

Here, the plaintiffs assert that the defendants fixed the prices of IMDs, which "were sold, distributed[,] or obtained in New Hampshire." (Am. Compl. ¶ 234(a).) Thus, the plaintiffs contend that the defendants engaged in "conduct that was part of trade or commerce that, at the very least, had indirect effects on the New Hampshire market and its residents." *In re Chocolate Confectionary Antitrust Litig.*, 749 F. Supp. 2d 224, 235 (M.D. Pa. 2010) (holding that plaintiffs need not allege intrastate anticompetitive conduct to state a claim under the NHCPA). In light of the statute's "broad sweep," *LaChance*, 931 A.2d at 578, the plaintiffs allege sufficient facts to state a claim under the NHCPA.[5] Accordingly, the Court will deny the motion to dismiss the New Hampshire consumer protection claim.

### B.  Utah Consumer Protection Claim

The Utah Consumer Sales Practices Act ("UCSPA") prohibits "unconscionable act[s] or practice[s]." Utah Code § 13-11-5; (*see* Am. Compl. ¶ 239.) The plaintiffs allege that the defendants' anticompetitive conduct "raised, fixed, maintained, and stabilized" prices for IMDs "at artificially high levels," and that Utah residents "were deprived of free and open competition" and "paid supracompetitive, artificially inflated prices" for IMDs. (Am. Compl. ¶ 239(a).) The defendants argue that the plaintiffs do not allege any "unconscionable" conduct as the UCSPA requires. Utah Code § 13-11-5.

---

[5] *See In re Zetia (Ezetimibe) Antitrust Litig.*, No. 2:18md2836, 2019 WL 1397228, at *32 (E.D. Va. Feb. 6, 2019), *report & recommended adopted as modified by* 400 F. Supp. 3d 418 (2019) ("[T]he clear trend is to broadly construe . . . 'intrastate' pleading requirements to include allegations of causing substantial harm to in-state residents."); *accord In re Packaged Seafood Prods. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1082 (S.D. Cal. 2017) ("In the absence of state authority to the contrary, the Court cannot ignore both *LaChance* and the plain meaning of the statute."). *But see In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-2420 YGR, 2014 WL 4955377, at *22 (N.D. Cal. Oct. 2, 2014) ("[N]umerous federal district courts seated within and without New Hampshire have acknowledged that the [NHCPA] requires the proscribed conduct to occur within the state; merely selling a good in New Hampshire is not enough when the proscribed conduct occurs elsewhere.").

To support their argument that the UCSPA broadly covers unfair trade practices, the plaintiffs point to the UCSPA's Federal Trade Commission ("FTC") Act harmonization provision.[6] But the UCSPA's FTC Act harmonization provision "lacks the broad 'unfair competition' language on which federal courts have relied in extending [the FTC Act] to cover price-fixing." *Zetia*, 2019 WL 1397228, at *32 (citing *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1117 (N.D. Cal. 2007)).

Thus, the plaintiffs must plead facts constituting unconscionable conduct. *See* Utah Code § 13-11-5. The plaintiffs' allegations do not meet that standard. Indeed, the plaintiffs allege that they bought IMDs from third parties, so they never bargained directly with the defendants. *See Zetia*, 2019 WL 1397228, at *32 (noting that Utah courts interpret "unconscionable" conduct under the UCSPA using contract law definitions). Accordingly, the Court will grant the motion to dismiss the Utah consumer protection claim.[7]

### C. Maine Antitrust Claim

Maine's antitrust statute prohibits "[c]ontract[s] . . . or conspirac[ies] in restraint of trade *in this State*." Me. Rev. Stat. Ann. tit. 10 § 1101 (emphasis added); (*see* Am. Compl. ⁋ 211.) The plaintiffs allege that named plaintiff Richard Ranalli, a Maine resident, suffered an injury when he traveled to New Hampshire to buy an IMD. (Am. Compl. ⁋ 39.) The defendants argue the plaintiffs cannot state a claim under Maine's antitrust statute based on a transaction that took place outside Maine.

---

[6] In its Opinion on the defendants' motion to dismiss the initial complaint, the Court declined to dismiss many of the plaintiffs' consumer protection claims if the relevant state statute contained an FTC Act harmonization provision. (*See* Dk. No. 106, at 36-38)

[7] Because the Court will dismiss the Utah consumer protection claim, the Court need not reach the defendants' alternative arguments regarding the Utah consumer protection claim of named plaintiff Collin Salazar Real Estate LLC. (*See* Dk. No. 157, at 6 n.5.)

The plaintiffs plead sufficient facts to state a claim under Maine's antitrust statute.  The plaintiffs assert that a Maine resident suffered an injury based on the defendants' alleged anticompetitive conduct.  Thus, the plaintiffs' allegations here differ from cases in which plaintiffs assert a claim under Maine's antitrust statute without including a Maine resident who suffered an injury as a named plaintiff.  *Cf. In re Pre-Filled Propane Tank Antitrust Litig.*, No. 14-02567-MD-W-GAF, 2016 WL 6963059, at \*7 (W.D. Mo. Jan. 13, 2016) (dismissing a Maine antitrust claim for lack of antitrust standing because none of the named plaintiffs "were residents of *or* made purchases in Maine" (emphasis added)).  The Court, therefore, will deny the motion to dismiss the Maine antitrust claim.

### D.  West Virginia Consumer Protection Claim

The West Virginia Consumer Credit and Protection Act ("WVCCPA") prohibits "unfair methods of competition or deceptive acts or practices in the conduct of any trade or commerce." W. Va. Code § 46A-6-104; (*see* Am. Compl. ¶ 241.)  The WVCCPA creates a private cause of action for "any *person* who purchases . . . goods or services and thereby suffers an ascertainable loss of money or property . . . as a result of the use . . . by another person of a method, act or practice prohibited or declared to be unlawful" by the WVCCPA.  W. Va. Code § 46A-6-106(a) (emphasis added).  The statute's general definitions provision defines a "person" as "a natural person or an individual, and an organization."  *Id.* § 46A-1-102(31).  The statute further defines an "organization" as "a corporation, government or governmental subdivision or agency, trust, estate, partnership, cooperative[,] or association."  *Id.* § 46A-1-102(29).

The defendants argue that the West Virginia-based corporate named plaintiff, Albert Magnone Contracting & Remodeling ("Albert Magnone"), does not qualify as a "consumer" and

that the plaintiffs failed to plead a "consumer transaction" under the WVCCPA.[8]   "Nowhere in [the WVCCPA] does it state that only consumers may bring such claims or that they must involve consumer transactions." *Wilson v. MRO Corp.*, No. 2:16-5279, 2017 WL 2608541, at *7 (S.D. W. Va. June 15, 2017) (citing W. Va. Code § 46A-6-106).   Moreover, the current version of § 46A-6-106, which became effective in 2015, "replaced all references to 'consumer' with 'person.'" *Id.*; *see also Midwestern Midget Football Club, Inc. v. Riddell, Inc.*, No. 2:15-00244, 2015 WL 4727438 (S.D. W. Va. Aug. 10, 2015) (discussing the amendments to § 46A-6-106 and concluding that a corporate plaintiff qualified as a "person" under the WVCCPA).

Because plaintiffs need not qualify as "consumers" or plead a "consumer transaction" to state a claim under the WVCCPA, the corporate named plaintiff here—Albert Magnone—asserts a valid claim.   Accordingly, the Court will deny the motion to dismiss the West Virginia consumer protection claim.

### E. Damages Claims of the New Plaintiffs Outside the Statute of Limitations

As noted above, the Court previously dismissed many of the plaintiffs' claims in the initial complaint under the laws of twenty-five states for lack of Article III standing.   The plaintiffs now try to revive some of those claims in their amended complaint.   Specifically, the amended complaint added new plaintiffs who raise claims under the laws of Hawaii, Kansas, Maine, New Hampshire, North Dakota, Utah, Virginia, West Virginia, and Wisconsin.

---

[8] The defendants cite the definitions of "consumer" and "consumer transaction" in the definitions provision under Article 6 of the statute.   *See id.* § 46A-6-102(2) (defining "consumer" as "a natural person to whom a sale or lease is made in a consumer transaction" and a "consumer transaction" as "a sale or lease to a natural person or persons for a personal, family, household or agricultural purpose"); *see also Any Occasion, LLC v. Florists' Transworld Delivery, Inc.*, No. 5:10cv44, 2010 WL 3584411, at *2 (N.D. W. Va. Sept. 13, 2010) (dismissing a claim under the WVCCPA for failing to plead a "consumer transaction" as defined in § 46A-6-102(2)).

The defendants have moved to dismiss the damages claims of the new plaintiffs outside the relevant statutes of limitations, arguing that those claims do not relate back to the filing of the initial complaint. The defendants contend that "[a] claim that was dismissed due to the absence of standing cannot be a placeholder to save claims that are otherwise untimely." (Dk. No. 143, at 9-10.) The plaintiffs argue that the new plaintiffs' claims in the amended complaint relate back to the filing of the initial complaint, or in the alternative, that the doctrine of equitable tolling saves their untimely claims.

*1. Relation Back*

Federal Rule of Civil Procedure 15(c) allows an amended complaint to relate back to the filing of the initial complaint when an "amendment changes the party or the naming of the party against whom a claim is asserted." Fed. R. Civ. P. 15(c). "The attitude taken in . . . Rule 15(c) toward change of defendants extends by analogy to amendments changing plaintiffs." Rule 15(c) advisory committee's note. "Where an amended pleading changes a party or a party's name, the Rule requires . . . that the party to be brought in by amendment . . . knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 541 (2010).

Mindful that "[c]ourts are split regarding the appropriate stage of a lawsuit to consider Article III standing in this context," (Dk. No. 106, at 20), the Court granted the plaintiffs leave to amend their complaint to add new plaintiffs to revive some of the previously dismissed claims. (*See* Dk. Nos. 122, 131.) The plaintiffs now argue that the new plaintiffs' claims in the amended complaint should relate back to the initial complaint for purposes of the statutes of limitations. But claims in an amended complaint cannot relate back to claims in an initial complaint over which the Court never had jurisdiction.

8

A recent decision from the U.S. Court of Appeals for the Second Circuit demonstrates this principle. *See Police & Fire Ret. Sys. of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 111 (2d Cir. 2013). In that case, the district court consolidated two securities class actions and appointed a lead plaintiff for the consolidated case. Because the operative complaint in the consolidated case raised claims on behalf of other class members who were not named plaintiffs, the district court dismissed those claims for lack of standing. Shortly thereafter, putative class members moved to intervene to revive the dismissed claims. Because the three-year statute of repose had run on their claims, the intervenors argued that their claims related back to the filing of the operative complaint.

The district court denied the motion to intervene, holding that the intervenors' claims did not relate back to the operative complaint and were not subject to tolling under *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974).[9] The Second Circuit affirmed, holding "that the Rule 15(c) 'relation back' doctrine does not permit members of a putative class, who are not named parties, to intervene in the class action as named parties in order to revive claims that were dismissed from the class complaint for want of jurisdiction." *IndyMac*, 721 F.3d at 110. The court cited "the 'long recognized' rule that 'if jurisdiction is lacking at the commencement of a suit, it cannot be aided by the intervention of a plaintiff with a sufficient claim.'" *Id.* (quoting *Disability Advocates, Inc. v. N.Y. Coal. for Quality Assisted Living, Inc.*, 675 F.3d 149, 160 (2d Cir. 2012)).[10]

---

[9] Under *American Pipe*, "the timely filing of a class action tolls the applicable statute of limitations for all persons encompassed by the class complaint." *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1804 (2018). Here, the plaintiffs concede that they cannot invoke *American Pipe* tolling. (*See* Dk. No. 148, at 14). Indeed, "where a Plaintiff lacks standing—there is no case . . . . And if there is no case, there can be no tolling." *N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*, 08-cv-5653, 2010 WL 6508190, at *2 (S.D.N.Y. Dec. 15, 2010) (citation omitted).

[10] *See also Morlan v. Universal Guar. Life Ins. Co.*, 298 F.3d 609, 616 (7th Cir. 2002) ("[U]ntil certification, the jurisdiction of the district court depends upon its having jurisdiction over the claim of the named plaintiffs when the suit is filed and continuously thereafter until

Similarly, in this case, the named plaintiffs in the initial complaint lacked standing to assert the claims that the new plaintiffs now raise in the amended complaint.  Thus, the Court never had jurisdiction over the new plaintiffs' claims until the new plaintiffs joined this litigation in the amended complaint.  In short, the new plaintiffs' claims cannot "relate back" to placeholder claims in the initial complaint over which the Court lacked jurisdiction.  *See id.*[11]

Accordingly, the new plaintiffs' claims under the laws of Hawaii, Kansas, Maine, New Hampshire, North Dakota, Utah, Virginia, West Virginia, and Wisconsin cannot relate back to the filing of the initial complaint.

## 2.  *Equitable Tolling*

In the alternative, the plaintiffs invoke the doctrine of equitable tolling.  In the Fourth Circuit, courts equitably toll the statute of limitations "when (1) a defendant wrongfully prevents a plaintiff from asserting [the plaintiff's] claims, or (2) extraordinary circumstances beyond the plaintiff's control prevent [the plaintiff] from filing on time."  *Ott v. Md. Dep't of Pub. Safety & Corr. Servs.*, 909 F.3d 655, 660-61 (4th Cir. 2018).  "Equitable tolling is appropriate 'in those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result.'"

---

certification, . . . because until certification there is no class action but merely the prospect of one; the only action is the suit by the named plaintiffs." (internal citation omitted)).

[11]  The Supreme Court's recent decision in *China Agritech* supports this conclusion. Clarifying the scope of *American Pipe* tolling, the Court held that that "*American Pipe* does not permit a plaintiff who waits out the statute of limitations to piggyback on an earlier, timely filed class action." *China Agritech*, 138 S. Ct. at 1806.  Although the tolling request in *China Agritech* arose in a different procedural posture than the plaintiffs' request here, its reasoning supports the Court's conclusion that the plaintiffs cannot invoke "relation back" under Rule 15(c).  *See id.* (expressing concern about "allow[ing] the statute of limitations to be extended time and again" and "[e]ndless tolling of a statute of limitations").

*Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 549 (4th Cir. 2019) (quoting *Whiteside v. United States*, 775 F.3d 180, 184 (4th Cir. 2014) (en banc)).

In this case, the plaintiffs have failed to show any "extraordinary circumstances" to justify tolling the statutes of limitations. The plaintiffs assert that "putative class members justifiably believed that their interest[s] were protected by other named class members and joined the case immediately upon learning that interests were not protected." (Dk. No. 148, at 14.) But the plaintiffs were well aware of the unsettled nature of the law on Article III standing in antitrust class actions when they asserted state law claims in the initial complaint without a named representative who suffered any harm in those states. They also knew that the Court could ultimately fall on either side of the debate. Indeed, a party's "misconception about the operation of the statute of limitations is neither extraordinary nor a circumstance external to [the party's] control." *United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004). Thus, the plaintiffs cannot invoke the doctrine of equitable tolling.

In sum, the new plaintiffs' claims did not relate back to the initial complaint and the doctrine of equitable tolling does not apply. Accordingly, the Court will dismiss the new plaintiffs' damages claims outside the relevant statutes of limitations.[12]

### III. CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part the defendants' motion to dismiss. Specifically, the Court will dismiss the following claims with prejudice: the Kansas consumer protection claim; the Utah consumer protection claim; the Virginia consumer protection claim; and the damages claims outside the applicable statutes of limitations under the

---

[12] The defendants listed the applicable cut-off dates in chart form in their brief in support of their partial motion to dismiss. (*See* Dk. No. 143, at 11-12.)

laws of Hawaii, Kansas, Maine, New Hampshire, North Dakota, Utah, Virginia, West Virginia, and Wisconsin.

The Court will issue an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: <u>4 May 2020</u>
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge