# EXHIBIT 7

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| IN RE: AUTOMOTIVE PARTS | : | |
| ANTITRUST LITIGATION | : | Master File No. 12-md-02311 |
| | : | |
| PRODUCT(S): | : | |
| | : | |
| In Re: Instrument Panel Clusters | : | 2:12-cv-00202 |
| In Re: Heater Control Panels | : | 2:12-cv-00402 |
| In Re: Bearings | : | 2:12-cv-00502 |
| In Re: Occupant Safety Restraint Systems | : | 2:12-cv-00602 |
| In Re: Radiators | : | 2:13-cv-01002 |
| In Re: Automotive Lamps | : | 2:13-cv-01202 |
| In Re: Switches | : | 2:13-cv-01302 |
| In Re: Ignition Coils | : | 2:13-cv-01402 |
| In Re: Steering Angle Sensors | : | 2:13-cv-01602 |
| In Re: Hid Ballasts | : | 2:13-cv-01702 |
| In Re: Electric Powered Steering Assemblies | : | 2:13-cv-01902 |
| In Re: Fuel Injection Systems | : | 2:13-cv-02202 |
| In Re: Automatic Transmission Fluid Warmers | : | 2:13-cv-02402 |
| In Re: Valve Timing Control Devices | : | 2:13-cv-02502 |
| In Re: Air Conditioning Systems | : | 2:13-cv-02702 |
| In Re: Constant Velocity Joint Boot Products | : | 2:14-cv-02902 |
| In Re: Spark Plugs | : | 2:15-cv-03002 |
| In Re: Automotive Hoses | : | 2:15-cv-03202 |
| In Re: Shock Absorbers | : | 2:16-cv-03302 |
| In Re: Body Sealing Products | : | 2:16-cv-03402 |
| In Re: Interior Trim Products | : | 2:16-cv-03502 |
| In Re: Brake Hoses | : | 2:16-cv-03602 |
| In Re: Exhaust Systems | : | 2:16-cv-03702 |
| In Re: Ceramic Substrates | : | 2:16-cv-03802 |
| In Re: Power Window Switches | : | 2:16-cv-03902 |
| In Re: Automotive Steel Tubes | : | 2:16-cv-04002 |
| In Re: Access Mechanisms | : | 2:16-cv-04102 |
| In Re: Side Door Latches | : | 2:17-cv-04302 |
| | : | |
| This Document Relates to: | : | Hon. Marianne O. Battani |
| ALL DEALERSHIP ACTIONS | : | |
| | : | |

**AUTO DEALERS' MOTION FOR FINAL APPROVAL OF SETTLEMENTS**
**(ROUND FOUR) WITH CERTAIN DEFENDANTS AND FOR CERTIFICATION**
**OF SETTLEMENT CLASSES**

Pursuant to Rules 23 and 54 of the Federal Rules of Civil Procedure, the Interim Co-Lead Counsel for the Auto Dealers will move the Court for an Order granting final approval to settlements reached with certain of the Defendants, certifying settlement classes in the settlements, and the appoint settlement class counsel and settlement class representatives. The Auto Dealers will also seek entry of final judgment, pursuant to Rule 65 of the Federal Rules of Civil Procedure, in the cases for which final approval is sought against certain Defendants.

Dated: December 6, 2019.

By: */s/ Gerard V. Mantese*
Gerard V. Mantese (P34424)
**MANTESE HONIGMAN, P.C.**
1361 E. Big Beaver Road
Troy, MI 48083
Telephone: (248) 457-9200 Ext. 203
Facsimile: (248) 457-9201
gmantese@manteselaw.com

*Interim Liaison Counsel for the Automobile Dealer Plaintiffs*

Jonathan W. Cuneo
**CUNEO GILBERT & LADUCA, LLP**
4725 Wisconsin Ave., NW
Suite 200
Washington, DC 20016
Telephone: (202) 789-3960
Facsimile: (202) 789-1813
jonc@cuneolaw.com

Don Barrett
**BARRETT LAW GROUP, P.A**.
P.O. Box 927
404 Court Square
Lexington, MS 39095
Telephone: (662) 834-2488
Facsimile: (662)834.2628
dbarrett@barrettlawgroup.com

Shawn M. Raiter
**LARSON KING, LLP**
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
Telephone: (651) 312-6500
Facsimile: (651) 312-6618
sraiter@larsonking.com

*Interim Co-Lead Counsel for the Automobile Dealer Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I, Gerard V. Mantese, hereby certify that I caused a true and correct copy of **Auto Dealers' Motion for Final Approval of Settlements (Round Four) With Certain Defendants and for Certification of Settlement Classes** to be served via e-mail upon all registered counsel of record via the court's cm/ECF system on **December 6, 2019.**

    */s/ Gerard V. Mantese*
    Gerard V. Mantese

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE: AUTOMOTIVE PARTS | : | |
| ANTITRUST LITIGATION | : | Master File No. 12-md-02311 |
| | : | |
| PRODUCT(S): | : | |
| | : | |
| In Re: Instrument Panel Clusters | : | 2:12-cv-00202 |
| In Re: Heater Control Panels | : | 2:12-cv-00402 |
| In Re: Bearings | : | 2:12-cv-00502 |
| In Re: Occupant Safety Restraint Systems | : | 2:12-cv-00602 |
| In Re: Radiators | : | 2:13-cv-01002 |
| In Re: Automotive Lamps | : | 2:13-cv-01202 |
| In Re: Switches | : | 2:13-cv-01302 |
| In Re: Ignition Coils | : | 2:13-cv-01402 |
| In Re: Steering Angle Sensors | : | 2:13-cv-01602 |
| In Re: Hid Ballasts | : | 2:13-cv-01702 |
| In Re: Electric Powered Steering Assemblies | : | 2:13-cv-01902 |
| In Re: Fuel Injection Systems | : | 2:13-cv-02202 |
| In Re: Automatic Transmission Fluid Warmers | : | 2:13-cv-02402 |
| In Re: Valve Timing Control Devices | : | 2:13-cv-02502 |
| In Re: Air Conditioning Systems | : | 2:13-cv-02702 |
| In Re: Constant Velocity Joint Boot Products | : | 2:14-cv-02902 |
| In Re: Spark Plugs | : | 2:15-cv-03002 |
| In Re: Automotive Hoses | : | 2:15-cv-03202 |
| In Re: Shock Absorbers | : | 2:16-cv-03302 |
| In Re: Body Sealing Products | : | 2:16-cv-03402 |
| In Re: Interior Trim Products | : | 2:16-cv-03502 |
| In Re: Brake Hoses | : | 2:16-cv-03602 |
| In Re: Exhaust Systems | : | 2:16-cv-03702 |
| In Re: Ceramic Substrates | : | 2:16-cv-03802 |
| In Re: Power Window Switches | : | 2:16-cv-03902 |
| In Re: Automotive Steel Tubes | : | 2:16-cv-04002 |
| In Re: Access Mechanisms | : | 2:16-cv-04102 |
| In Re: Side Door Latches | : | 2:17-cv-04302 |
| | : | |
| This Document Relates to: | : | Hon. Marianne O. Battani |
| ALL DEALERSHIP ACTIONS | : | |
| | : | |

## AUTO DEALERS' MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENTS (ROUND FOUR) WITH CERTAIN DEFENDANTS AND FOR CERTIFICATION OF SETTLEMENT CLASSES

Gerard V. Mantese (P34424)
**Mantese Honigman, P.C.**
1361 E. Big Beaver Road
Troy, MI 48083
Telephone: (248) 457-9200 Ext. 203
gmantese@manteselaw.com

*Interim Liaison Counsel For The Automobile*
*Dealer Plaintiffs*

Jonathan W. Cuneo
**Cuneo Gilbert & Laduca, LLP**
4725 Wisconsin Ave., NW
Suite 200
Washington, DC 20016
Telephone: (202) 789-3960
jonc@cuneolaw.com

Don Barrett
**Barrett Law Group, P.A.**
P.O. Box 927
404 Court Square
Lexington, MS 39095
Telephone: (662) 834-2488
dbarrett@barrettlawgroup.com

Shawn M. Raiter
**Larson King, LLP**
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
Telephone: (651) 312-6500
Facsimile: (651) 312-6618
sraiter@larsonking.com

*Interim Co-Lead Counsel for the Automobile Dealer Plaintiffs*

## Statement of the Issues Presented

1. Whether the Round Four settlements between the Auto Dealer Plaintiffs and certain Defendants are fair, reasonable, and adequate and should be granted final approval under Fed. R. Civ. P. 23?

   **Answer: Yes**

2. Whether the Court should grant final certification to the Auto Dealer settlement classes it previously conditionally certified?

   **Answer: Yes**

## Controlling or Most Appropriate Authorities

*Griffin v. Flagstar Bancorp, Inc.*, No. 2:10-cv-10610, 2013 WL 6511860 (E.D. Mich. Dec. 12, 2013)

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003)

*In re Cardizem CD Antitrust Litig.*, No. 08-MD-01952, 2011 WL 717519 (E.D. Mich. Feb. 22, 2011)

*In re Scrap Metal Antitrust Litig.*, 527 F.3d 517 (6th Cir. 2008)

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838 (6th Cir. 2013)

*Sheick v. Auto. Component Carrier LLC*, No. 09—CV-14429, 2010 WL 4136958 (E.D. Mich. Oct. 18, 2010)

*Sprague v. Gen. Motors Corp.*, 133 F.3d 388 (6th Cir. 1998)

*UAW v. General Motors Corp.*, 497 F.3d 615 (6th Cir. 2007)

## Table of Contents

**Page**

Introduction ...................................................................................................................... 1

Background ........................................................................................................................ 2

   I.     The Administration of Prior Settlement Rounds ................................................ 2

   II.    The Round Four Settlements Provide Substantial Benefits to Auto Dealers .... 3

         A.    Cash Benefits ................................................................................................ 3

         B.    Cooperation and Other Terms .................................................................. 7

   II.    The Notice Plan was Carried Out and Provided Adequate
        Notice of the Settlements .................................................................................... 7

   III.   The Reaction of Settlement Class Members was Positive ................................. 8

Legal Standard ................................................................................................................... 9

Argument .......................................................................................................................... 11

   I.     The Settlements are Fair, Reasonable, and Adequate and Should be Given
        Final Approval ..................................................................................................... 11

         A.    The Likelihood of the Auto Dealers' Success on the Merits Weighed
              Against the Relief Offered in the Settlements Supports Approval ....... 12

         B.    The Complexity, Expense, and Likely Duration of Continued
              Litigation Favor Final Approval .............................................................. 15

         C.    The Judgment of Experienced Counsel Who Have Evaluated the
              Strength of the Claims, Defenses, and Risks Supports Approval ......... 15

         D.    Class Member Reaction ............................................................................. 17

         E.    The Public Interest Supports Granting Final Approval to the
              Settlements ................................................................................................. 18

         F.    The Settlements are not the Product of Collusion ................................. 18

II.      Notice of the Settlements was Proper Under Rule 23 and Met Due Process Requirements ................................................................................................19

         A.      There Were No Objections to the Notice Content or Plan .................20

         B.      Timing of CAFA Notices and Final Approval Orders .........................21

III.     Certification of Settlement Classes is Appropriate ................................................21

         A.      The Auto Dealer Settlement Classes Satisfy Rule 23(a) .........................21

                 1.      The Settlement Classes are Numerous .........................................22

                 2.      Common Questions of Law and Fact Exist ................................22

                 3.      Auto Dealer Plaintiffs' Claims are Typical of Those of the Settlement Class .........................................................................23

                 4.      Auto Dealer Class Representatives and Their Counsel Have Fairly and Adequately Protected the Interests of the Settlement Class Members .........................................................................24

         B.      Automobile Dealer Plaintiffs' Claims Satisfy the Prerequisites of Rule 23(b)(3) for Settlement Purposes ...........................................................25

                 1.      Common Legal and Factual Questions Predominate .................25

                 2.      Class Action Settlements Are Superior to the Other Methods of Adjudication .........................................................................26

IV.      The Court Should Appoint Settlement Class Counsel and Auto Dealer Class Representatives ...........................................................................................27

Conclusion .................................................................................................................28

# Table of Authorities

**Page(s)**

## Cases

*Amchem Prod., Inc. v. Windsor,*
    521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997)............................................20, 21, 25

*Beattie v. CenturyTel, Inc.,*
    511 F.3d 554 (6th Cir. 2007)..............................................................................................25

*Carlough v. Amchem Prod., Inc.,*
    158 F.R.D. 314 (E.D. Pa. 1993) ........................................................................................20

*Carson v. Am. Brands, Inc.,*
    450 U.S. 79, 101 S. Ct. 993, 67 L. Ed. 2d 59 (1981) ........................................................11

*Date v. Sony Elecs., Inc.,*
    No. 07-15474, 2013 WL 3945981 (E.D. Mich. July 31, 2013)................................16, 22, 23

*Dick v. Sprint Comm'ns Co. L.P.,*
    297 F.R.D. 283 (W.D. Ky. 2014) ................................................................................10, 15

*Eisen v. Carlisle & Jacquelin,*
    417 U.S. 156, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974) ...............................................19, 20

*Exclusively Cats Veterinary Hosp. v. Anesthetic Vaporizer Servs., Inc.,*
    No. CIV.A. 10-10620, 2010 WL 5439737 (E.D. Mich. Dec. 27, 2010)..............................22

*Fidel v. Farley,*
    534 F.3d 508 (6th Cir. 2008)..............................................................................................20

*Girsh v. Jepson,*
    521 F.2d 153 (3d Cir. 1975) ..............................................................................................10

*Granada Investments, Inc. v. DWG Corp.,*
    962 F.2d 1203 (6th Cir. 1992)............................................................................................18

*Griffin v. Flagstar Bancorp, Inc.,*
    No. 2:10-CV-10610, 2013 WL 6511860 (E.D. Mich. Dec. 12, 2013)...........................passim

*Grunin v. Int'l House of Pancakes,*
    513 F.2d 114 (8th Cir. 1975)..............................................................................................20

*Hoving v. Lawyers Title Ins. Co.,*
    256 F.R.D. 555 (E.D. Mich. 2009)......................................................................................25

*In re Am. Med. Sys., Inc.,*
    75 F.3d 1069 (6th Cir. 1996)..............................................................................................23

*In re Auto. Refinishing Paint Antitrust Litig.,*
    617 F. Supp. 2d 336 (E.D. Pa. 2007) .................................................................................15

*In re Auto. Refinishing Paint Antitrust Litig.*,
No. MDL 1426, 2003 WL 23316645 (E.D. Pa. Sept. 5, 2003) ...............................................10

*In re Cardizem CD Antitrust Litig.*,
200 F.R.D. 297 (E.D. Mich. 2001)...............................................................................................27

*In re Cardizem CD Antitrust Litig.*,
218 F.R.D. 508 (E.D. Mich. 2003)...............................................10, 12, 15, 17, 18, 27

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
No. 3:08-MD-01998, 2010 WL 3341200 (W.D. Ky. Aug. 23, 2010) ....................................15

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*,
248 F.R.D. 483 (E.D. Mich. 2008)...............................................................................................16

*In re Domestic Air Transp. Antitrust Litig.*,
141 F.R.D. 534 (N.D. Ga. 1992)...................................................................................................20

*In re Flat Glass Antitrust Litig.*,
191 F.R.D. 472 (W.D. Pa. 1999) ..................................................................................................23

*In re Flonase Antitrust Litig.*,
284 F.R.D. 207 (E.D. Pa. 2012) ...................................................................................................27

*In re Global Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ) ...............................................................................................17

*In re Linerboard Antitrust Litig.*,
292 F. Supp. 2d 631 (E.D. Pa. 2003) ...........................................................................................13

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
169 F.R.D. 493 (S.D.N.Y. 1996) ..................................................................................................27

*In re Packaged Ice Antitrust Litig.*,
No. 08-MD-01952, 2010 WL 3070161 (E.D. Mich. Aug. 2, 2010)...................................9, 17

*In re Packaged Ice Antitrust Litig.*,
No. 08-MD-01952, 2011 WL 717519 (E.D. Mich. Feb. 22, 2011) .............................passim

*In re Pressure Sensitive Labelstock Antitrust Litig.*,
584 F. Supp. 2d 697 (M.D. Pa. 2008) ..........................................................................................14

*In re Prudential Sec. Inc. Ltd. Partnerships Litig.*,
164 F.R.D. 362 (S.D.N.Y. 1996) ..................................................................................................20

*In re Scrap Metal Antitrust Litig.*,
527 F.3d 517 (6th Cir. 2008)..........................................................................................................25

*In re Se. Milk Antitrust Litig.*
No. 2:07-CV-208, 2010 WL 3521747 (E.D. Tenn. Sept. 7, 2010).........................................26

*In re Telectronics Pacing Sys., Inc.*,
137 F. Supp. 2d 985 (S.D. Ohio 2001) ..........................................................................................9

*In re Whirlpool Corp. Front-Loading Washer Products Liability Litigation*,
    722 F.3d 838 (6th Cir. 2013) ............................................................................ 21, 22, 24

*Int'l Union v. Ford Motor Co.*,
    No. 05-74730, 2006 WL 1984363 (E.D. Mich. July 13, 2006) ..................... 11, 12, 19, 21, 23

*IUE-CWA v. Gen. Motors Corp.*,
    238 F.R.D. 583 (E.D. Mich. 2006) ................................................................... 11, 12

*Lessard v. City of Allen Park*,
    372 F. Supp. 2d 1007 (E.D. Mich. 2005) ................................................................. 10

*Levine v. United States*,
    137 F. Supp. 955 (Ct. Cl. 1956) ........................................................................... 15

*Marsden v. Select Med. Corp.*,
    246 F.R.D. 480 (E.D. Pa. 2007) ........................................................................... 22

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306, 70 S. Ct. 652, 94 L. Ed. 865 (1950) ...................................................... 19, 20

*New England Health Care Employees Pension Fund v. Fruit of the Loom, Inc.*,
    234 F.R.D. 627 (W.D. Ky. 2006) .......................................................................... 10

*Paper Sys. Inc. v. Mitsubishi Corp.*,
    193 F.R.D. 601 (E.D. Wis. 2000) .......................................................................... 27

*Peters v. Nat'l R.R. Passenger Corp.*,
    966 F.2d 1483 (D.C. Cir. 1992) ........................................................................... 19

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797, 105 S. Ct. 2965, 86 L. Ed. 2d 628 (1985) ................................................... 19

*Senter v. Gen. Motors Corp.*,
    532 F.2d 511 (6th Cir. 1976) ............................................................................. 24

*Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*,
    825 F.3d 299, 309 (6th Cir. 2016) ...................................................................... 10, 25

*Sheick v. Auto. Component Carrier LLC*,
    No. 2:09-CV-14429, 2010 WL 4136958 (E.D. Mich. Oct. 18, 2010) .............................. passim

*Sheick v. Auto. Component Carrier, LLC*,
    No. 09-14429, 2010 WL 3070130 (E.D. Mich. Aug. 2, 2010) .............................................. 24

*Sprague v. Gen Motors Corp.*,
    133 F.3d 388 (6th Cir. 1998) .......................................................................... 21, 22, 24

*Stoetzner v. U.S. Steel Corp.*,
    897 F.2d 115 (3d Cir. 1990) ............................................................................. 17

*Sullivan v. DB Investments, Inc.*,
    667 F.3d 273 (3d Cir. 2011) ............................................................................. 11

*Taifa v. Bayh*,
    846 F. Supp. 723 (N.D. Ind. 1994) ............................................................... 18

*TBK Partners, Ltd. v. W. Union Corp.*,
    675 F.2d 456 (2d Cir. 1982) .......................................................................... 17

*Thacker v. Chesapeake Appalachia, L.L.C.*,
    259 F.R.D. 262 (E.D. Ky. 2009) ................................................................... 21

*UAW v. General Motors Corp.*,
    497 F.3d 615 (6th Cir. 2007) ......................................................... 9, 10, 12, 19

*Williams v. Vukovich*,
    720 F.2d 909 (6th Cir. 1983) ........................................................ 9, 10, 15, 16

**Statutes**

28 U.S.C. § 1715 ................................................................................................ 21

**Rules**

Fed. R. Civ. P. 23 ........................................................................................ passim

Fed. R. Civ. P. 23(a) ........................................................................................ 21

Fed. R. Civ. P. 23(a)(1) .................................................................................... 22

Fed. R. Civ. P. 23(a)(2) ............................................................................... 22, 23

Fed. R. Civ. P. 23(a)(3) ............................................................................... 23, 24

Fed. R. Civ. P. 23(a)(4) .................................................................................... 24

Fed. R. Civ. P. 23(b) ..................................................................................... passim

Fed. R. Civ. P. 23(b)(2) ................................................................................. passim

Fed. R. Civ. P. 23(b)(3) .............................................................. 19, 21, 25, 26, 27

Fed. R. Civ. P. 23(c)(2)(B) ............................................................................... 19

Fed. R. Civ. P. 23(e)(1) .................................................................................... 19

Fed. R. Civ. P. 23(g) ........................................................................................ 28

**Other Authorities**

4 Newberg on Class Actions (3d Ed. 1992) .................................................... 23

Manual for Complex Litigation (4th) ............................................................. 20

**Introduction**

In this fourth group of settlements ("Round Four"), the Automobile Dealer Plaintiffs respectfully seek final approval of provisionally-approved settlements with 23 groups of Defendants. These settlements provide more than $86 million in cash benefits to eligible automobile dealerships. They also provide meaningful cooperation, which affords the Auto Dealers detailed information about the anti-competitive conduct of the Defendants. Each of the proposed settlements is fair, reasonable, adequate, and should be granted final approval.

The settlements provide excellent benefits in light of the conduct, damage, and litigation risks related to each of the settling Defendants. The cash components of the settlements are reasonable compromises of the liability claims in light of the volume of commerce believed to be affected by each settling Defendant's conduct. The settlements also reflect the value of the cooperation and the value of receiving money and cooperation now, which benefit the Auto Dealers' claims against any new or non-settling Defendants.

Notice of these settlements, as required by Rule 23, was provided through the notice plan previously approved by the Court. The response from the members of the settlement classes was positive. There were no objections to the settlements, attorneys' fees, litigation expenses, or the request to set aside funds for future class representative service awards. This is remarkable considering that the members of the Auto Dealer settlement classes are sophisticated businesses with their own counsel who can analyze the merits of these settlements. A small number of dealerships that opted out of the Round Two and Round Three settlements elected to opt out of Round Four. The favorable reception of these settlements provides good evidence that final approval should be granted.

1

The Court should certify, for settlement purposes, the settlement classes that it previously conditionally certified in the preliminary approval orders. The settlements meet the Rule 23 requirements for settlement classes and class-wide resolutions are the superior method for resolving the claims against these Defendants. In doing so, the Court should confirm the appointment of settlement class counsel and the class representatives for the Auto Dealers.

## Background

### I.    The Administration of Prior Settlement Rounds.

The initial payments for Round One settlements were made in April 2018. (Raiter Decl.) More than 3,400 eligible dealerships submitted valid claims in Round One. (Declaration of Alan Vasquez, para. 19.) Recognizing the substantial benefits available, an additional 1,260 eligible dealerships submitted valid claims in the Round Two settlements. *Id.* Claim payments have now been made for the Round Three settlements approved by the Court and more than 5,000 eligible dealerships have received payments in this litigation. (Raiter Decl.)

The monetary payments in the first three rounds of settlements were substantial. Some large dealership groups have already received millions of dollars in claim payments. (Raiter Decl.) Even modest sized dealerships have received tens of thousands of dollars in prior settlement rounds. *Id.*

## II. The Round Four Settlements Provide Substantial Benefits to Auto Dealers.

### A. Cash Benefits.

In a prior series of orders, the Court preliminarily approved settlements (the "Settlements") between the Auto Dealers and a number of the Defendants and their affiliates (the "settling Defendants"). Those Settlements are now before the Court for final approval. The Settlements involve 28 of the component parts that the Auto Dealers contend were the subject of coordination, bid-rigging, and price-fixing.

For the Round Four Settlements currently before the Court, the settling Defendants and settlement amounts by part are:

| Auto Parts Settlements and Settlement Funds | | | |
|---|---|---|---|
| **Automotive Parts Case** | **Settling Defendant** | **Amount Settled** | **Settlement Fund** |
| Access Mechanisms | Alpha | $852,000.00 | $1,092,000.00 |
| | Valeo | $240,000.00 | |
| Air Conditioning Systems | Calsonic | $1,627,534.94 | $6,895,534.94 |
| | MAHLE Behr | $468,000.00 | |
| | Mitsubishi | $2,160,000.00 | |
| | Panasonic | $240,000.00 | |
| | Sanden | $2,400,000.00 | |
| ATF Warmers | Calsonic | $120,115.87 | $120,115.87 |
| Automotive Hoses | Toyoda Gosei | $1,714,157.85 | $1,714,157.85 |
| Automotive Lamps | Stanley | $3,889,541.05 | $3,889,541.05 |
| Automotive Steel Tubes | Maruyasu | $1,645,728.00 | $5,965,728.00 |
| | Sanoh | $2,640,000.00 | |
| | Usui | $1,680,000.00 | |
| Bearings | Nachi | $1,020,000.00 | $3,420,000.00 |
| | SKF | $2,400,000.00 | |
| Body Sealing Products | Green Tokai | $300,000.00 | $8,873,258.96 |
| | Toyoda Gosei | $8,573,258.96 | |
| Brake Hoses | Toyoda Gosei | $208,249.33 | $208,249.33 |
| Ceramic Substrates | Corning | $8,400,000.00 | $8,400,000.00 |
| Constant Velocity Joint Boots | Toyoda Gosei | $226,264.76 | $226,264.76 |

3

| Electronic Power Steering Assemblies | Showa | $1,305,390.12 | $1,305,390.12 |
|---|---|---|---|
| Exhaust Systems | Bosal | $48,000.00 | $6,276,000.00 |
| | Faurecia | $468,000.00 | |
| | Meritor | $240,000.00 | |
| | Tenneco | $5,520,000.00 | |
| Fuel Injection Systems | Keihin | $264,000.00 | $1,143,072.00 |
| | Maruyasu | $34,272.00 | |
| | Mikuni | $844,800.00 | |
| Heater Control Panels | Tokai Rika | $431,550.97 | $431,550.97 |
| HID Ballasts | Stanley | $910,458.95 | $910,458.95 |
| Ignition Coils | Delphi | $240,000.00 | $480,000.00 |
| | Toyo Denso | $240,000.00 | |
| Instrument Panel Clusters | Continental | $1,200,000.00 | $1,200,000.00 |
| Interior Trim Products | Toyoda Gosei | $1,607,208.53 | $1,607,208.53 |
| Occupant Safety Restraint Systems | TKH[1] | $16,800,000.00 | $27,708,370.24 |
| | Tokai Rika | $9,077,509.67 | |
| | Toyoda Gosei | $1,830,860.57 | |
| Power Window Switches | Toyo Denso | $1,392,000.00 | $1,392,000.00 |
| Radiators | Calsonic | $1,764,509.19 | $1,764,509.19 |
| Shock Absorbers | KYB | $9,120,000.00 | $12,254,609.88 |
| | Showa | $3,134,609.88 | |
| Side Door Latches | Brose | $720,000.00 | $720,000.00 |
| Spark Plugs | NGK | $4,020,000.00 | $4,020,000.00 |
| Steering Angles Sensors | Tokai Rika | $214,014.95 | $214,014.95 |
| Switches | Tokai Rika | $1,076,924.41 | $1,076,924.41 |
| Valve Timing Control Devices | Mikuni | $211,200.00 | $211,200.00 |
| | | **Total** | **$103, 520,160.00, including TKH bankruptcy claim** |

The Court granted preliminary approval to these settlements with the date of preliminary approval and case number shown below:

---

[1] The potential payment by TKH is a general, unsecured, non-priority claim under the TKH bankruptcy plan and the expected bankruptcy payout is expected to be considerably less than the settlement amount.

| Defendant | Date Preliminary Approval Motion Granted | Case Number | Case Name / Parts |
|---|---|---|---|
| Alpha | September 24, 2019 | 2:16-cv-04102 | Access Mechanisms |
| Bosal | September 24, 2019 | 2:16-cv-03702 | Exhaust Systems |
| Brose | September 18, 2018 | 2:17-cv-04302 | Door Latches |
| Calsonic | June 22, 2018 | 2:13-cv-01002<br>2:13-cv-02402<br>2:13-cv-02702 | Radiators<br>ATF Warmers<br>Air Conditioning |
| Continental | March 28, 2018 | 2:12-cv-00202 | Instrument Panel Clusters |
| Corning | July 18, 2019 | 2:16-cv-03802 | Ceramic Substrates |
| Delphi | August 15, 2019 | 2:13-cv-01402 | Ignition Coils |
| Faurecia | June 22, 2018 | 2:16-cv-03702 | Exhaust Systems |
| Green Tokai | October 18, 2018 | 2:16-cv-03402 | Body Sealings |
| Keihin | August 15, 2019 | 2:13-cv-02202 | Fuel Injection Systems |
| KYB | April 1, 2019 | 2:15-cv-03302 | Shock Absorbers |
| MAHLE Behr | October 18, 2018 | 2:13-cv-02702 | Air Conditioning Systems |
| Maruyasu | February 21, 2019 | 2:13-cv-02202<br>2:16-cv-04002 | Fuel Injection Systems<br>Automotive Steel Tubes |
| Meritor | September 18, 2018 | 2:16-cv-03702 | Exhaust Systems |
| Mikuni | August 15, 2019 | 2:13-cv-02202<br>2:13-cv-02502 | Fuel Injection Systems<br>Valve Timing Control Devices |
| Mitsubishi Heavy | July 18, 2019 | 2:13-cv-02702 | Air Conditioning Systems |
| Nachi | September 24, 2019 | 2:12-cv-00502 | Bearings |
| NGK | June 22, 2018 | 2:15-cv-03002 | Spark Plugs |
| Panasonic | July 18, 2019 | 2:13-cv-02702 | Air Conditioning Systems |
| Sanden | March 15, 2018 | 2:13-cv-02702 | Air Conditioning Systems |
| Sanoh | May 16, 2019 | 2:16-cv-04002 | Automotive Steel Tubes |
| Showa | September 24, 2019 | 2:13-cv-01902<br><br>2:16-cv-03302 | Electronic Powered Steering Assemblies<br>Shock Absorbers |
| SKF | September 24, 2019 | 2:12-cv-00502 | Bearings |
| Stanley | May 6, 2019 | 2:13-cv-01202<br>2:13-cv-01702 | Automotive Lamps<br>HID Ballasts |
| TKH | September 24, 2019 | 2:12-cv-00602 | Occupational Safety Restraint Systems |
| Tenneco | September 17, 2018 | 2:16-cv-03702 | Exhaust Systems |

| Tokai Rika | March 7, 2019 | 2:12-cv-00402 | Heather Control Panels |
| | | 2:12-cv-00602 | Occupational Restraint Safety Systems |
| | | 2:13-cv-01302 | Switches |
| | | 2:13-cv-01602 | Steering Angle Sensors |
| Toyo Denso | June 22, 2018 | 2:13-cv-01402 | Ignition Coils |
| | | 2:16-cv-03902 | Power Window Switches |
| Toyoda Gosei | October 18, 2018 | 2:12-cv-00602 | Occupational Restraint Safety Systems |
| | | 2:14-cv-02902 | CVJ Boots |
| | | 2:15-cv-03202 | Automotive Hoses |
| | | 2:16-cv-03402 | Body Sealing Products |
| | | 2:16-cv-03502 | Interior Trim Products |
| | | 2:16-cv-03602 | Brake Hoses |
| Usui | February 27, 2018 | 2:16-cv-04002 | Automotive Steel Tubes |
| Valeo | September 24, 2019 | 2:16-cv-04102 | Access Mechanisms |

The different parts and settling Defendants result in 48 different settlement classes in the Settlements (the "Settlement Classes").  The Auto Dealers negotiated the Settlements in tandem with the End Payors to allow the settling Defendants to resolve the indirect purchaser claims in the litigation.  (*See* Raiter Decl.)  As part of these negotiations, the Auto Dealers considered the particular Defendants' conduct, the amount of commerce affected by that conduct, and the value of other settlement terms, like cooperation, being offered by the settling Defendant.  (*Id.*)

The Settlements provide more than $86 million in gross settlement funds for eligible dealerships in the Settlement Classes.  The total guaranteed money recovered in Auto Dealer settlements in Round One ($58,947,900.00), Round Two ($124,730,927.00), Round Three ($115,180,799.90), and Round Four ($86,720,160.00) of this litigation is $385,579,786.00. When the $16,800,000.00 general, unsecured, non-priority claim in the TKH bankruptcy from the Round Four settlements is included, the amount recovered for Auto Dealers could total as much as $402,389,786.00.  (Raiter Decl.)  In the opinion of counsel for the Auto Dealers,

6

the Settlements provide an excellent result for the Settlement Classes and are fair, reasonable, and adequate. *Id.*

**B.    Cooperation and Other Terms.**

In addition to the cash payments, the settling Defendants are required to provide the Auto Dealers with various forms of cooperation that include: (1) the production of certain documents and data relevant to the ongoing claims against the non-settling Defendants; (2) interviews with representatives of the settling Defendants; (3) the assistance in understanding certain data and other information produced to Auto Dealers; and (4) facilitating the use of such data and information at trial.  Those terms were set out in detail in the preliminary approval motions and the settlement agreements between the parties (the "Settlement Agreements").

**II.    The Notice Plan was Carried Out and Provided Adequate Notice of the Settlements.**

The Settlements provide cash benefits to automobile dealerships that purchased certain parts and/or new vehicles containing those parts in jurisdictions that the Auto Dealers contend allow antitrust indirect purchasers to seek money damages: Arizona, Arkansas, California, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin (the "Included States").

Through class action notice consultant Gilardi & Co., potential automobile dealer class members in the Included States were identified and were mailed a long form notice that provided information about the Round Four Settlements.  (*See* Vasquez Decl.)  The notice

consultant also sent long form notices to email addresses associated with automobile dealerships that may have purchased new vehicles and parts in the Included States. (*Id.*) A multi-faceted notice program intended to provide the best notice practicable under the circumstances was therefore carried out and included:

- Direct mail notice to approximately 14,000 postal addresses of automobile dealerships potentially eligible for money benefits under the Settlements;

- Email notice to approximately 44,600 email addresses associated with automobile dealerships potentially eligible for money benefits under the Settlements;

- Published notice in trade magazines like *Ward's AutoWorld*, *Automotive News*, and *Auto Dealer Monthly* and digital media designed to target new car automobile dealerships nationwide;

- Online media efforts through outlets like Facebook and Twitter; and

- Earned media efforts through a national press release and the settlement web site, www.AutoDealerSettlement.com

(*See* Vasquez Decl.) The notice plan "reached" between 90 and 95 per cent of the potentially eligible automobile dealers in the Included States. (*Id.*, para. 23)

## III.    The Reaction of Settlement Class Members was Positive.

The reaction to the Round Four Settlements was positive. There were no objections to any of the 48 different Settlement Classes. (*See* Vasquez Decl., para. 21). No class member objected to the terms of the Settlements, the notice plan, or the requested attorneys' fees. (*Id.*) No class member requested an opportunity to be heard at the final fairness hearing. (*Id.*)

Despite efforts by attorneys who solicit class members to opt-out of antitrust settlements, only a small percentage of the potential Settlement Class members from the Included States requested exclusion. Three dealership groups—represented by the same law

8

firms—elected to opt out. (Vasquez Decl., para. 20 & Ex. 7). Those groups are believed to operate at most 168 new vehicle dealerships at locations in the Included States. (Raiter Decl.)[2] Even with these requests for exclusion, nearly 99 per cent of the dealerships in the Included States elected to remain in the Settlement Classes. (*Id.*)

## Legal Standard

The Sixth Circuit and courts in the Eastern District of Michigan "have recognized that the law favors the settlement of class action lawsuits." *Griffin v. Flagstar Bankcorp, Inc.*, No. 2:10-cv-10610, 2013 WL 6511860, at *2 (E.D. Mich. Dec. 12, 2013); *see also In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2011 WL 717519, at *7 (E.D. Mich. Feb. 22, 2011); *UAW v. General Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007) (federal policy favors settlement of class actions).

To be given final approval, a class action settlement must be "fair, reasonable, and adequate." *Sheick v. Auto. Component Carrier LLC*, No. 2:09-CV-14429, 2010 WL 4136958, at *14 (E.D. Mich. Oct. 18, 2010); *see also In re Packaged Ice*, 2011 WL 717519, at *8. "There are three steps which must be taken by the court in order to approve a settlement: (1) the court must preliminarily approve the proposed settlement, (2) members of the class must be given notice of the proposed settlement, and (3) after holding a hearing, the court must give its final approval of the settlement." *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1026 (S.D. Ohio 2001) (citing *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983)); *In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2010 WL 3070161, at *4 (E.D. Mich. Aug. 2, 2010).

---

[2] Many of the dealerships requesting exclusion have the same address. It is therefore not clear exactly how many dealership locations have requested exclusion but the number totals 168 or less in the Included States. *See* Vasquez Decl., Exhibit 7.

The court considers whether the proposed settlement is "fair, adequate, and reasonable to those it affects and whether it is in the public interest." *Lessard v. City of Allen Park*, 372 F. Supp. 2d 1007, 1009 (E.D. Mich. 2005) (citing *Williams*, 720 F.2d at 921–23). This determination requires consideration of "whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 522 (E.D. Mich. 2003) (citation omitted); *Sheick*, 2010 WL 4136958, at *14–15.

The court has broad discretion when approving a class action settlement. *UAW*, 497 F.3d at 636; *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975). In exercising this discretion, courts give considerable weight and deference to the view of experienced counsel as to the merits of an arm's-length settlement. *Dick v. Sprint Commc'ns Co. L.P.*, 297 F.R.D. 283, 297 (W.D. Ky. 2014) ("The Court defers to the judgment of the experienced counsel associated with the case, who have assessed the relative risks and benefits of litigation"). Indeed, a "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *New England Health Care Employees Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 632 (W.D. Ky. 2006) (citations omitted); *see also In re Auto. Refinishing Paint Antitrust Litig.*, No. MDL 1426, 2003 WL 23316645, at *6 (E.D. Pa. Sept. 5, 2003).

The court must "carefully scrutinize" whether the settlement is fair, reasonable, and adequate and whether the named plaintiffs and their counsel have met their fiduciary obligations to the class. *Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 309 (6th Cir. 2016). Because a settlement represents an exercise of judgment by the negotiating

parties, a judge reviewing a settlement will not "substitute his or her judgment for that of the litigants and their counsel," *IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583, 593 (E.D. Mich. 2006), or "decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n. 14 (1981). Because of the uncertainties and risks inherent in any litigation, courts take a common sense approach and approve class action settlements if they fall within a "range of reasonableness." *Sheick*, 2010 WL 4136958, at *15 (citation omitted). The court should guard against demanding too large a settlement, because a settlement "represents a compromise in which the highest hopes for recovery are yielded in exchange for certainty and resolution." *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Ford Motor Co.*, No. 05-74730, 2006 WL 1984363, at *23 (E.D. Mich. July 13, 2006) (citation omitted); *accord Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 324 (3d Cir. 2011).

## Argument

## I.    The Settlements are Fair, Reasonable, and Adequate and Should be Given Final Approval.

The Round Four Auto Dealer settlements before the Court meet the criteria required for final approval under Rule 23 of the Federal Rules of Civil Procedure. They provide meaningful benefits and were reached after negotiations between experienced counsel who were armed with sufficient background about the merits and defenses to the claims asserted. The settlements reflect a reasonable compromise in light of the liability, damages, and procedural uncertainties facing both the Auto Dealers and the settling Defendants.

Courts in the Sixth Circuit consider a number of factors when determining whether a settlement should be granted final approval: (1) the likelihood of success on the merits weighed against the amount and form of the relief offered in the settlement; (2) the complexity,

expense, and likely duration of further litigation; (3) the opinions of class counsel and class representatives; (4) the amount of discovery engaged in by the parties; (5) the reaction of absent class members; (6) the risk of fraud or collusion; and (7) the public interest. *Packaged Ice*, 2011 WL 717519, at *8; *see also UAW*, 497 F.3d at 631; *Griffin*, 2013 WL 6511860, at *3; *Cardizem*, 218 F.R.D. at 522. No single factor is determinative and the court may weigh each factor based on the circumstances of the case. *Int'l Union,* 2006 WL 1984363, at *21. The court may "choose to consider only those factors that are relevant to the settlement at hand." *Id.* at *22; *see also Grenada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205–06 (6th Cir. 1992) (holding that a district court enjoys wide discretion in assessing the weight and applicability of factors).

### A.   The Likelihood of the Auto Dealers' Success on the Merits Weighed Against the Relief Offered in the Settlements Supports Approval.

The court assesses class action settlements "with regard to a 'range of reasonableness,' which 'recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs inherent in taking any litigation to completion.'" *Sheick*, 2010 WL 4136958, at *15 (quoting *IUE-CWA*, 238 F.R.D. at 594; *Int'l Union,* 2006 WL 1984363, at *21). The fairness of such a settlement "turns in large part on the bona fides of the parties' legal dispute." *UAW*, 497 F.3d at 6331. When considering the likelihood of plaintiffs' success on the merits of the litigation, the ultimate question is whether the interests of the class as a whole are better served if the litigation is resolved by settlement rather than pursued. *Sheick*, 2010 WL 4136958, at *16 (citing *IUE-CWA*, 238 F.R.D. at 595).

The Auto Dealers believed they would prevail in these cases. But they also recognized that success is not guaranteed in any complex litigation. Although there were illegal

12

conspiracies to coordinate bidding and other activities on component parts, the Defendants have vigorously defended these cases. Some Defendants have claimed that the Auto Dealers could prove that the bid rigging caused them an antitrust injury. Others previewed arguments about class certification, which they contended should not be granted in the Auto Dealer cases. The Settlements reflect both the strengths of the Auto Dealers' claims and the risk that the settling Defendants may prevail on some of their arguments.

The settling Defendants are represented by experienced and competent counsel and were prepared to defend these cases through trial. While there is risk in any litigation, antitrust class actions are inherently high-stakes and high-risk. Auto Dealers have been optimistic about the outcome of these cases, but must acknowledge that the settling Defendants could prevail on certain legal or factual arguments and by doing so, could reduce or eliminate potential recoveries for the Auto Dealers. The certainty and substantial benefits provided by the Settlements support a finding that they were reasonable and adequate.

For some of these parts, there have been only a few settlements, making the Round Four settlements important. *Packaged Ice*, 2011 WL 717519, at *10; *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003). The cooperation that the settling Defendants have agreed to provide is a "substantial benefit" to the class and "strongly militates toward approval" of the Settlements. *Linerboard*, 292 F. Supp. 2d at 643. This cooperation will enhance and strengthen the Auto Dealers' prosecution of claims against any Defendants who continue to litigate these cases. *Linerboard*, 292 F. Supp. 2d at 643; *Packaged Ice*, 2011 WL 717519, at *10 (noting that cooperation by the settlement defendant "has already been beneficial to the Plaintiffs in their continued prosecution of their claims against the non-

settling Defendants"); *In re Pressure Sensitive Labelstock Antitrust Litig.*, 584 F. Supp. 2d 697, 702 (M.D. Pa. 2008) ("the benefit of obtaining the cooperation of the Settling Defendants tend to offset the fact that they would be able to withstand a larger judgment.").

The more than $86 million being made available to eligible dealership in the Round Four settlements is a reasonable compromise of the disputed claims against the settling Defendants. As previously noted, the Defendants contend that although there may have been coordination of bids, that coordination did not result in artificially inflated prices for the parts at issue. The Defendants have also argued that the Auto Dealers passed any price increases on to consumers. Finally, some of the Defendants focus on the relatively limited scope of bid coordination on some parts and the corresponding amount of affected commerce, which they contend was not significant.

For each of these Settlements, counsel for the Auto Dealers analyzed, among other things, the strength of the liability claims against the particular Defendant, the volume of affected commerce, the value of the particular cooperation being provided, and the range of damage that could be proven at trial against the Defendant. The money being paid and the cooperation for future claims provide substantial value in light of the risks of continuing the litigation. Interim Co-Lead Class Counsel for the Auto Dealers believe that the Settlements represent an excellent recovery for Auto Dealers. Weighing the benefits of the Settlements against the risks of continued litigation tilts the scale heavily toward final approval. *See Griffin*, 2013 WL 6511860, at *4; *Packaged Ice*, 2011 WL 717519, at *9.

**B.    The Complexity, Expense, and Likely Duration of Continued Litigation Favor Final Approval.**

"Settlement should represent 'a compromise which has been reached after the risks, expense and delay of further litigation have been assessed.'" *Cardizem*, 218 F.R.D. at 523 (quoting *Williams*, 720 F.2d at 922); *Levine v. United States*, 137 F. Supp. 955, 1013 (Ct. Cl. 1956) (settlement avoid the costs, delays, and multitude of other problems associated with class actions, which are "inherently complex."); *Cardizem*, 218 F.R.D. at 533 ("Moreover, the complexity of this case cannot be overstated.  Antitrust class actions are inherently complex . . . .").

The Court has had substantial opportunity to consider the claims and defenses in this litigation and knows that complex antitrust litigation of this scope has many inherent risks that settlements extinguish.  These cases would likely continue for even more years, at great additional expense, if they were litigated through an adversarial judgement and any appeals. The fact that the Auto Dealers achieved substantial recoveries, which eliminate risk while ensuring substantial payments, supports final approval of the Settlements.

**C.    The Judgment of Experienced Counsel Who Have Evaluated the Strength of the Claims, Defenses, and Risks Supports Approval.**

The Settlements were reached by experienced counsel after arm's-length negotiations and are therefore provided deference.  *Dick*, 297 F.R.D. at 296 ("Giving substantial weight to the recommendations experienced attorneys, who have engaged in arms-length settlement negotiations, is appropriate . . . .") (quoting *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD01998, 2010 WL 3341200, at *4 (W.D. Ky. Aug. 23, 2010)); *see also In re Auto. Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d 336, 341 (E.D. Pa. 2007).

In deciding whether a proposed settlement warrants approval, "[t]he Court should also consider the judgment counsel and the presence of good faith bargaining between the contending parties." *In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.*, 248 F.R.D. 483, 498 (E.D. Mich. 2008). Counsel's judgment "that settlement is in the best interest of the class 'is entitled to significant weight, and supports the fairness of the class settlement.'" *Packaged Ice*, 2011 WL 717519, at *11 (quoting *Sheick*, 2010 WL 4136958, at *18). "In the absence of evidence of collusion (there is none here) this Court 'should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs.'" *Date v. Sony Electronics, Inc.*, No. 07-15474, 2013 WL 3945981, at *9 (E.D. Mich. July 31, 2013) (quoting *Williams*, 720 F.2d at 922–23).

Interim Co-Lead Counsel for the Auto Dealers are experienced in handling class action antitrust and other complex litigation. They have represented the interests of Auto Dealers from the inception of this litigation and negotiated the Settlements at arms' length with well-respected and experienced counsel for the settling Defendants. Interim Co-Lead Counsel believe that the Settlements each provide an excellent result in light of the circumstances of each settling Defendant's conduct and potential liability. (Raiter Decl.)

The amount of discovery in the cases involved in the Settlements varied, but in each case counsel for the Auto Dealers was armed with important information about the conspiracies through review of documents produced to the Department of Justice, proffers of information by cooperating Defendants, and/or discovery from this litigation. The amount of discovery completed is a factor to be considered in the settlement approval process, but there is no baseline required to satisfy this factor. *In re Packaged Ice Antitrust Litig.*, 2010 WL

3070161, at *5-6. The "question is whether the parties had adequate information about their claims." *Griffin*, 2013 WL 6511860, at *4 (quoting *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004)).

This litigation has been pending for more than seven years. Much has been done and the parties are well-acquainted with the facts, claims, and defenses. The discovery and available information allowed Interim Co-Lead Counsel for the Auto Dealers to evaluate the strengths and weaknesses of the claims and defenses and to evaluate the benefits of the Settlements. These are not settlements reached without substantial discovery and investigation. Interim Co-Lead Counsel for the Auto Dealers believe that the Settlements are fair, reasonable, and in the best interests of Auto Dealers who purchased new vehicles containing the parts at issue in the Settlements. (Raiter Decl.) The opinion of counsel supports final approval of the Settlements.

### D. Class Member Reaction.

There were no objections to any of the settlements. This is remarkable because there are often at least a few objections to class settlements. "A certain number of opt-outs and objections are to be expected in a class action. If only a small number are received, that fact can be viewed as indicative of the adequacy of the settlement." *Cardizem*, 218 F.R.D. at 527. This reaction from the members of the settlement classes strongly supports the adequacy of the settlements. *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118–19 (3d Cir. 1990) (holding that objections by about 10% of class "strongly favors settlement"); *see also TBK Partners, Ltd. v. W. Union Corp.*, 675 F.2d 456, 458, 462 (2d Cir. 1982) (approving settlement despite objections of

large number of class); *Taifa v. Bayh*, 846 F. Supp. 723, 728 (N.D. Ind. 1994) (approving class settlement despite objections from more than 10% of class).

Notice of these settlements was sent by direct mail to approximately 14,000 addresses and 44,600 email addresses connected to new car dealerships in the Included States.  (Vasquez Decl., para. 11)  These dealerships are sophisticated businesses with their own attorneys (inside or outside counsel) who were well-equipped to evaluate the reasonableness of the Round Four settlements.  The lack of objections speaks loudly about the benefits of the Settlements.  The same dealership groups that opted out of the Round Two and Round Three settlements elected to opt out again.  (*Id.*, para. 20 & Ex. 7).  The absence of any objections and the small number of opt-outs supports the adequacy of the Settlements.

### E.     The Public Interest Supports Granting Final Approval to the Settlements.

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources."  *Cardizem*, 218 F.R.D. at 530 (quoting *Granada*, 962 F.2d at 1205); *see aslo Griffin*, 2013 WL 6511860, at *5; *Packaged Ice*, 2011 WL 717519, at *12.  In light of the conduct at issue and guilty pleas related to the claims here, there is no countervailing public interest that provides a reason to disapprove the Settlements.  *Griffin*, 2013 WL 6511860, at *5.  This factor also supports final approval.

### F.     The Settlements are not the Product of Collusion.

There is a presumption that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion unless there is contrary evidence. *Griffin*, 2013 WL 6511860, at *3; *Packaged Ice*, 2011 WL 717519, at *12; *Int'l Union,*, 2006 WL

1984363, at *26; *Sheick*, 2010 WL 4136958, at *19–20.  The Settlements here were reached

after adversarial litigation and often contentious discovery.  The negotiations leading to the

Settlements were entirely arms' length and often took many months of settlement proposal

exchanges and, in some cases, the involvement of mediators.  The Settlements were negotiated

in good faith with counsel on each side zealously representing the interests of their clients.

## II.  Notice of the Settlements was Proper Under Rule 23 and Met Due Process Requirements.

Fed. R. Civ. P. 23(e)(1) provides that "[t]he court must direct notice in a reasonable

manner to all class members who would be bound by the [proposed settlement]."  For Rule

23(b)(3) actions, "the court must direct to class members the best notice that is practicable

under the circumstances, including individual notice to all members who can be identified

through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).

The purpose of notice in a class action is to "afford members of the class due-process

which, in the context of the Rule 23(b)(3) class action, guarantees them the opportunity to be

excluded from the class action and not be bound by any subsequent judgment."  *Peters v. Nat'l

R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992) (citing *Eisen v. Carlisle & Jacquelin*,

417 U.S. 156, 173–74, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974)).  Due process requires that

absent class members be provided the best notice practicable, reasonably calculated to apprise

them of the pendency of the action, and affording them the opportunity to opt out or object.

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812, 105 S. Ct. 2965, 86 L. Ed. 2d 628 (1985); *see

also UAW*, 497 F.3d at 629 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306,

314, 70 S. Ct. 652, 94 L. Ed. 865 (1950)).

The "best notice practicable" does not mean actual notice, nor does it require individual mailed notice where there are no readily available records of class members' individual addresses or where it is otherwise impracticable. *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008); *In re Domestic Air Transp. Antitrust Litig.*, 141 F.R.D. 534, 548–53 (N.D. Ga. 1992); Manual for Complex Litigation (4th) § 21.311 ("Manual"). The mechanics of the notice process "are left to the discretion of the court subject only to the broad 'reasonableness' standard imposed by due-process." *Grunin v. Int'l House of* Pancakes, 513 F.2d 114, 121 (8th Cir. 1975). Each class member need not receive actual notice for the due-process standard to be met, "so long as class counsel acted reasonably in selecting means likely to inform persons affected." *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 164 F.R.D. 362, 368 (S.D.N.Y. 1996).

Where names and addresses of known or potential class members are reasonably available, direct-mail notice should be provided. *See, e.g.*, *Eisen*, 417 U.S. at 175–76; Manual, § 21.311. If the names and addresses of class members cannot be determined by reasonable efforts, notice by publication is sufficient to satisfy the requirements of the due-process clause and Rule 23. *Mullane*, 339 U.S. at 317–18; *Carlough v. Amchem Prod., Inc.*, 158 F.R.D. 314, 325 (E.D. Pa. 1993).

## A. There Were No Objections to the Notice Content or Plan.

As with the prior rounds of Auto Dealer settlements, no member of the Settlement Class objected to or criticized the notice program. (*See* Vasquez Decl., para. 21). The program was primarily a direct mail program that targeted class members and was supplemented by published notice in industry-specific publications. The notice program easily satisfied the

requirements of Rule 23 and due process. *Packaged Ice*, 2011 WL 717519, at *5; *Sheick*, 2010 WL 4136958, at *15.

### B. Timing of CAFA Notices and Final Approval Orders.

Each of the Defendant groups involved in the Settlements have provided the notices to public officials required by 28 U.S.C. § 1715. (Raiter Decl.) None of the state attorney generals have responded or requested an opportunity to be heard about the terms of the settlements. *Id.*

## III. Certification of Settlement Classes is Appropriate.

In its preliminary approval orders, the Court found that Rule 23's requirements were met and provisionally certified, for purposes of settlement only, Settlement Classes relating to the parties and parts covered by the Settlements. It is well-established that a class may be certified for purposes of settlement. *See, e.g.*, *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997); *Int'l Union,*, 2006 WL 1984363, at *3, *18; *Cardizem*, 218 F.R.D. at 516–19; *Thacker v. Chesapeake Appalachia, L.L.C.*, 259 F.R.D. 262, 266–70 (E.D. Ky. 2009). The Settlements meet the requirements of Rule 23(a) as well as the requirements of Rule 23(b)(2) and 23(b)(3) for settlement purposes.

### A. The Auto Dealer Settlement Classes Satisfy Rule 23(a).

Certification of a class requires meeting the requirements of Fed. Civ. P. 23(a) and one subsection of Rule 23(b). *In re Whirlpool Corp. Front-Loading Washer Products Liability Litigation*, 722 F.3d 838, 850-51 (6th Cir. 2013); *Griffin*, 2013 WL 6511860, at *5; *Int'l Union*, 2006 WL 1984363, at *19 (citing *Sprague v. Gen Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998)). Certification is appropriate under Rule 23(a) if: (1) the class is so numerous that joinder of all

members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interest of the class. *Griffin*, 2013 WL 6511860, at *5; *Date*, 2013 WL 3945981, at *3.

### 1. The Settlement Classes are Numerous.

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be "impracticable." Fed. R. Civ. P. 23(a)(1). There is no strict numerical test to satisfy the numerosity requirement, and the most important factor is whether joinder of all the parties would be impracticable. *Whirlpool*, 722 F.3d at 852 (noting that "substantial" number of class members satisfies numerosity). Numerosity is determined by the number and geographic location of class members. *Marsden v. Select Med. Corp.*, 246 F.R.D. 480, 484 (E.D. Pa. 2007). The notice for these Settlements was mailed to approximately 14,000 automobile dealership entities and emailed to 44,600 addresses, geographically dispersed throughout the United States. (*See* Vasquez Decl.) There are thousands of Settlement Class members and joinder of all of them would be impracticable, satisfying Rule 23(a)(1).

### 2. Common Questions of Law and Fact Exist.

Fed. R. Civ. P. 23(a)(2) requires that a proposed class action involve "questions of law or fact common to the class." "We start from the premise that there need be only one common question to certify a class," *Whirlpool*, 722 F.3d at 853, and "the resolution of [that common issue] will advance the litigation." *Sprague*, 133 F.3d at 397; *accord Exclusively Cats Veterinary Hosp. v. Anesthetic Vaporizer Servs., Inc.*, 2010 WL 5439737, at *3 (E.D. Mich. Dec. 27,

2010) ("[T]here need be only a single issue common to all members of the class") (citing *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1080 (6th Cir. 1996).

"[A]llegations concerning the existence, scope and efficacy of an alleged conspiracy present questions adequately common to class members to satisfy the commonality requirement." *In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472, 478 (W.D. Pa. 1999) (citing 4 NEWBERG ON CLASS ACTIONS §§ 18.05-15 (3d ed. 1992)). Whether the settling Defendants entered into illegal agreements to rig bids and artificially fix prices of automobile component parts presents questions common to all members of the Settlement Classes. *Packaged Ice*, 2011 WL 717519, at *6 (holding that the commonality was satisfied by questions concerning "whether Defendants conspired to allocate territories and customers and whether their unlawful conduct caused Packaged Ice prices to be higher than they would have been absent such illegal behavior and whether the conduct caused injury to the Class Members"). "Indeed, consideration of the conspiracy issue would, of necessity focus on defendants' conduct, not the individual conduct of the putative class members." *Flat* Glass, 191 F.R.D. at 484.

Because there are common legal and factual questions related to potential liability, the commonality requirement of Rule 23(a)(2) is met for the Settlement Classes.

### 3. Auto Dealer Plaintiffs' Claims are Typical of Those of the Settlement Class.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "If there is a strong similarity of legal theories, the requirement [of typicality] is met, even if there are factual distinctions among named and absent class members." *Griffin*, 2013 WL 6511860, at *6 (quoting *Int'l* Union, 2006 WL 1984363, at * 19); *Date*, 2013 WL 3945981, at *3. "Typicality

is met if the class members' claims are "'fairly encompassed by the named plaintiffs' claims.'" *Whirlpool*, 722 F.3d at 852 (quoting *Sprague*, 133 F.3d at 399).

The claims of the named plaintiff Auto Dealers arise from the same course of conduct as the claims of the members of the Settlement Classes. Rule 23(a)(3)'s typicality requirement is satisfied for the Settlement Classes.

### 4. Auto Dealer Class Representatives and Their Counsel Have Fairly and Adequately Represented the Interests of the Class Members.

Rule 23(a)(4) requires that the class representative fairly and adequately protect the interests of the class. "There are two criteria for determining adequacy of representation: (1) the proposed class representative must have common interests with the other class members; and (2) it must appear that the class representative will vigorously prosecute the interests of the class through qualified counsel." *Sheick v. Auto. Component Carrier, LLC*, 2010 WL 3070130, at *3 (E.D. Mich. Oct. 18, 2010) (quoting *Senter v. Gen. Motors Copr.*, 532 F.2d 511, 524-25 (6th Cir. 1976)). These requirements are met.

The interests of the Auto Dealer representatives are the same as those of other Settlement Class members. These Plaintiffs are indirect purchasers of the parts and new vehicles at issue in this litigation and they, like the other Settlement Class members, claim that they were injured as a result of the alleged conspiracies and seek to prove that the settling Defendants violated antitrust and consumer laws. The named Auto Dealer Plaintiffs have the same interests as those of the members of the Settlement Classes. The Auto Dealer Plaintiffs have retained qualified and experienced counsel to pursue these cases. Counsel for the Auto Dealers have vigorously pursued this litigation and will continue to represent the interests of Auto Dealers. Adequate representation under Rule 23(a)(4) is therefore satisfied.

The Settlements do not provide preferential treatment to the named representatives. Under the Plans of Allocation, all similarly situated dealerships in the Included States will receive the same amount of money—calculated based on the number of type of vehicles and parts they purchased—regardless of whether they are named plaintiffs or absent class members. The named plaintiffs' interests were and are aligned with those of the absent class members. *See, e.g., Shane*, 825 F.3d at 309.

## B. Automobile Dealer Plaintiffs' Claims Satisfy the Prerequisites of Rule 23(b)(3) for Settlement Purposes.

In addition to satisfying Rule 23(a), plaintiffs must show that the class falls under at least one of the three subsections of Rule 23(b). The Settlement Classes qualify under Rule 23(b)(3), which authorizes class certification if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir. 2008); *Hoving v. Lawyers Title Ins. Co.*, 256 F.R.D. 555, 566 (E.D. Mich. 2009).

### 1. Common Legal and Factual Questions Predominate.

The Rule 23(b)(3) requirement that common issues predominate insures that a proposed class is "sufficiently cohesive to warrant certification." *Amchem Products, Inc.*, 521 U.S. at 623. The predominance requirement is met where "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007) (citation omitted).

Horizontal price-fixing cases are particularly well-suited for class certification because proof of the conspiracy presents a common, predominating question. *Scrap Metal*, 527 F.3d 517, 535 (6th Cir. 2008); *Packaged Ice*, 2011 WL 717519, at *6; *In re Se. Milk Antitrust Litig.*, No. 2:07-CV-208, 2010 WL 3521747, at *5, 9–11 (E.D. Tenn. Sept. 7, 2010). Affirming class certification in *Scrap Metal*, the Sixth Circuit observed that the "district court found that the 'allegations of price-fixing and market allocation . . . will not vary among class members' . . . Accordingly, the court found that the 'fact of damages' was a question common to the class even if the amount of damages sustained by each individual class member varied." 527 F.3d at 535 (emphasis in original).

Here, the same set of core operative facts and theory of liability apply in each of the Settlements. Whether the settling Defendants entered into illegal agreements presents questions common to all Settlement Class members. *See, e.g.*, *Packaged Ice*, 2011 WL 717519, at *6. If Automobile Dealer Plaintiffs and the other Settlement Class members brought individual actions, they would each be required to prove the same claims in order to establish liability. For settlement purposes, common issues predominate.

### 2. Class Action Settlements Are Superior to Other Methods of Adjudication.

Rule 23(b)(3) lists factors to be considered in determining the superiority of proceeding as a class action compared to individual methods of adjudication: (1) the interests of the members of the class in individually controlling the prosecution of separate actions; (2) the extent and nature of other pending litigation about the controversy by members of the class; (3) the desirability of concentrating the litigation in a particular forum; and (4) the difficulties likely to be encountered in management of the class action. Fed. R. Civ. P. 23(b)(3).

The Auto Parts litigation has been centralized in this Court and the only other known individual cases asserted against the Settling Defendants are those claims brought by the dealerships who elected to opt out of the prior settlements. Thus, consideration of factors (1) - (3) demonstrates the superiority of these Settlement Classes. The fourth Rule 23(b)(3) factor is not relevant in a settlement-only class because the potential difficulties in managing a trial of the case is extinguished by the settlement. *Cardizem*, 218 F.R.D. at 517.

In addition, "[g]iven the complexities of antitrust litigation, it is not obvious that all members of the class could economically bring suits on their own.*" In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 325 (E.D. Mich. 2001) (quoting *Paper Sys. Inc. v. Mitsubishi Corp.*, 193 F.R.D. 601, 605 (E.D. Wis. 2000)). Certifying the Settlement Classes will conserve judicial and private resources and will provide a single outcome that is binding on all Settlement Class members. *Cardizem*, 200 F.R.D. at 351. The alternatives to these Settlements are a multiplicity of separate lawsuits or no recourse for many class members for whom the cost of pursuing individual litigation would be prohibitive. *See In re Flonase Antitrust Litig.*, 284 F.R.D. 207, 234 (E.D. Pa. 2012); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 169 F.R.D. 493, 527 (S.D.N.Y. 1996). The certification of Settlement Classes is superior to the alternatives in this litigation.

## IV. The Court Should Appoint Settlement Class Counsel and Auto Dealer Class Representatives.

At preliminary approval, the Court provisionally appointed Interim Co-Lead Counsel for the Auto Dealers as class settlement counsel and appointed the named Auto Dealer representatives in those cases as the representatives of the provisionally certified class settlements. As part of the final approval process, the Court should appoint Cuneo Gilbert & LaDuca, LLP, Barrett Law Group, P.A., and Larson · King, LLP as Settlement Class Counsel.

These firms have represented the Auto Dealers throughout the litigation and satisfy the requirements of Rule 23(g). The Court should also appoint the Automobile Dealer Plaintiffs named in the operative complaints in the Settlements as class representatives of their respective Settlement Classes.

## Conclusion

For the foregoing reasons, Automobile Dealer Plaintiffs respectfully request that the Court: (1) grant final approval of the Round Four Settlements, (2) certify the Settlement Classes for purposes of settlement, and (3) enter judgment in each of the relevant parts cases.

Dated: December 6, 2019

By: */s/ Gerard V. Mantese*
Gerard V. Mantese (P34424)
**MANTESE HONIGMAN, P.C.**
1361 E. Big Beaver Road
Troy, MI 48083
Telephone: (248) 457-9200 Ext. 203 Facsimile: (248) 457-9201
gmantese@manteselaw.com

*Interim Liaison Counsel for the Automobile Dealer Plaintiffs*

Jonathan W. Cuneo
**CUNEO GILBERT & LADUCA, LLP**
4725 Wisconsin Ave., NW
Suite 200
Washington, DC 20016
Telephone: (202) 789-3960
Facsimile: (202) 789-1813
jonc@cuneolaw.com

Don Barrett
**BARRETT LAW GROUP, P.A.**
P.O. Box 927
404 Court Square
Lexington, MS 39095
Telephone: (662) 834-2488
Facsimile: (662)834.2628
dbarrett@barrettlawgroup.com

Shawn M. Raiter
**LARSON KING, LLP**
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
Telephone: (651) 312-6500
Facsimile: (651) 312-6618
sraiter@larsonking.com

*Interim Co-Lead Counsel for the Automobile Dealer Plaintiffs*

## CERTIFICATE OF SERVICE

I, Gerard V. Mantese, hereby certify that I caused a true and correct copy of **Auto Dealers' Memorandum in Support of Motion for Final Approval of Settlements (Round Four) With Certain Defendants and for Certification of Settlement Classes** to be served via e-mail upon all registered counsel of record via the Court's CM/ECF system on December 6, 2019

*/s/Gerard V. Mantese*
Gerard V. Mantese

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE: AUTOMOTIVE PARTS | : | |
| ANTITRUST LITIGATION | : | Master File No. 12-md-02311 |
| | : | |
| PRODUCT(S): | : | |
| | : | |
| In Re: Instrument Panel Clusters | : | 2:12-cv-00202 |
| In Re: Heater Control Panels | : | 2:12-cv-00402 |
| In Re: Bearings | : | 2:12-cv-00502 |
| In Re: Occupant Safety Restraint Systems | : | 2:12-cv-00602 |
| In Re: Radiators | : | 2:13-cv-01002 |
| In Re: Automotive Lamps | : | 2:13-cv-01202 |
| In Re: Switches | : | 2:13-cv-01302 |
| In Re: Ignition Coils | : | 2:13-cv-01402 |
| In Re: Steering Angle Sensors | : | 2:13-cv-01602 |
| In Re: Hid Ballasts | : | 2:13-cv-01702 |
| In Re: Electric Powered Steering Assemblies | : | 2:13-cv-01902 |
| In Re: Fuel Injection Systems | : | 2:13-cv-02202 |
| In Re: Automatic Transmission Fluid Warmers | : | 2:13-cv-02402 |
| In Re: Valve Timing Control Devices | : | 2:13-cv-02502 |
| In Re: Air Conditioning Systems | : | 2:13-cv-02702 |
| In Re: Constant Velocity Joint Boot Products | : | 2:14-cv-02902 |
| In Re: Spark Plugs | : | 2:15-cv-03002 |
| In Re: Automotive Hoses | : | 2:15-cv-03202 |
| In Re: Shock Absorbers | : | 2:16-cv-03302 |
| In Re: Body Sealing Products | : | 2:16-cv-03402 |
| In Re: Interior Trim Products | : | 2:16-cv-03502 |
| In Re: Brake Hoses | : | 2:16-cv-03602 |
| In Re: Exhaust Systems | : | 2:16-cv-03702 |
| In Re: Ceramic Substrates | : | 2:16-cv-03802 |
| In Re: Power Window Switches | : | 2:16-cv-03902 |
| In Re: Automotive Steel Tubes | : | 2:16-cv-04002 |
| In Re: Access Mechanisms | : | 2:16-cv-04102 |
| In Re: Side Door Latches | : | 2:17-cv-04302 |
| | : | |
| This Document Relates to: | : | Hon. Marianne O. Battani |
| ALL DEALERSHIP ACTIONS | : | |
| | : | |

# DECLARATION OF SHAWN M. RAITER IN SUPPORT OF AUTO DEALERS'
## MOTION FOR FINAL APPROVAL OF SETTLEMENTS (ROUND FOUR) WITH
### CERTAIN DEFENDANTS AND FOR CERTIFICATION
### OF SETTLEMENT CLASSES

STATE OF MINNESOTA )
                            ) ss
COUNTY OF RAMSEY )

SHAWN M. RAITER, being duly sworn upon oath, states as follows:

1. That your declarant is one of the attorneys representing the Automobile Dealer Plaintiffs in the above matter.

2. The initial payments for the Round One, Round Two, and Round Three Auto Dealer settlements have been made. More than 5,000 dealerships have received initial payments for the Round Two, Round Two, and Round Three Auto Dealer settlements.

3. The monetary payments in these settlements have exceeded millions of dollars for large dealership groups. Modest-sized dealerships that submitted valid claims have already received tens of thousands of dollars in the initial payments.

4. Each of the Settlements before the Court (the "Round Four" Settlements) was the result of good faith, arms' length negotiations with experienced defense counsel. Before entering into substantive settlement negotiations, Interim Co-Lead Counsel for the Auto Dealers had substantial information to help them assess the claims and defenses, the strengths and weaknesses of the Auto Dealers' claims, the volume of affected commerce, and the scope of the conduct at issue for the particular Defendant(s). This information was gathered from multiple sources including their own investigation, discovery in these cases, public information from the DOJ and other enforcement authorities, and cooperating Defendants.

5. The Interim Co-Lead Counsel for the Auto Dealers, including your Affiant, believe that the Settlements are fair, reasonable, and adequate given the merits of the claims and defenses, the risks associated with the litigation, and the certainty provided by settlements and early cooperation in these cases.

6.      The Round Four Settlements provide more than $86 million in settlement funds that will benefit eligible automobile dealers.  The Settlements create cash funds whose net proceeds (after the Court-approved deduction of certain expenses and attorneys' fees) will be paid entirely to eligible Settlement Class members that purchased the relevant component parts and/or new vehicles containing those parts during the respective class periods in the Included States.  There are no reversions in these Settlements and the named representative plaintiffs are not treated differently than absent class members.  When added to the Round One, Round Two, and Round Three settlements, a total of approximately $402,389,786.00 has been recovered in Auto Dealer settlements preliminarily or finally approved by the Court to-date.

7.      The Settlement Agreements for the Settlements all include requirements that the Settling Defendants provide specified cooperation to the Auto Dealers.  Such cooperation is particularly valuable in complex cases.  The timing of some of these Settlements, which come before the particular cases would be ready for trial, adds significance to the cooperation offered by the Settling Defendants and its utility in the Auto Dealers' pursuit of claims against any non-settling Defendants.

8.      The Auto Dealers believe they will prevail in these cases but their likelihood of success on the merits is not guaranteed.  Counsel for the Auto Dealers weighed that fact against the relief provided in the Settlements.  Dealerships in the Included States are giving up their ability to seek money damages from the Settling Defendants in exchange for monetary payments and other non-monetary relief like cooperation and in some cases injunctive relief.  In exchange for the settlement payments and cooperation, the Settlements include "Released Claims" against Settling Defendants. The Settlements do not affect other current or future Defendants' joint and several liability for the Settling Defendants' alleged wrongdoing.  Settling Defendants' sales remain in their respective cases if those cases remain at issue against non-settling defendants. Non-settling defendants, with the exception of those who are ultimately entitled to the reduced liability provisions of the Antitrust

Criminal Penalty Enhancement and Reform Act, remain jointly and severally liable for damages applicable to those sales, less only the amounts paid in settlement. Consequently, the Settlements will not limit the Settlement Classes' right to recover the full amount of the damages available under the law from any non-settling defendants.

9.      Although many Defendants pleaded guilty in the criminal prosecutions brought by the Department of Justice, the Auto Dealers' success is not guaranteed. The Auto Dealers must prove class-wide impact from the conspiracies while the Department of Justice did not. The resolution of this issue would involve a battle of experts at great cost and at great risk to the Auto Dealers' chances of success. The Auto Dealers must show they suffered antitrust injury as a result of the Settling Defendants' conduct, and given the nature of the automobile industry, the damages methodologies advanced by the Auto Dealers and Defendants will vary greatly. In sum, the Auto Dealers faced significant challenges to liability, class certification, and proof of the amount of damages.

10.      Settling Defendants have vigorously and ably defended these cases and would continue to do so without the Settlements. The Settling Defendants, and other Defendants in this litigation, have argued that the prices of the parts in question were not inflated as a result of their bid coordination. They have also argued that the Auto Dealers passed on any price inflation and did not sustain a viable antitrust injury. These Settlements avoid the risk that the Settling Defendants would prevail on those defenses, potentially leaving Auto Dealers with no recovery. The Round Four Settlements also avoid the risk that litigation classes will not be certified, which in turn, could result in a reduced recovery or no recovery for Auto Dealers.

11.      The Auto Dealers and End Payors jointly negotiated with the settling Defendants and those negotiations resulted in separate settlements for the Auto Dealers and End Payors. Counsel for the Auto Dealers and End Payors believe that the settlements are fair, reasonable, and adequate for the respective classes they represent. Although these groups agreed to work in tandem and

collaboratively in the analysis, negotiation, and allocation of the Settlements, neither was bound to enter into a settlement that they did not believe was in the best interest of their clients.

12.     Counsel for the Auto Dealers did not receive any objections or requests to be heard at the final fairness hearing.  There were no objections to the terms of the settlements, the attorneys' fees and expenses being sought, or the set aside of funds to be used for future requests for class representative service awards.  No dealership asked to be heard at the final fairness hearing.

13.     Following antitrust settlements, certain law firms solicit class members to opt out of the settlements.  Despite such efforts here, only a small percentage of the potential Settlement Class members from the Included States requested exclusion.  Three dealership groups—represented by the same law firms—elected to opt out.  (*See* Declaration of Alan Vasquez, Ex. 7).  Those groups are believed to operate less than 168 new vehicle dealership locations in the Included States.  The requests for exclusion are believed to total slightly more than one per cent of the dealerships in the Included States in the Settlement Classes.

14.     Counsel for the Settling Defendants have indicated to counsel for the Auto Dealers that each Settling Defendant provided the notices to public officials required by 28 U.S.C. § 1715.  None of the state attorney generals has objected to the terms of the Round Three Settlements or requested an opportunity to be heard.

I declare under the penalty of perjury that the above information is true to the best of my knowledge.

Dated: <u>December 6, 2019</u>                  <u>        /s *Shawn M. Raiter*        </u>
                                        Shawn M. Raiter
                                        Interim Co-Lead Counsel for the Auto Dealers

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| IN RE AUTOMOTIVE PARTS | : Master File No. 12-md-02311 |
| ANTITRUST LITIGATION | : Honorable Marianne O. Battani |
| | : |
| INSTRUMENT PANEL CLUSTERS | : 2:12-cv-00202 |
| HEATER CONTROL PANELS | : 2:12-cv-00402 |
| BEARINGS | : 2:12-cv-00502 |
| OCCUPANT SAFETY RESTRAINT | : 2:12-cv-00602 |
| SYSTEMS | : |
| RADIATORS | : 2:13-cv-01002 |
| AUTOMOTIVE LAMPS | : 2:13-cv-01202 |
| SWITCHES | : 2:13-cv-01302 |
| IGNITION COILS | : 2:13-cv-01402 |
| STEERING ANGLE SENSORS | : 2:13-cv-01602 |
| HID BALLASTS | : 2:13-cv-01702 |
| ELECTRIC POWERED STEERING | : 2:13-cv-01902 |
| ASSEMBLIES | : 2:13-cv-02202 |
| FUEL INJECTION SYSTEMS | : 2:13-cv-02402 |
| AUTOMATIC TRANSMISSION FLUID | |
| WARMERS | 2:13-cv-02502 |
| VALVE TIMING CONTROL DEVICES | 2:13-cv-02702 |
| AIR CONDITIONING SYSTEMS | 2:14-cv-02902 |
| CONSTANT VELOCITY JOINT BOOT | 2:15-cv-03002 |
| PRODUCTS | 2:15-cv-03202 |
| SPARK PLUGS | 2:16-cv-03302 |
| AUTOMOTIVE HOSES | 2:16-cv-03402 |
| SHOCK ABSORBERS | 2:16-cv-03502 |
| BODY SEALING PRODUCTS | 2:16-cv-03602 |
| INTERIOR TRIM PRODUCTS | 2:16-cv-03702 |
| BRAKE HOSES | 2:16-cv-03802 |
| EXHAUST SYSTEMS | 2:16-cv-03902 |
| CERAMIC SUBSTRATES | 2:16-cv-04002 |
| POWER WINDOW SWITCHES | 2:16-cv-04102 |
| AUTOMOTIVE STEEL TUBES | 2:17-cv-04302 |
| ACCESS MECHANISMS | |
| SIDE DOOR LATCHES | |

| | |
|---|---|
| THIS DOCUMENT RELATES TO | Declaration of Alan Vasquez Regarding |
| AUTOMOBILE DEALERSHIP ACTIONS | Implementation of Class Notice Plan |

I, ALAN VASQUEZ, declare:

1.      I am a Vice President of Legal Notification Services at Gilardi & Co. LLC ("Gilardi"), a KCC Class Action Services ("KCC") company.  In my role, I oversee Gilardi's in-house advertising division specializing in the design and implementation of legal notice plans to reach unknown class members in class action litigation.

2.      Gilardi was established in 1984 and is one of the largest full service class action notice and claims administrators in the United States.  The in-house advertising division has specialized in designing, developing and implementing legal notification plans for more than 25 years.  As such, we are familiar with, and guided by, Constitutional due process provisions, rules of states and local jurisdictions, and the relevant case law relating to legal notification.  Media plans designed and implemented by our group have included both domestic and international newspapers and magazines, Internet-based banners, notices and websites, wire service, radio, television, point of purchase displays and direct mail. As V.P. of Legal Notification Services, I oversee all of the group's activities as they relate to these notice services.

3.      I have been involved in the development and implementation of media plans for class action notification for more than 14 years. Prior to my engagement with Gilardi, I spent five years with another nationally recognized claims administrator serving in a similar capacity.

4.      For several years, courts have accepted my expert testimony regarding our firm's quantitative and qualitative evaluation of judicially approved notice plans. I have also testified in person and was acknowledged as an expert in Larson v. Sprint Nextel Corp., No. 07-cv-5325 (D. N.J.).  Media campaigns for which I have been directly responsible include, but are not limited to, Pappas v. Naked Juice, No 11-cv-08276-JAK (C.D. Cal.), Mattel, Inc., Toy Lead Paint Prods. Liab. Litig., No. 07-ML-01897 (S.D. Cal.), Pecover, et al. v. Electronic Arts Inc., No. 08-cv-02820 (N.D. Cal.), New Motor Vehicles Canadian Export Antitrust Litig., No. MDL 03-1532 (D. Me.), and SRAM Antitrust Litig., No. 07-MD-01819 (N.D. Cal.). A more comprehensive list of notable matters for which I have been personally responsible for the notice planning and implementation services is attached as Exhibit 1.  I have also spoken as faculty on various CLE panels related to class action notice and related trends.

5.      I submit this declaration at the request of counsel in the above-referenced litigation in order to describe the results of implementing the Court-approved notice plan outlined in my declaration

filed on September 18, 2019 ("September 2019 Vasquez Declaration"). I have personal knowledge of the matters set forth in this declaration and, if called as a witness, could and would testify competently thereto.

### NOTICE PLAN SUMMARY

6.　　As detailed in the September 2019 Vasquez Declaration, the proposed Notice plan consisted of the following elements:

a.　Direct notice via United States Postal Service Mail ("USPS Mail") to all class members in the indirect purchaser states for whom a mailing address is available,

　　i.　For any class member that previously filed a valid claim in the initial round of Auto Dealer settlements in this litigation, the USPS contact address supplied in that valid claim form will be used for the purpose of direct notice in these settlements.

b.　Direct notice via email ("Email") to all class members for whom an electronic email address is available,

c.　Publication Notice in the print versions of the following industry magazines:

　　i.　3x insertion in *Automotive News Magazine*

　　ii.　1x insertion in *Auto Dealer Monthly Magazine*

　　iii.　1x insertion in *Ward's Autoworld Magazine*

d.　Publication in the Dealer edition e-newsletter disseminated by *Ward's Autoworld Magazine,*

　　i.　The *Ward's Autoworld* Dealer edition e-newsletter is delivered to 33,000 dealer professionals nationwide and includes regular news and features covering the U.S. and worldwide automotive manufacturing industry.

e.　Internet Banner advertising on websites *for Automotive News and Autodealer Monthly,*

f.　Facebook banner and link advertising,

g.　Twitter promoted tweet advertising,

h.　Case-specific website, and

i.　Toll-free telephone services

7.　　Gilardi believes the plan satisfied due process standards given the parameters of the

3

settlement, information learned from Gilardi's research, and the fact that this is an antitrust matter with not every Defendant settling at this current time. The notice plan provided the best practicable method to reach the class members and is consistent with many other class action notice plans that have been approved by federal courts in similarly situated matters.

**NOTICE PLAN IMPLEMENTATION**

8.     **Website**. On September 15, 2015, Gilardi established the settlement website for these cases, at www.autodealersettlement.com ("Settlement Website"). On September 9, 2016 and July 3, 2018, Gilardi updated the settlement website for additional settlements and on October 15, 2019 commenced updates regarding the most recent additional settlements.

9.     On the Settlement Website, Class Members can view and print copies of the Long Form Notice ("Notice"), a list of the defendants and auto parts, settlement agreements, preliminary approval orders, Plans of Allocation, request to stay informed of updates regarding the settlement, and consult answers to Frequently Asked Questions. A true and correct copy of the Notice is attached hereto as Exhibit 2. The toll-free telephone number, email address, and mailing address for administration of this case are posted on the Settlement Website through a "Contact Us" link.

10.     **Telephone Support Services.** Gilardi previously established a toll free telephone number, 888-565-3171, that Class Members can call and listen to answers to Frequently Asked Questions and speak to a live operator, and request a copy of the Notice to be mailed to them.

11.     **Direct Notice**. For this phase of notice, Gilardi purchased an updated nationwide dealer list including 13,948 postal addresses and 44,606 email addresses for every dealer located in the indirect purchaser states. Prior to the postal and email distribution of notice, Gilardi cross-referenced the new dealer lists against the old dealer lists used for the first two phases of Notice and created a new list with all unique postal addresses and email addresses found in the data. This helped to ensure direct notice was provided to an over-inclusive group of potential class members. The list of emails includes 67,875 addresses and the list of postal addresses included 31,989 addresses.

12.     On or before October 15, 2019, Gilardi commenced direct notice by email and USPS mail. To date, 3,705 Notices were returned as undeliverable. For Notices returned as undeliverable, Gilardi attempts to locate updated information through skip trace searches to re-mail the Notice to the extent

4

updated information was identified. Because the intended recipients of undeliverable Notice were most likely dealerships that went out of business, the rate of address updates was lower than in a typical administration. Gilardi updated and re-mailed zero Notices.

13. **Print Publication**. Gilardi caused the short-form version of the class notice to be published in the trade magazines on the following dates:

     a.    One insertion in *Wards Autoworld Magazine* in the issue,

     b.    Three insertions in *Automotive News Magazine* on, , and, and

     c.    One insertion in *Auto Dealer Monthly Magazine* in the issue.

14.    Tearsheets from the print publication insertions are attached in Exhibit 2.

15.    **Banner Advertising.** Gilardi caused banners to be displayed on websites for *Automotive News* and, *Autodealer Monthly* magazines. Upon clicking the banner, internet users would be directed to the case website. Examples of the banners are attached as Exhibit 3.

16.    **Trade magazine E-Newsletter**. Gilardi caused a link to the case website to be published in the e-newsletter disseminated by *Ward's Autoworld Magazine* on 10/7/2019, 10/9/2019, 10/11/2019, 10/14/2019, 10/16/2019, 10/18/2019, 10/21/2019, 10/23/2019, 10/25/2019, 10/28/2019, and 10/30/2019. A sample of the notice ad as it appeared in the newsletter is attached as Exhibit 4.

17.    **Facebook Advertising.** On August 6, 2019, Gilardi commenced a Facebook advertising campaign using targeting related to the auto industry. Upon clicking the link in the advertisements, users would be directed to the case website where they could file a claim or obtain more information. To date the campaign has generated 1,098,820 impressions, reaching over 90,000 unique Facebook users. The campaign has generated 7,993 clicks to the case website for a click-through rate ("CTR") of approximately .73% which is above the average benchmark for this type of advertising on Facebook. Examples of the Facebook ad units are attached in Exhibit 5.

18.    **Twitter Advertising.** On August 6, 2019, Gilardi commenced a Twitter Promoted Tweet advertising campaign using multiple targeting methods likely to reach accounts for auto dealers as well as their employees. To date the campaign has generated 601,976 impressions and 37,003 clicks through to the case website for a CTR of over 6% which is excellent in comparison to CTR's for similar advertising campaigns. An average CTR for Twitter is approximately 1% to 3%. Example of the promoted tweets are

attached in Exhibit 6.

**PROCESSING**

19.    As of December 4, 2019 Gilardi had processed approximately 1,260 claims in the second round of Auto Dealer settlements and 3,430 claims in the first round of Auto Dealer settlements. On or before October 15, 2019, Gilardi updated the claims filing functionality for the case website to include the new additional settlements and has received an estimated 5 claims since the third round of Auto Dealer settlements.  The deadline for submitting claims in the additional settlements is April 17, 2020.

20.    The postmark deadline for submitting a Request for Exclusion in the most recent Auto Dealer settlements was November 22, 2019. To date, Gilardi has received 308 Requests for Exclusion. A list of the Requests for Exclusion is attached as Exhibit 7.

21.    The deadline for submitting an Objection to the settlement or requesting to be heard at the final approval hearing was August 15, 2018.  To date, Gilardi has received 0 Objections to the settlements and 0 requests to be heard at the final approval hearing.

**SUMMARY**

22.    As of December 5, 2019, Gilardi's round four online Notice efforts have generated over 1.7 million impressions, directing 45,004 clicks through to the case website.  The volume of clicks related to the impressions generated results in an overall CTR of over 2.64% for the internet portion of the notice campaign, which is well above average. In general, online advertising CTRs for retail, more often than not generate below 1% CTR.  A report detailing the statistics of the supplemental notice efforts is attached as Exhibit 8.

23.    It is Gilardi's opinion that the Notice Plan, as implemented, resulted in a campaign that reached a large percentage of the class members (between 90% and 95%), while comporting in all respects with Rule 23 of the Federal Rules of Civil Procedure.  The approach provided multiple channels for class members to be directed to the case website, including direct notice to a list consisting of all dealerships in the affected states as well as supplemental notice using print publication in trade magazines, internet banners on trade publication websites, an e-newsletter targeting auto dealerships, social media advertising, and a party-neutral press release.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed this 5th day of December, 2019, at San Rafael, California.

_____

Alan Vasquez

7

# Exhibit – 1

**NOTICE PLANS IMPLEMENTED BY ALAN VASQUEZ**

**Automotive**

Automobile Antitrust Cases I and II , No. JCCP 4298 and 4303 (San Francisco Sup. Ct., CA)

New Motor Vehicles Canadian Export Antitrust Litigation , No. MDL 03-1532 (Dist. Court of Maine) & New Motor Vehicles Canadian Export

Antitrust Litigation, No. 2:03-MD-1532-DBH (Dist. Court of Maine)

In Re: Automotive Parts Antitrust Litigation, Master File No. 12-md-02311 (E.D. MI, Southern Division)

**Entertainment**

Herbert et al. v. Endemol USA, Inc. et al. , Case No. 2:07-cv-03537-JHN-VBKx (C.D. Cal.)

Couch v. Telescope Inc., et al, Case No. 2:07-cv-03916-JHN-VBKx (C.D. Cal.)

McDonald v. RealNetworks, Inc. , No. 816666 (Orange County Sup. Ct., CA)

Pecover et al. v. Electronic Arts Inc. , No. 08-cv-02820 CW (N.D. Cal.)

In re NCAA Student-Athlete Name & Likeness Licensing Litigation, Case No. 4:09-cv-1967 CW (NC) (N.D. Cal.)

**Environment**

Koepf et al. v. Hanjin Shipping, Co. et al., No. CGC-07-469379 (San Francisco County Sup. Ct., CA)

Loretz et al. v. Regal Stone Limited et al., No. 07-5800-SC (N.D. Cal.)

Tarantino et al. v. Regal Stone et al., No. CGC-07-469379 (San Francisco County Sup. Ct., CA)

**Government**

McKesson Governmental Entities Average Wholesale Price Litigation, No. 1:08-cv-10843-PBS (D. Mass.)

**Technology**

SRAM Antitrust Litigation, No. 4:07-MD-01819-CW (N.D. Cal)

**Telecommunications**

White v. Cellco Partnership , No. RG04-137699 (Alameda County Sup. Ct., CA)

Larson v. Sprint Nextel Corp., No. 07-cv-5325 (D. N.J.)

In re Universal Service Fund Telephone Billing Practices Litig., MDL No. 1468 (D. Kan.)

**Consumer Products**

Natalie Pappas v. Naked Juice Co. of Glendora, Inc. Case No. LA CV 11-08276-JAK (C.D. Cal)

Barbara Marciano v. Schell & Kampeter, Inc. et al No. 12-cv-02708-SJF-AKT (E.D. NY)

Mattel, Inc., Toy Lead Paint Products Liability Litigation, No. 2:07-ML-01897-DSF-AJW (S.D. Cal.)

Gallucci v. Boiron, Inc. et al., No. 11-cv-2039-JAH (NLSx)

Nigh v. Humphreys Pharmacal, Incorporated et al., Case No. 3:12-cv-02714-MMA-DHB

In re: Bayer Corp. Combination Aspirin Products Marketing and Sales Practices Litigation, No. 09-MD-2023

Edwards v. National Milk Producers Federation, Case No. 11-CV-04766-JSW (N.D. CA)

In Re: Aurora Dairy Corp. Organic Milk Marketing and Sales Practices Litigation, Civil Litigation No. 4:08-md-01907-ERW

Eliason v. Gentek Building Products, Inc., and Associated Materials, Inc. , No. 1:10-cv-02093 (N.D. Ohio)

Hart v. Louisiana-Pacific Corporation , No. 2:08-cv-00047 (E.D.N.C.)

**Debt Collection Practices**

Adams, et al., v. AllianceOne Receivables Management, Inc. (Case No. 08-CV-0248)

Pepper v. Midland Credit Management, Inc. and Encore Capital Group, Inc., No. 37-2011-00088752 (San Diego Sup. Ct. Ca)

# Exhibit − 2



## COVER STORY:
## DEALERS

**Ryan LaFontaine and wife Wendi.**

at the time. I went to my family doctor. He said, "Don't worry about it." He gave me an inhaler to get rid of the cough.

A month later, I was still coughing. A physician's assistant took an X-ray and said, "I think you have walking pneumonia, but I want to send out the results to be sure."

She called back and set up a CAT scan because of the lump on my neck. That test showed I had Hodgkin's Lymphoma (a cancer affecting the lymph immune system).

On June 2, 2008, I did a speech to open this store. (Because of the effects of chemotherapy on me), I have no clue what I said. I figured I bombed. Everyone said it was an amazing speech. I didn't know. It was all racing.

**Wards:** You went on to help raise funds for Hodgkin's Lymphoma research.

**LaFontaine:** My sister and I created U CAN-CER VIVE. We raised $1 million in five years. Now, our goal is to raise $1 million a year. Last year, we did just under $700,000, One hundred percent goes to research grants.

I'm not the only one who has faced adversity. We all have. The key is what you do about it and learn from it. My adversity taught me the importance of prioritizing my life with faith, family and friends. My wife Wendi reminds me of that and keeps me grounded.

I truly believe if you have good intentions in doing something, that's rewarded. **WA**

## His Interview Questions Aim to Get to Heart of Job Candidates

**E**veryone knows the stock job interview questions, and even some of the predictable answers. Such as:

- "What's your greatest strength?" "I'm a hard worker."
- "What's your biggest flaw?" "I work too hard."

William Powell asks untraditional, simple but penetrating interview questions. They aim to get to the heart of the matter – and the heart of the job candidate.

Powell held various dealer-relations management positions during a 32-year run at General Motors. He now serves as senior adviser to the LaFontaine Automotive Group, Michigan's second-largest dealership chain.

He tells Wards of a set of deceptively deep interview questions he has posed throughout his business career.

"I ask, 'What is the most difficult thing you ever encountered in your life, and what did you do about it?'"

He also asks, "What is the most positive thing that's ever happened in your life, and what's the most negative?"



**"Either people will BS you and make up stuff, or else they actually will tell you an anecdote about a personal situation,"** Powell says.

You've got to believe he gets varied and unusual responses.

"Either people will BS you and make up stuff, or else they actually will tell you an anecdote about a personal situation," Powell says. "Sometimes it's very personal involving something they've overcome."

Powell adds: "It's their choice to answer whatever they want, but those questions get to the core of someone. You can transcend why someone is here and determine whether they will fit into the organization, based on what they say." **WA**

**Legal Notice**

# UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

*In re Automotive Parts Antitrust Litigation*, No. 12-md-02311

**If You Are an Automobile Dealership that Purchased New Vehicles or Purchased Certain Parts for a Vehicle in the U.S. Since 1990**
**You Could Receive Money From Settlements of Class Actions**

**Lawsuits involving the prices of certain vehicle component parts have been settled with certain Defendants in various class actions in this litigation ("Settling Defendants"). The Settling Defendants are identified below. The cases are separate class actions within the lead case known as *In re Automotive Parts Antitrust Litigation*, 12-md-02311 (E.D. Mich.), which is currently before United States District Judge Marianne O. Battani.**

**You can make a claim for money benefits if you are an automobile dealership that indirectly purchased certain component parts and/or purchased new vehicles containing these parts ("Dealer") in the District of Columbia or one or more of the following states: Arizona, Arkansas, California, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.**

**These Settlements may affect your rights. Read on for more information.**

**What Are The Lawsuits About?**

The separate lawsuits claim that the Defendants in each lawsuit engaged in unlawful agreements that had the effect of impacting the price of certain vehicle component parts. The lawsuits claim that, as a result of the relevant Defendants' conduct, Dealers paid more than they should have for the parts at issue and paid more for the new vehicles in which those parts are contained. The lawsuits also allege that Dealers were unable to pass on all of these increased costs to their customers.

These cases are proceeding as class actions for monetary recovery for Dealers in the states listed in this Notice and the District of Columbia. The lawsuits also seek nationwide injunctive relief. Although the Settling Defendants have agreed to settle, the Settling Defendants and certain affiliates deny that they engaged in any wrongdoing or are liable and owe any money or benefits to Plaintiffs. The Court has not yet decided who is right. The Settling Defendants have settled to avoid the cost and risk of trials.

The Court has appointed the law firms of Cuneo Gilbert & LaDuca, LLP, Larson • King, LLP, and Barrett Law Group, P.A. as interim class counsel ("Class Counsel") in these lawsuits to represent your dealership and all other members of the Dealer class actions. Your dealership will not be charged directly by these lawyers, and any fees that they are paid will come from any settlements or recovery in these lawsuits. If your dealership wants to be represented by its own lawyer, it may hire one at its own expense.

**Who's Included In The Settlements?**

Your dealership is part of one or more of the Settlements if it is a Dealer and falls within the definition of one or more of the settlement classes ("Settlement Classes") approved by Judge Battani. The class definitions are set forth in the full-length Notice, which is available at **www.AutoDealerSettlement.com**. The term "Dealer" or "dealership" means an entity or person authorized to engage in the business of selling and / or leasing new vehicles at retail in the United States. A list of the parts included in these Settlements and their manufacturers can be found at **www.AutoDealerSettlement.com**.

**Who Are The Settling Defendants?**

**A list of the Defendants involved in this Notice, their affiliates, and the alleged co-conspirators for each case involving the parts described in the Settlement Class definitions and settlement agreements is available at www.AutoDealerSettlement.com.**

**What Do The Settlements Provide?**

Dealers in the United States who indirectly purchased certain component parts and/or purchased new vehicles containing these component parts, listed in the Settlement Class definitions, in the states listed in this Notice or the District of Columbia may receive money benefits from the Settlements. Dealers in the United States who indirectly purchased certain component parts and/or purchased new vehicles containing these component parts, listed in the Settlement Class definitions, may receive other, non-monetary benefits from the Settlements as explained in further detail at www.AutoDealerSettlement.com.

The settlement funds (the "Settlement Funds") for Dealers in these Settlements total at least $88 million. A table detailing the respective Settlements and the parts involved can be found in the full-length Notice, which is available at **www.AutoDealerSettlement.com**. The amount of money your dealership may receive, if any, will depend upon where the dealership purchased the affected vehicles or component parts, the type and quantity of vehicles and parts the dealership purchased in the states listed above and the District of Colombia, and the total number of claims made by eligible Dealers. Attorneys' fees and expenses and class representative awards may be requested and may be awarded by the Court.

Under all of the Settlements, the Settling Defendants will provide certain cooperation in the Dealers' continuing litigation against the Non-Settling Defendants. Some of the settlement agreements give the Settling Defendants the right to reduce the amount they are required to pay and/or to withdraw from their respective Settlements in the event that certain percentages of Settlement Class members elect to exclude themselves from the respective Settlement(s). The final judgments and/or settlement agreements with respect to certain of the Settling Defendants will provide for additional non-monetary relief in the form of an agreement not to engage in certain conduct with respect to the identified parts for a period of two years from the date of entry of the final judgment. These terms are all contained in the proposed final judgments and/or settlement agreements relating to these Settling Defendants, and may also be viewed at **www.AutoDealerSettlement.com**.

**What Are My Rights And Options?**

1. File a Proof of Claim to participate in the Settlements

**If your dealership filed a valid Proof of Claim in either of the first three rounds of dealership settlements in this litigation, you may rely on that Proof of Claim and do nothing further to participate in the current settlements.** If you choose this option, the information you provided in the prior Proof of Claim will be used to determine your dealership's share in the net proceeds of the current proposed Settlements.

**To remain in the Settlement Classes, you do not need to take any further action at this time. However, to share in the Settlement Funds, and only if your dealership did not submit a Proof of Claim form in the prior dealership settlements in this litigation, your dealership must submit a Proof of Claim form that is available at www.AutoDealerSettlement.com.** Proof of Claim forms must be filed by midnight Eastern Standard time on April 17, 2020 at **www.AutoDealerSettlement.com** or sent via USPS Mail, postmarked by April 17, 2020 to: **Auto Dealer Settlement Administrator, PO Box 404000, Louisville, KY 40233-4000**

If you choose the File a Proof of Claim option, your dealership will share in the net proceeds of the Settlement Funds if: (1) your dealership's Proof of Claim is timely and valid; (2) your dealership is entitled to a distribution under the Plans of Allocation that have been or will be approved by the Court; and (3) the proposed Settlements are finally approved by the Court. Your dealership will be bound by the judgments and releases to be entered by the Court as described in the full-length Notice.

2. Opt your dealership out of the Settlements

If your dealership does not want to be included in one or more of the settlements (as defined in the full-length Notice), it may request to be excluded. A list of the settlements can be found at **www.AutoDealerSettlement.com**. If your dealership timely submits a valid request for exclusion, it will not share in the Settlement Funds from the corresponding Settlement, and it will not be bound by the corresponding Judgment(s). It will then be your dealership's responsibility to pursue any of the claims that it preserves by opting out of one or more of the Settlement Classes. To be valid, the request for exclusion / opt out must follow the instructions set forth in the full-length Notice and must be postmarked by November 22, 2019. The full instructions and requirements for opting out may be viewed at **www.AutoDealerSettlement.com**.

3. Object to the Settlements

If your dealership wishes to object to one or more of the Settlements or the request for attorney's fees, expenses, and service awards, it may (as discussed below) write to the Court and counsel about why it objects. It is possible that the Settlements and request for fees, expenses, and service awards will be approved despite your objection. To be considered, your dealership's objection must be filed according to the procedures set forth in the full-length Notice and postmarked no later than November 22, 2019. The full instructions and requirements for objecting to one or more of the Settlements may be viewed at **www.AutoDealerSettlement.com**.

4. Attend the Final Approval Hearing

The Court will hold a Final Approval Hearing on December 10, 2019 at 10:00 a.m. at the United States District Court for the Eastern District of Michigan, Theodore Levin U.S. Courthouse, 231 W. Lafayette Blvd., Courtroom 272, Detroit, MI 48226 to decide whether to approve the Settlements and the request for attorney's fees, expenses, and service awards. You may attend and ask the Court's permission to speak, but you don't have to participate in the hearing in order to attend. To request to speak at the Final Approval Hearing, you must follow the procedures set forth in the full-length Notice no later than November 29, 2019.

This notice is a summary only. The complete terms, including the definitions of what parties and claims are being released are set forth in the full-length Notice, settlement agreements, and the Court filings which may be obtained at **www.AutoDealerSettlement.com**.

**For More Information, Contact the Settlement Administrator Toll Free at (888) 565-3171 or Visit www.AutoDealerSettlement.com.**

Notice Insertion Text for Auto Dealer Monthly Magazine




**Legal Notice**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN**
*In re Automotive Parts Antitrust Litigation*, **No. 12-md-02311**
**If You Are an Automobile Dealership that Purchased New Vehicles or Purchased Certain Parts for a Vehicle in the U.S. Since 1990**
**You Could Receive Money From Settlements of Class Actions**

Lawsuits involving the prices of certain vehicle component parts have been settled with certain Defendants in various class actions in this litigation ("Settling Defendants"). The Settling Defendants are identified below. The cases are separate class actions within the lead case known as *In re Automotive Parts Antitrust Litigation*, 12-md-02311 (E.D. Mich.), which is currently before United States District Judge Marianne O. Battani.

You can make a claim for money benefits if you are an automobile dealership that indirectly purchased certain component parts and/or purchased new vehicles containing these parts ("Dealer") in the District of Columbia or one or more of the following states: Arizona, Arkansas, California, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

**These Settlements may affect your rights. Read on for more information.**

**What Are The Lawsuits About?**

The separate lawsuits claim that the Defendants in each lawsuit engaged in unlawful agreements that had the effect of impacting the price of certain vehicle component parts. The lawsuits claim that, as a result of the relevant Defendants' conduct, Dealers paid more than they should have for the parts at issue and paid more for the new vehicles in which those parts are contained. The lawsuits also allege that Dealers were unable to pass on all of these increased costs to their customers.

These cases are proceeding as class actions for monetary recovery for Dealers in the states listed in this Notice and the District of Columbia. The lawsuits also seek nationwide injunctive relief. Although the Settling Defendants have agreed to settle, the Settling Defendants and certain affiliates deny that they engaged in any wrongdoing or are liable and owe any money or benefits to Plaintiffs. The Court has not yet decided who is right. The Settling Defendants have settled to avoid the cost and risk of trials.

The Court has appointed the law firms of Cuneo Gilbert & LaDuca, LLP, Larson • King, LLP, and Barrett Law Group, P.A. as interim class counsel ("Class Counsel") in these lawsuits to represent your dealership and all other members of the Dealer class actions. Your dealership will not be charged directly by these lawyers, and any fees that they are paid will come from any settlements or recovery in these lawsuits. If your dealership wants to be represented by its own lawyer, it may hire one at its own expense.

**Who's Included In The Settlements?**

Your dealership is part of one or more of the Settlements if it is a Dealer and falls within the definition of one or more of the settlement classes ("Settlement Classes") approved by Judge Battani. The class definitions are set forth in the full-length Notice, which is available at **www.AutoDealerSettlement.com**. The term "Dealer" or "dealership" means an entity or person authorized to engage in the business of selling and / or leasing new vehicles at retail in the United States. A list of the parts included in these Settlements and their manufacturers can be found at **www.AutoDealerSettlement.com.**

**Who Are The Settling Defendants?**

**A list of the Defendants** involved in this Notice**, their affiliates, and the alleged co-conspirators for each case involving the parts described in the Settlement Class definitions and settlement agreements is available at www.AutoDealerSettlement.com.**

**What Do The Settlements Provide?**

Dealers in the United States who indirectly purchased certain component parts and/or purchased new vehicles containing these component parts, listed in the Settlement Class definitions, in the states listed in this Notice or the District of Columbia may receive money benefits from the Settlements. Dealers who indirectly purchased certain component parts and/or purchased new vehicles containing these component parts, listed in the Settlement Class definitions, may receive other, non-monetary benefits from the Settlements as explained in further detail at www.AutoDealerSettlement.com.

The settlement funds (the "Settlement Funds") for Dealers in these Settlements total at least $88 million. A table detailing the respective Settlements and the parts involved can be found in the full-length Notice, which is available at **www.AutoDealerSettlement.com**. The amount of money your dealership may receive, if any, will depend upon where the dealership purchased the affected vehicles or component parts, the type and quantity of vehicles and parts the dealership purchased in the states listed above and the District of Columbia, and the total number of claims made by eligible Dealers. Attorneys' fees and expenses and class representative awards will be requested and may be awarded by the Court.

Under all of the Settlements, the Settling Defendants will provide certain cooperation in the Dealers' continuing litigation against the Non-Settling Defendants. Some of the settlement agreements give the Settling Defendants the right to reduce the amount they are required to pay and/or to withdraw from their respective Settlements in the event that certain percentages of Settlement Class members elect to exclude themselves from the respective Settlement(s). The final judgments and/or settlement agreements with respect to certain of the Settling Defendants will provide for additional non-monetary relief in the form of an agreement not to engage in certain conduct with respect to the identified parts for a period of two years from the date of entry of the final judgment. These terms are all contained in the proposed final judgments and/or settlement agreements relating to these Settling Defendants, and may also be viewed at **www.AutoDealerSettlement.com.**

**What Are My Rights And Options?**

1. File a Proof of Claim to participate in the Settlements

**If your dealership filed a valid Proof of Claim in either of the first three rounds of dealership settlements in this litigation, you may rely on that Proof of Claim and do nothing further to participate in the current settlements.** If you choose this option, the information you provided in the prior Proof of Claim will be used to determine your dealership's share in the net proceeds of the current proposed Settlements.

**To remain in the Settlement Classes, you do not need to take any further action at this time. However, to share in the Settlement Funds, and only if your dealership did not submit a Proof of Claim form in the prior dealership settlements in this litigation, your dealership must submit a Proof of Claim form that is available at www.AutoDealerSettlement.com.** Proof of Claim forms must be filed by midnight Eastern Standard time on April 17, 2020 at **www.AutoDealerSettlement.com** or sent via USPS Mail, postmarked by April 17, 2020 to: **Auto Dealer Settlement Administrator, PO Box 404000, Louisville, KY 40233-4000**

If you choose the File a Proof of Claim option, your dealership will share in the net proceeds of the Settlement Funds if: (1) your dealership's Proof of Claim is timely and valid; (2) your dealership is entitled to a distribution under the Plans of Allocation that have been or will be approved by the Court; and (3) the proposed Settlements are finally approved by the Court. Your dealership will be bound by the judgments and releases to be entered by the Court as described in the full-length Notice.

2. Opt your dealership out of the Settlements

If your dealership does not want to be included in one or more of the settlements (as defined in the full-length Notice), it may request to be excluded. A list of the settlements can be found at **www.AutoDealerSettlement.com**. If your dealership timely submits a valid request for exclusion, it will not share in the Settlement Funds from the corresponding Settlement, and it will not be bound by the corresponding Judgment(s). It will then be your dealership's responsibility to pursue any of the claims that it preserves by opting out of one or more of the Settlement Classes. To be valid, the request for exclusion / opt out must follow the instructions set forth in the full-length Notice and be postmarked by November 22, 2019. The full instructions and requirements for opting out may be viewed at **www.AutoDealerSettlement.com.**

3. Object to the Settlements

If your dealership wishes to object to one or more of the Settlements or the request for attorney's fees, expenses, and service awards, it may (as discussed below) write to the Court and counsel about why it objects. It is possible that the Settlements and request for fees, expenses, and service awards will be approved despite your objection. To be considered, your dealership's objection must be filed according to the procedures set forth in the full-length Notice and postmarked no later than November 22, 2019. The full instructions and requirements for objecting to one or more of the Settlements may be viewed at **www.AutoDealerSettlement.com.**

4. Attend the Final Approval Hearing

The Court will hold a Final Approval Hearing on December 10, 2019 at 10:00 a.m. at the United States District Court for the Eastern District of Michigan, Theodore Levin U.S. Courthouse, 231 W. Lafayette Blvd., Courtroom 272, Detroit, MI 48226 to decide whether to approve the Settlements and the request for attorney's fees, expenses, and service awards. You may attend and ask the Court's permission to speak, but you don't have to participate in the hearing in order to attend. To request to speak at the Final Approval Hearing, you must follow the procedures set forth in the full-length Notice no later than November 29, 2019.

This notice is a summary only. The complete terms, including the definitions of what parties and claims are being released are set forth in the full-length Notice, settlement agreements, and the Court filings which may be obtained at **www.AutoDealerSettlement.com.**

**For More Information, Contact the Settlement Administrator Toll Free at (888) 565-3171 or Visit www.AutoDealerSettlement.com.**

# Automotive News Magazine – 10/14/2019 Edition



# Automotive News Magazine – 10/21/2019 Edition



# Automotive News Magazine – 10/28/2019 Edition



# Exhibit − 3

## Automotive News– Website Banners







## Auto Dealer Monthly (Digital Dealer) – Website Banners

### mobile



### leaderboard




# Exhibit − 4

## WARDS E-Newsletter – Banner Ad Samples





# Exhibit – 5

**Facebook Banner Ad Unit**



# Exhibit – 6

## Twitter.com - Promoted Tweet Samples









# Exhibit − 7

| Group | Entity Name | DBA | Address |
|---|---|---|---|
| Berkshire Hathaway Automotive | ABC Nissan LLC | ABC Nissan | 1300 E. Camelback Road Phoenix, AZ 85014 |
| Berkshire Hathaway Automotive | ACVT Motors, LLC | Acura of Peoria | 9190 W. Bell Road Peoria, AZ 85382 |
| Berkshire Hathaway Automotive | LVN Motors, LLC | Airpark Dodge Chrysler Jeep | 780 I E. Frank Lloyd Wright Blvd. Scottsdale, AZ 85260 |
| Berkshire Hathaway Automotive | FSVT Motors, LLC | Alpha Romeo and Fiat of Scottsdale | 16301 N. 78th Street Scottsdale, AZ 85260 |
| Berkshire Hathaway Automotive | Bell Road Motors, LLC | Arrowhead Cadillac | 8301 W. Bell Road Glendale, AZ 85308 |
| Berkshire Hathaway Automotive | BHVT Motors, LLC | Bell Honda | 701 W. Bell Road Phoenix, AZ 85023 |
| Berkshire Hathaway Automotive | MCVT Motors, LLC | Camelback Ford Lincoln | 1330 E. Camelback Rd. Phoenix, AZ 85014 |
| Berkshire Hathaway Automotive | CHVT Motors, LLC | Camelback Hyundai | 1500 E. Camelback Rd. Phoenix, AZ 85014 |
| Berkshire Hathaway Automotive | CHVT Motors, LLC | Camelback Kia | 1450 E. Camelback Rd. Phoenix, AZ 85014 |
| Berkshire Hathaway Automotive | CTVT Motors, LLC | Camelback Toyota | 1550 E. Camelback Rd. Phoenix, AZ 85014 |
| Berkshire Hathaway Automotive | Showcase Automotive LLC | Camelback Mazda | 1521 E. Camelback Rd Phoenix, AZ 85014 |
| Berkshire Hathaway Automotive | Showcase Automotive LLC | Camelback Subaru | 1521 E. Camelback Rd Phoenix, AZ 85014 |
| Berkshire Hathaway Automotive | Showcase Automotive LLC | Camelback Volkswagen | 1499 E. Camelback Rd. Phoenix, AZ 85014 |
| Berkshire Hathaway Automotive | PIVT Motors, LLC | Infiniti of Peoria | 9167 W. Bell Road Peoria, AZ 85382 |
| Berkshire Hathaway Automotive | Infiniti of Scottsdale, LLC | Infiniti of Scottsdale | 7601 E. Frank Lloyd Wright, Suite 2 Scottsdale, AZ 85260 |
| Berkshire Hathaway Automotive | IOC Motors, LLC | Infiniti on Camelback | 1250 E. Camelback Rd. Phoenix, AZ 85014 |
| Berkshire Hathaway Automotive | Midway Chevrolet Company I, LLC | Midway Chevrolet | 2323 W. Bell Road Phoenix, AZ 85023 |
| Berkshire Hathaway Automotive | Midway Holdings I, LLC | Midway Nissan | 220 I W. Bell Road Phoenix, AZ 85023 |
| Berkshire Hathaway Automotive | PFVT Motors, LLC | Peoria Ford | 9130 W. Bell Road Peoria, AZ 85382 |
| Berkshire Hathaway Automotive | PNVT Motors, LLC | Peoria Nissan | 9151 W. Bell Road Peoria, AZ 85382 |
| Berkshire Hathaway Automotive | Pinnacle Nissan, LLC | Pinnacle Nissan | 7601 E. Frank Lloyd Wright Blvd. Scottsdale, AZ 85260 |
| Berkshire Hathaway Automotive | Showcase Motors LLC | Showcase Honda | 1333 E. Camelback Road Phoenix, AZ 85014 |
| Berkshire Hathaway Automotive | SSLVT Motors, LLC | Superstition Springs Lexus | 6206 E. Test Drive Mesa, AZ 85206 |
| Berkshire Hathaway Automotive | SFVT Investors, LLC | Surprise Ford | 16825 W. Waddell Road Surnrise, AZ 85388 |
| Berkshire Hathaway Automotive | V. T. Motors, LLC | Van Chevrolet | 8585 E. Frank Lloyd Wright Blvd. Scottsdale, AZ 85260 |
| Berkshire Hathaway Automotive | V. T. Motors, LLC | Van Buick GMC | 8585 E. Frank Lloyd Wright Blvd. Scottsdale, AZ 85260 |
| Berkshire Hathaway Automotive | VOP Motors, LLC | Volvo Cars of Phoenix | 2205 W. Bell Road Phoenix, AZ 85023 |
| Berkshire Hathaway Automotive | CAVT,LLC | Cerritos Nissan | 18707 E. Studebaker Cerritos, CA 90703 |
| Berkshire Hathaway Automotive | FFBH Motors, LLC | Frontier Ford | 3701 Stevens Creek Blvd Santa Clara, CA 95051 |
| Berkshire Hathaway Automotive | BWNVT Motors, LLC | Serramonte Ford | 999 Serramonte Blvd. Colma, CA 94014 |
| Berkshire Hathaway Automotive | MVVT Motors, LLC | South County Lexus at Mission Viejo | 28242 Marguerite Pkwy Mission Vieio, Ca 92692 |
| Berkshire Hathaway Automotive | GMVT Motors, LLC | David Maus Chevrolet | 972 Towne Center Blvd. Sanford, FL 32771 |
| Berkshire Hathaway Automotive | FLTVT, L.L.C | David Maus Toyota | PO Box 521747 Longwood,FL 32752 Overnight: 1160 Rinehart Rd. Sanford, FL 32771 |
| Berkshire Hathaway Automotive | DMVW Motors, LLC | David Maus Volkswagen | 5474 S. Orange Blossom Trail Orlando, FL 32839 |

| | | | |
|---|---|---|---|
| Berkshire Hathaway Automotive | RVWVT Motors, LLC | David Maus Volkswagen North | 1050 Lee Road<br>Orlando, FL  32810 |
| Berkshire Hathaway Automotive | DBVT Motors, LLC | Delray Honda | 2500 S. Federal Hirrhwav Delrav Beach, FL  33483 |
| Berkshire Hathaway Automotive | KTVT Motors, LLC | Toyota of Deerfield Beach | 1441 S. Federal Highway Deerfield Beach, FL 33441 |
| Berkshire Hathaway Automotive | GAFVT Motors, LLC | Gwinnett Place Ford Lincoln | 3230 Satellite Boulevard<br>Duluth, GA  30096 |
| Berkshire Hathaway Automotive | GANVT Motors, LLC | Gwinnett Place Nissan | 2555 Pleasant Hill Rd. Duluth, GA  30096 |
| Berkshire Hathaway Automotive | GAWVT Motors, LLC | Mall of Georgia Ford | 4525 Nelson Brogdon Blvd.<br>Buford, GA  30518 |
| Berkshire Hathaway Automotive | MBSABH Motors LLC | Mercedes-Benz of South Atlanta | 3775 Royal South Parkway<br>Atlanta, GA  30349 |
| Berkshire Hathaway Automotive | Crown Automotive, LLC | Crown Toyota | 255 W. Pershing Road Decatur, Illinois  62526 Mail:  PO Box  3370 Decatur, Illinois 62524 |
| Berkshire Hathaway Automotive | Crown Motors, LLC | Crown Nissan | 165 W. Pershing Road Decatur, Illinois  62526 |
| Berkshire Hathaway Automotive | Miles Motors, LLC | Miles Chevrolet | 150 W. Pershing Road Decatur, Illinois 62526 Mail:  PO Box 3160 Decatur, Illinois 62524 |
| Berkshire Hathaway Automotive | Kenny Kent Chevrolet Co. LLC | Kenny Kent Chevrolet | 4600 Division Street<br>Evansville, IN  47715 |
| Berkshire Hathaway Automotive | Evansville Automotive (LEX),LLC | Kenny Kent Lexus | 5600 Division Street Evansville, IN  47715 |
| Berkshire Hathaway Automotive | Evansville Automotive | Kenny Kent Toyota LLC | 5600 Division Street Evansville, IN  47715 |
| Berkshire Hathaway Automotive | Reliable Motors (AU), LLC | Audi Springfield | 3500 E. Sunshine<br>Springfield, MO  65809 |
| Berkshire Hathaway Automotive | Reliable Motors (AU), LLC | BMW of Springfield | 3500 E. Sunshine<br>Springfield, MO  65809 |
| Berkshire Hathaway Automotive | Reliable Chevrolet !MO),LLC | Infiniti of Springfield | 3625 S. Campbell Ave. Springfield, MO 65807 |
| Berkshire Hathaway Automotive | Reliable Chevrolet (MO),LLC | Reliable Chevrolet and Elite Automotive | 3655 S. Campbell Ave. Snrimzfield, MO  65807 |
| Berkshire Hathaway Automotive | Reliable Chevrolet (MO),LLC | Reliable Chevrolet and Elite Automotive | 3655 S. Campbell Ave. Springfield, MO  65807 |
| Berkshire Hathaway Automotive | Reliable Imports & Motorhomes, LLC | Reliable Imports & Motorhomes | 438 S. Ingram Mill Road Springfield, MO  65802 |
| Berkshire Hathaway Automotive | Reliable Imports & Motorhomes, LLC | Reliable Hyundai | 438 S. Ingram Mill Road Springfield, MO  65802 |
| Berkshire Hathaway Automotive | Reliable Imports & Motorhomes, LLC | Reliable Mazda | 438 S. Ingram Mill Road Springfield, MO  65802 |
| Berkshire Hathaway Automotive | Reliable Imports & Motorhomes, LLC | Reliable Subaru | 438 S. lngram Mill Road Sprinofield, MO  65802 |
| Berkshire Hathaway Automotive | Reliable Automotive | Reliable Lexus | 3521 E. Sunshine<br>Snrinofield, MO  65809 |
| Berkshire Hathaway Automotive | Van Chevrolet- Cadillac, LLC | Van Chevrolet-Cadillac | 100 NW Vivion Rd. Kansas City, MO  64118 |
| Berkshire Hathaway Automotive | Van Chevrolet- Cadillac, LLC | Van Subaru | 90 NW Vivion Rd. Kansas Citv, MO  64118 |
| Berkshire Hathaway Automotive | Husker Auto Group, LLC | BMW of Lincoln | 6741 Telluride Drive<br>Lincoln, NE  68521 |
| Berkshire Hathaway Automotive | Husker Auto Group, LLC | Husker Chevrolet | 6833 Telluride Drive<br>Lincoln, NE  68521 |
| Berkshire Hathaway Automotive | TOHVT Motors, LLC | Village Pointe Toyota | 18201 Cuming Street<br>Omaha, NE  68022 |
| Berkshire Hathaway Automotive | Reliable Chevrolet (NM),LLC | Reliable Chevrolet (NM) | 9901 Coors Blvd. NW Albuquerque, NM  87114 |
| Berkshire Hathaway Automotive | Reliable, LLC | Reliable Nissan | 9951 Coors Blvd. NW Albuquerque, NM  87114 |
| Berkshire Hathaway Automotive | Crest Cadillac II, LLC | Crest Cadillac | 6280 State Highway 121<br>Frisco, TX  75034 |
| Berkshire Hathaway Automotive | Crest Infiniti II, LLC | Crest Infiniti | 6100 State Highway 121<br>Frisco, TX  75034 |
| Berkshire Hathaway Automotive | NFVT Motors, LLC | Crest Nissan of Frisco | 6600 State Highway 121<br>Frisco, TX  75034 |

| | | | |
|---|---|---|---|
| Berkshire Hathaway Automotive | VODVT Motors LLC | Crest Volvo Cars of Frisco | 2701 North Central Expressway Plano, TX  75075 |
| Berkshire Hathaway Automotive | Grand Prairie Ford, LLC | Grand Prairie Ford | 70 I East Palace Parkway Grand Prairie, TX 75050 |
| Berkshire Hathaway Automotive | BFVT Motors, LLC | Grapevine Ford | 801 E. State Highway 114 Grapevine, TX  76051 |
| Berkshire Hathaway Automotive | HFWBH Motors, LLC | Honda of Fort Worth | 3400 W. Loop 820 South Fort Worth, TX  76116 |
| Berkshire Hathaway Automotive | Joe Myers Ford II, LLC | Joe Myers Ford | 16634 NW Freeway Houston, TX  77040 |
| Berkshire Hathaway Automotive | Joe Myers Motors- Three,LLC | Joe Myers Imports | 16500 NW Freeway Houston, TX  77040 |
| Berkshire Hathaway Automotive | Joe Myers Automotive, LLC | Joe Myers Toyota | 19010 NW Freeway Houston, TX  77065 |
| Berkshire Hathaway Automotive | Lone Star Buick-GMC Il,LLC | McKinney Buick-GMC | 3950 S. Central Expressway McKinney, TX  75069 |
| Berkshire Hathaway Automotive | NMVT Motors, LLC | Nissan of McKinney | 3800 S. Central Expressway McKinney, TX  75069 |
| Berkshire Hathaway Automotive | NPTBH Motors LLC | North Park Toyota | 10703 SW Loop 410 San Antonio, TX  78211 |
| Berkshire Hathaway Automotive | Reliable Chevrolet II (TX),LLC | Reliable Chevrolet | 800 N. Central Expressway Richardson, TX  75083 |
| Berkshire Hathaway Automotive | RCJD Motors, LLC | Richardson Chrysler Jeep Dodge Ram | 1321 N. Central Expressway Richardson, TX  75080 |
| Berkshire Hathaway Automotive | Stonebriar Chevrolet I, LLC | Stonebriar Chevrolet | 9950 Highway 121 Frisco, TX  75035 |
| Berkshire Hathaway Automotive | GPVN Motors LLC | Texas Nissan of Grapevine | 701 E. State Highway 114 Grapevine, TX  76051 |
| Berkshire Hathaway Automotive | Grapevine Imports, LLC | Texas Toyota of Grapevine | 1401 W. State Highway 114 Grapevine, TX  76051 Mail: PO Box 1688 Grapevine, TX  76099 |
| Berkshire Hathaway Automotive | Town East Ford II, LLC | Town East Ford | 18411 LBJ Freeway Mesquite, TX 75150 |
| Berkshire Hathaway Automotive | TODVTLLC | Toyota of Dallas | 2610 Forest Lane Dallas, TX  75234 |
| Berkshire Hathaway Automotive | Richardson Automotive II,LLC | Toyota of Richardson | 1221 N. Central Expressway Richardson, TX 75080 |
| Berkshire Hathaway Automotive | TXVTLLC | Trophy Nissan | 5031 N. Galloway Ave. Mesouite, TX  75150 |
| Berkshire Hathaway Automotive | Van Hyundai II, LLC | Van Hyundai | 1301 North I-35 East Carrollton, TX  75006 |
| Berkshire Hathaway Automotive | Artex Automotive Sales II, LLC | Vandergriff Acura | 1100 I-20 West Arlinoton, TX 76017 |
| Berkshire Hathaway Automotive | Vandergriff Chevrolet II,LLC | Vandergriff Chevrolet | 1200  W. I-20 Arlington, TX  76017 Mail: PO Box 180189 Arlimrton, TX  76096 |
| Berkshire Hathaway Automotive | Luke Motor Company II, LLC | Vandergriff Honda | 1104 W. I-20 Arlinoton, TX  76017 |
| Berkshire Hathaway Automotive | Vandergriff Hyundai II, LLC | Vandergriff Hyundai | 1120 West I-20 Arlington, TX  76096 Mail:  PO Box 180189 Arlimrton, TX  76096 |
| Berkshire Hathaway Automotive | Vandergriff Automotive II, LLC | Vandergriff Toyota | 1000 W. I-20 Arlinoton, TX  76017 |
| Berkshire Hathaway Automotive | Irvtex Automotive Sales II, LLC | Westway Ford | 801 W. Airport Freeway Irving, TX  75062 |
| Asbury Automotive Group | Courtesy Lincoln-Mercury, Isuzu | Tampa LM LP. | 9204 Adamo Drive Tampa, FL 33619 |
| Asbury Automotive Group | Courtesy Mazda | WMZ Motors LP. | 3800 W. Hillsborough Ave. Tampa, Fl  33614 |
| Asbury Automotive Group | Courtesy Mazda of Brandon | WMZ Brandon Motors LP | 9208 Adamo Drive Tampa, Fl 33619 |
| Asbury Automotive Group | Courtesy Mitsubishi | Tampa Mil. LP. | 3800 W. Hliisborough Ave. Tampa, FL 33614 |
| Asbury Automotive Group | Courtesy Nissan of Tampa | Precision Nissan, Inc. | 3800 W. Hillsborough Ave. Tampa, FL 33614 |
| Asbury Automotive Group | Courtesy Palm Harbor Honda | Asbury Jax Hon LLC | 31200 US Highway 19 North Palm Harbor, FL 34684 |

| Asbury Automotive Group | Courtesy Toyota of Brandon Courtesy Scion | WTY Motors LP. | 9210 Adamo Drive Tampa, FL 33619 |
|---|---|---|---|
| Asbury Automotive Group | Deland Honda | Asbury Deland-Imports LLC | 1580 S. Woodland Blvd. Deland, FL 32720-7709 |
| Asbury Automotive Group | Infin!U of Tampa | Precision lnfinlti, Inc. | 4600 N. Dale Mabry Hwy. Tampa, FL 33614 |
| Asbury Automotive Group | JW Courtesy Pontiac, GMC. Truck | Asbury Asbury Automotive Tampa, LP. | 3800 W. Hillsborough Ave. Tampa, FL 33614 |
| Asbury Automotive Group | JW Courtesy Pontiac, GMC. Truck | Asbury Asbury Automotive Tampa, LP. | 3800 W. Hillsbourough Ave. Tampa, FL 33614 |
| Asbury Automotive Group | Mercedes-Benz of Ft. Pierce | CFP Motors LLC | 4500 US 1 South Ft. Pierce, FL 34982 |
| Asbury Automotive Group | Mercedes-Benz of Tampa | Precision Motorcars, Inc. | 4400 N. Dale Mabry Hwy Tampa, FL 33614 |
| Asbury Automotive Group | Smart Center Tampa | Precision Motorcars, Inc. | 4400 W. Hiltsborough Avenue Tampa. FL 33614 |
| Asbury Automotive Group | Land Rover St. Louis Jaguar St. Louts | Asbury St. Louis LR L.L.C. | 11654 Olive Blvd. Creve Coeur, MO 63141 |
| Asbury Automotive Group | Plaza InflnlU | Asbury Automotive St. Louis L.L.C. | 755 N. New Ballas Creve Coeur, MO 63141 |
| Asbury Automotive Group | Plaza Lexus | Asbury St. Louis LEX L.L.C. | 777 Decker Lane. Creve Coeur, MO 63141 |
| Asbury Automotive Group | Plaza Mercedes-Benz | Asbury Automotive St. Louis L.L.C. | 11910 Olive Blvd. Creve Coeur, MO 63141 |
| Asbury Automotive Group | Plaza Molar Company  (BMW.Audi) Plaza Audi | Asbury Automotive St. Louis LL.C. | 11630 Olive Blvd. Creve Coeur, MO 63141 |
| Asbury Automotive Group | Plaza Motor Company  (BMW.Audi) Plaza Audi | Asbury Automolive St. Louis L.L.C. | 11830 Olive Blvd. Crave Coeur. MO 63141 |
| Asbury Automotive Group | Plaza Motor Company  (BMW.Audi) Plaza Audi | Asbury Automotive SL Louis L.L.C. | 11830 Olive Blvd. Creve Coeur. MO 63141 |
| Asbury Automotive Group | Plaza Motor Company  (BMW.Audi) Plaza Audi | Asbury Automotive St. Louis L.L.C. | 11830 Olive Blvd. Creve Coeur. MO 63141 |
| Asbury Automotive Group | Plaza Motor Company  (BMW,Audl) Plaza Audi | Asbury Automotive St. Louis L.L,C. | 11830 Olive Blvd. Creve Coeur, MO 63141 |
| Asbury Automotive Group | Plaza Motors West | Asbury St. Louis M LLC. | 951 Technology Or. O'Fallon, Mo 63368 |
| Asbury Automotive Group | Smart Center Creve Coeur | Asbury Automotive St. Louis L.L.C. | 11830 Olive Blvd. Creve Coeur. MO 63141 |
| Asbury Automotive Group | Gray-Oanlals Chevrolet | Asbury MS Chev LLC | 6060 1-55 North Frontage Road Jackson, MS 39211 |
| Asbury Automotive Group | Gray-Daniels Ford llncoln | Asbury MS Gray-Daniels L.L.C. | 201 Octavia St. Brandon, MS 39042 |
| Asbury Automotive Group | Gray-Danlats Hyundal | Asbury MS Metro LL.C. | 975 1-20 W Frontage Rd Jackson MS 39204 |
| Asbury Automotive Group | Gray-Daniels Jeep/Chrysler/ Lincoln Mercury | Asbury Automotive Mississippi L.L.C. | 6060 1-55 Nor1h Frontage Road Jackson, MS 39211 |
| Asbury Automotive Group | Gray-Daniels Jeep/Chrysler/ Lincoln Mercury | Asbury Automotive fytlsslsslppi L.L.C. | 60601·55 North Frontage Road Jackson, MS 39211 |
| Asbury Automotive Group | Gray-Daniels Mazda | Asbury MS Metro l.L.C. | 10871-20 W. Frotage Rd. Jackson, MS 39204 |
| Asbury Automotive Group | Crown Pontiac, GMC, Isuzu | Crown GPG l.L.C. | 2501 Capital Blvd. Raleigh, NC 27604 |
| Asbury Automotive Group | Crown Pontiac, GMC, Isuzu | Crown GPG L.L.C. | 2501 Capital Blvd. Raleigh, NC 27604 |
| Asbury Automotive Group | Crown Pontlac-GMC (BMW, Audi, Kla) | Crown GPG L.L.C. | 3633 W. Wendover Avenue Greensboro, NC 27407 |
| Asbury Automotive Group | Crown Pontlac-GMC (BMW, Audi, Kla) | Crown GPG L.L.C. | 3633 W. Wendover Avenue Greensboro, NC 27407 |
| Asbury Automotive Group | Crown Pontlac-GMC (BMW, Audi, Kla) | Crown GPG l.L.C. | 3633 W. Wendover Avenue Greensboro, NC 27407 |
| Asbury Automotive Group | Crown Pontlac-GMC (BMW, Audi, Kla) | Crown GPG l.L.C. | 3633 W. Wendover Avenue Greensboro, NC 27407 |
| Asbury Automotive Group | Crown Pontlac-GMC (BMW, Audi, Kla) | Crown GPG L.L.C. | 3633 W. Wendover Avenue Greensboro, NC 27407 |
| Asbury Automotive Group | Crown Pontlac-GMC (BMW, Audi, Kla) | Crown GPG L.L.C. | 3633 W. Wendover Avenue Greensboro, NC 27407 |
| Asbury Automotive Group | Crown Volvo | Crown GPG L.L.C. | 3604 W, Wendover Avenue Greensboro, NC 27407 |
| Asbury Automotive Group | Crown Volvo • Chapel HIil | Crown CHV L.L.C. | 1730 N. Fordham Blvd. Chapel-Hill NC 27514 |
| Asbury Automotive Group | Princeton BMW/Mini | Crown PBM, LLC | 3633-C W. Wendover Avenue Greensboro, NC 37407 |
| Asbury Automotive Group | Princeton BMW/Mini | Crown PBM, LLC | 3633 -CW Wendover Avenue Greensboro, NC 27407 |

| Asbury Automotive Group | Dee Thomason Ford | Thomason FRO LLC | 19405 SE Mcloughlin Blvd. Gladstone, OR 97027 |
|---|---|---|---|
| Asbury Automotive Group | Thomason Damerow Hyundai | Thomason DAM LLC | 13555 SW TV Hwy Beaverton, OR 970005 |
| Asbury Automotive Group | Thomason Ford | Thomason FRD LLC | 12325 SW Canyon Rd. Beaverton, OR 97005 |
| Asbury Automotive Group | Thomason Honda | Thomason HON LLC | 19400 SE Mcloughlin Blvd. Gladstone, OR 97027 |
| Asbury Automotive Group | Thomason Hyundai | Thomason HUND LLC | 17833 SE Mcloughlin Blvd. Milwaukee, OR 97267 |
| Asbury Automotive Group | Thomason Mazda | Thomawon MAZ LLC | 19470 SE Mcloughlin Blvd. Gladstone, OR 97027 |
| Asbury Automotive Group | Thomason Nissan | Thonason NISS LLC | 19505 SE Mcloughlin Blvd. Gladstone, OR 97027 |
| Asbury Automotive Group | Thomason Subaru | Thomason SUB LLC | 1404 Main Street Oregon City, OR 97045 |
| Asbury Automotive Group | Thomason Suzuki | Thomason ZUK LLC | 194901 SE Mcloughlin Blvd. Gladstone, OR 97027 |
| Asbury Automotive Group | Thomason Toyota | Thomason TY LLC | 19375 SE Mcloughlin Blvd. Gladstone, OR 97027 |
| Asbury Automotive Group | Crown Jeep Chrysler | Crown SJC L.L.C. | 2736 Laurens Rd, Greenville, SC 29607 |
| Asbury Automotive Group | Crown Nissan Greenvllle | Crown SNI L.L.C. | 2712 Laurens Road Greenville, SC 29607 |
| Asbury Automotive Group | Jaguar Greenville | Asbury SC JPV L.L.C. | 2668 Laurens Road Greenville, SC 29607 |
| Asbury Automotive Group | Land Rover Greenville | Asbury SC JPV L.L.C. | 2668 Laurens Road Greenvllle, SC 29607 |
| Asbury Automotive Group | Lexus of Greenville | Asbury SC Lex L.L.C. | 2660 Laurens Road Greenville, SC 29607 |
| Asbury Automotive Group | Porsche of Greenvllle | Asbury SC JPV L.L.C. | 2668 Laurens Road Greenville, SC 29607 |
| Asbury Automotive Group | Toyota of Greenville Scion of Greenvllle | Asbury SC Toy L.L.C. | 2686 Laurens Road Greenville, SC 29607 |
| Asbury Automotive Group | Volvo of Greenville | Asbury SC JPV L.L.C. | 2686 Laurens Road Greenville, SC 29607 |
| Asbury Automotive Group | BMW of Charlottesvllle | Crown Motorcar Company L.L.C. | 1295 Richmond Avenue, Charlollesvme, VA 22911 |
| Asbury Automotive Group | CrownAcura | Crown RIA L.L.C. | 8704W. Broad Street    Richmond, VA  23294 |
| Asbury Automotive Group | Crown Mini of Richmond | Crown RIB L.L.C. | 8712 W. Broad Street Richmond, VA  23294 |
| Asbury Automotive Group | Crown Porsche | Crown Motorcar Company L.L.C. | 1925 Richmond Ave. Charlottesville, VA22911 |
| Asbury Automotive Group | Richmond Acura | Crown RIB L.L.C. | 8710 W. Broad Street Richmond, VA  23294 |
| Asbury Automotive Group | Richmond BMW | Crown RIB L.L.C. | 8710 W. Broad Street Richmond, VA  23294 |
| Group 1 Automotive | GP1 AL-N, Inc. | Pat Peck Nissan Nissan of Mobile | 1015 East 165 Service Rd. S Mobile, AL 36606 |
| Group 1 Automotive | GP1 AL-SB, LLC | BMW of Mobile BMW of Mobile Collision Center | 3025 Highway 90 West Mobile, AL 36606 |
| Group 1 Automotive | GP1 CA-DMII, Inc. | Mercedes-Benz of Escondido | 1101 W. Ninth Ave. Escondido, CA 92025 |
| Group 1 Automotive | GP1 CA-F, Inc. | Ford of Escondido | 1717 Auto Park Way Escondido, CA 92029 |
| Group 1 Automotive | GP1 CA-SH, Inc. | Hyundai of Escondido | 1919 Auto Park Way Escondido, CA 92029 |
| Group 1 Automotive | GP1 CA-SV, Inc. | Volkswagen  Kearny Mesa | 8040 Balboa Ave. San Diego, CA 92112 |
| Group 1 Automotive | GP1 CA-TTJ, Inc. | Miller Toyota of Anaheim Miller Scion of Anaheim | I:i3 1 N. Euclid St. A:iaheim, CA 92801 |
| Group 1 Automotive | GP1 SAC-T, Inc. | Folsom Lake Toyota Folsom Lake Scion Folsom Lake Collision Center Folsom  Lake Toyota Collision Center Folsom Lake Used Car Outlet | 12747 Folsom Blvd. Folsom, CA 95630 |
| Group 1 Automotive | GP1 SD-DC, Inc. | Rancho Chrysler Dodge Jeep Ram Rancho Auto Group Rancho Collision Center Rancho Collision Center of San Diego | 8010 Balboa Ave. San Diego, CA 92111 |
| Group 1 Automotive | Miller Family Company, Inc. | Miller Honda Miller Honda- Van Nuys | 5355 Van Nuys Blvd. Sherman Oaks, CA 91401 |
| Group 1 Automotive | Miller-DM, Inc. | Mercedes-Benz of Beverly Hills | 9250 Beverly Blvd. Beverly Hills, CA 90210 |
| Group 1 Automotive | GIR2 Florida, LLC | Gulf Breeze Ford | 2665 Gulf Breeze Parkway, Gulf Breeze, FL 32563 |
| Group 1 Automotive | GP1 Atlanta-T, Inc. | World Toyota World Toyota Collision & Glass Center World Scion | 5800 Peachtree Industrial Blvd. Atlanta, GA 30341 |
| Group 1 Automotive | Jim Tidwell Ford, Inc. | Jim Tidwell Ford Group I Atlanta Group I Automotive Southeast Region | 2205 Barrett Lakes Blvd. Kennesaw, GA 30144 |
| Group 1 Automotive | GP1 GA-OM, Inc. | Mercedes-Benz of Augusta | 306I  Washington Rd. Augusta, GA 30907 |
| Group 1 Automotive | Perimeter Ford, Inc. | Sandy Springs Ford | (legal address)  800 Gessner Road, Suite 500 Houston, **TX** 77024 |

| Group 1 Automotive | GP1 Atlanta-FLM II, Inc. | Alpharetta Lincoln Mercury | (legal address) 800 Gessner Road, Suite 500 Houston, TX 77024 |
| Group 1 Automotive | GP1 Atlanta-FLM, Inc. | Snellville Lincoln Mercury | 1575 Scenic Highway Snellville, GA, 30278 |
| Group 1 Automotive | Shamrock Chevrolet, Inc. | World Chevrolet Milton | (legal address) 800 Gessner Road, Suite 500 Houston, TX 77024 |
| Group 1 Automotive | Flamingo Ford, Inc. | World Ford Homestead | (legal address) 800 Gessner Road, Suite 500 Houston, TX 77024 |
| Group 1 Automotive | GP1 GA-Fil, LLC | Jim Tidwell Ford Group 1 Atlanta Group 1 Automotive - Southeast Region Tidwell Collision Center of Kennesaw Tidwell Ford Collision Center | 2205 Barrett Lakes Blvd. Kennesaw, GA 30144 |
| Group 1 Automotive | GPI-GA-FIII, LLC | Rivertown Ford | 1680 Whittlesey Rd. Columbus, GA 31904 |
| Group 1 Automotive | GP1 GA-SU, LLC | Rivertown Subaru Rivertown Auto Mall Bargain Center of Columbus Rivertown Bargain Center | 1661 Whittlesey Rd. Columbus, GA 31904 |
| Group 1 Automotive | GP1 GA TII, LLC | Rivertown Toyota Rivertown Scion | 1651 Whittlesey Rd. Columbus, GA 31904 |
| Group 1 Automotive | GP1 GA-SU, LLC | Volvo Cars Columbus | 1651 Whittlesey Rd. Cclumbus, GA 31904 |
| Group 1 Automotive | GP1 GA-CC, LLC | World Collision at the Mall of Georgia Mall of Georgia Collision Center | 4641 Harrison Run Court Buford, GA 30518 |
| Group 1 Automotive | GP1 GA-T, LLC | World Toyota World Toyota Collision & Glass Center World Toyota Collision Center of Atlanta | 5800 Peachtree Industrial Blvd. Atlanta, GA 30341 |
| Group 1 Automotive | GP1 KS-SB, Inc. | Baron BMW Baron Mini Baron BMW Collision Center Baron Collision Center of Kansas City | 9010 Shawnee Mission Parkway Merriam, KS 66202 9000 Shawnee Mission Parkway Merriam, KS 66202 |
| Group 1 Automotive | GP1 KS-SH, Inc. | Shawnee Mission Hyundai | 7050 Frontage Rd. Merriam, KS 66203 |
| Group 1 Automotive | GP1 KS-SK, Inc. | Shawnee Mission Kia Used Car Sales | 7951 Shawnee Mission Parkway Merriam, KS 66202 7810 Shawnee Mission Parkway Merriam, KS 66202 |
| Group 1 Automotive | GP1 KS-SV, LLC | Baron Volkswagen | 9010 Shawnee Mission Parkway Merriam, KS 66202 |
| Group 1 Automotive | Harvey Ford, LLC | Don Bohn Ford Don Bohn Superstore Don Bohn Used Cars Don Bohn Ford Lincoln Mercury | 3737 Lapalco Blvd. Harvey, LA 70058 |
| Group 1 Automotive | Harvey GM, LLC | Don Bohn Buick GMC Don Bohn Superstore | 3815 Lapalco Blvd Harvey, LA 70058 |
| Group 1 Automotive | Harvey Operations-T, LLC | Bohn Brothers Toyota Bohn Brothers Scion Bohn Brothers Quality Select Used Cars | 3611 Lapalco Blvd. Harvey, LA 70058 |
| Group 1 Automotive | GP1 LA-SH, LLC | Bohn Hyundai | (legal address) 800 Gessner Road, Suite 500 Houston, TX 77024 |
| Group 1 Automotive | Bohn-FII, LLC | Bohn Ford | 3737 Lapalco Boulevard Harvey, LA 70058 |
| Group 1 Automotive | Bohn Holdings, LLC | Don Bohn Dodge | (legal address) 800 Gessner Road, Suite 500 Houston, TX 77024 |
| Group 1 Automotive | Harvey-SM, LLC | Don Bohn Mitsubishi | (legal address) 800 Gessner Road, Suite 500 Houston, TX 77024 |
| Group 1 Automotive | Harvey-FLM, LLC | Don Bohn Lincoln Mercury Don Bohn Superstore | 3737 Lapalco Boulevard Harvey, LA 70058 |
| Group 1 Automotive | Harvey-T, Inc. | Harvey Toyota | (legal address) 800 Gessner Road, Suite 500 Houston, TX 77024 |
| Group 1 Automotive | GP1 LA-FII, LLC | Rountree Ford Lincoln | 8770 Business Park Dr. Shreveport, LA 71105 |
| Group 1 Automotive | GP1 LA-H, LLC | Honda of Slidell | 510 E. Howze Beach Rd. Slidell, LA 70461 |
| Group 1 Automotive | GPI MD-SB, Inc. | BMW of Annapolis Mini of Annapolis | 31 Old Mill Bottom Rd. Annapolis, MD 21409 |
| Group 1 Automotive | Danvers-SB, Inc. | BMW of Stratham Ira BMW of Stratham | 71 Portsmouth Ave. Stratham, NH 03885 |
| Group 1 Automotive | GPI NH-T, Inc. | Ira Toyota of Manchester Ira Scion of Manchester | 33 Auto Center Rd. Manchester, NH 03103 |

| Group 1 Automotive | GPI NH-TL, Inc. | Ira Lexus of Manchester | 18 Kilton Rd. Bedford, NH 03110 |
|---|---|---|---|
| Group 1 Automotive | NJ-DM, Inc. | Mercedes-Benz of Freehold | 4380 Route 9 Freehold, NJ 07728 |
| Group 1 Automotive | NJ-H, Inc. | Honda of Freehold | (legal address) 800 Gessner Road, Suite 500 Houston, TX 77024 |
| Group 1 Automotive | NJ-HII, Inc. | Boardwalk Honda | 6807 Tilton Rd. Egg Harbor Township, NJ 08232 |
| Group 1 Automotive | NJ-HA, Inc. | Elite Acura | 538 Route 38 East Maple Shade, NJ 08052 |
| Group 1 Automotive | NJ-HALi, Inc. | Boardwalk Acura | 6806 Tilton Rd. Egg Harbor Township, NJ 08234 |
| Group 1 Automotive | NJ-SB, Inc. | BMW of Atlantic City | 6807 Tilton Rd. Egg Harbor Township, NJ 08232 |
| Group 1 Automotive | NJ-SV, Inc. | Volkswagen of Freehold | 4360 Route 9 Freehold, NJ |
| Group 1 Automotive | GP1 NJ-HA, LLC | Elite Acura | 2840 Route 73 North Maple Shade, NJ 08052 |
| Group 1 Automotive | NJ-SB, LLC | BMW of Atlantic City BMW of Atlantic City Collision Center | 6037 Black Horse Pike Egg Harbor Township, NJ 08234 |
| Group 1 Automotive | Mark Buick GMC Pontiac GMC Truck | Sunshine Buick Pontiac GMC Truck | 5200 E San Mateo NE Albuquerque, NM 87109 |
| Group 1 Automotive | Mark Chevrolet, Inc. | Casa Chevrolet | 7201 Lomas Blvd NE Albuquerque, NM 87110 |
| Group 1 Automotive | Mark CJ, Inc. | Casa Chrysler Plymouth Jeep | 9733 Coors Blvd Albuquerque, NM 87114 |
| Group 1 Automotive | Casa Mitsubishi, Inc. | | 9733 Coors Blvd., NE |
| Group 1 Automotive | GPI NM-J, Inc. | Land Rover Santa Fe | 2582 Camino Entrada Santa Fe, NM 87507 |
| Group 1 Automotive | GPI NM-LRII, Inc. | Land Rover Santa Fe | 2582 Camino Entrada Santa Fe, NM 87507 |
| Group 1 Automotive | GP1 NM-SB, Inc. | Sandia BMW Sandia MINI | 6001 Pan American Frwy. Albuquerque, NM 87109 |
| Group 1 Automotive | GP1 NM-SBII, Inc. | Santa Fe BMW Santa Fe MINI | 2578 Camino Entrada |
| Group 1 Automotive | GP1 NM-SC, LLC | Sandia BMW Motorcycles | 6001 Pan American Frwy. Albuquerque, NM 87109 |
| Group 1 Automotive | GP1 NM-SCII, LLC | Santa Fe BMW Motorcycles | 2544 Camino Edward Ortiz Santa Fe, NM 87507 |
| Group 1 Automotive | GP1 NM-TL, Inc. | Lexus of Albuquerque Lexus of Santa Fe | 4821 Pan America Frwy. Albuquerque, NM 87109 |
| Group 1 Automotive | GPI NY-FV, LLC | Hassel Volvo Glen Cove | 79 Cedar Swamp Road, Glen Cove, NY 11542 |
| Group 1 Automotive | GP1 NY-DM, LLC | Mercedes-Benz of Massapequa (includes Sprinter) | IOI E. Sunrise Highway Amityville, New York 11701 |
| Group 1 Automotive | GPINY-SB, LLC | Hassel BMW MINI | 291 West Sunrise Highway, 280 West Sunrise Highway, Freeport, NY 11520 |
| Group 1 Automotive | NY-FV II, Inc. | Hassel Volvo Huntington | 345 West Jericho Turnpike, Huntington, NY11743 |
| Group 1 Automotive | Bob Howard Automotive-East, Inc. | South Pointe Chevrolet South Pointe Truck Annex | 9146 S. Memorial Dr. Tulsa, OK 74133 |
| Group 1 Automotive | Bob Howard Chevrolet, Inc. | Bob Howard Chevrolet | 13130 N. Broadway Ext. Oklahoma City, OK 73114 |
| Group 1 Automotive | Bob Howard Dodge, Inc. | Bob Howard Chrysler Dodge Jeep | 13250 N. Broadway Ext. Oklahoma City, OK 73114 |
| Group 1 Automotive | Bob Howard Motors, Inc. | Bob Howard Toyota Bob Howard Scion Bob Howard Downtown Ford Lincoln Mercury Bob Howard Downtown Lincoln-Mercury | 12929 North Kelley Ave. |
| Group 1 Automotive | Howard Pontiac-GMC, Inc. | Bob Howard Automall | 13300 North Broadway Extension Oklahoma City, OK 73114 |
| Group 1 Automotive | Howard-GMIII, Inc. | Crown Buick Bob Howard Crown Buick | 4444 South Sheridan Road Tulsa, OK 74145 |
| Group 1 Automotive | Howard-SI, Inc. | Bob Howard Isuzu | (legal address) 800 Gessner Road, Suite 500 Houston, TX 77024 |
| Group 1 Automotive | Howard-DCII, Inc. | Crown Auto World Crown Jeep Bob Howard Crown Jeep Bob Howard Crown Chrysler Jeen | (legal address) 800 Gessner Road, Suite 500 Houston, TX 77024 |
| Group 1 Automotive | Howard-DC, Inc. | Bob Howard Dodge Chrysler Jeep | (legal address) 800 Gessner Road, Suite 500 Houston, TX 77024 |
| Group 1 Automotive | Howard-FLM, Inc. | Bob Howard Lincoln Mercury of Edmund | 616 West Memorial Road Oklahoma City, OK 73114 |
| Group 1 Automotive | GPI SC-SB, LLC | BMW of Columbia GP1 Collision of Columbia Pre-Owned and Certified Used Car Satellite | 5919 Two Notch Rd. Columbia, SC 29223 31384 |
| Group 1 Automotive | GPI SC-SBII, LLC | Hilton Head BMW | 1230 Fording Island Rd. Bluffton, SC 29910 |
| Group 1 Automotive | GPI SC-T, LLC | Toyota of Rock Hill Scion of Rock Hill | 640 Galleria Blvd. Rock Hill, SC 29730 |

| | | | |
|---|---|---|---|
| Group 1 Automotive | GPI SC-A, LLC | Audi of Columbia | 6301 Two Notch Road Columbia, SC 29223 |
| Group 1 Automotive | GPI SC-SY, LLC | Advantage Volkswagen CarsAdvantagecars.com Sterling McCall Hyundai Sterling McCall Fiat | 5919 Two Notch Road Columbia, SC 29223 |
| Group 1 Automotive | McCall-F, Inc. | Sterling McCall Ford Sterling McCall Collision Center of Houston Sterling McCall Ford Collision Center | 6445 Southwest Freeway Houston, TX 7707 4 |
| Group 1 Automotive | McCall-H, Inc. | Sterling McCall Honda | 22575 Highway 59 North Kingwood, TX 77339 |
| Group 1 Automotive | McCall-HA, Inc. | Sterling McCall Acura | I 0455 Southwest Freeway Houston, TX 77074 |
| Group 1 Automotive | McCall-N, Inc. | Sterling McCall Nissan Sterling McCall Nissan Collision Center Sterling McCall Nissan Collision Center of Stafford | 12230 Southwest Freeway Stafford, TX 77477 |
| Group 1 Automotive | McCall-SB, Inc. | Advantage BMW Advantage BMW Midtown BMW of Clear Lake Advantage BMW of Clear Lake Mini of Clear Lake Advantage Mini of Clear Lake | 400 Gulf Freeway South League City, TX 77573 |
| Group 1 Automotive | McCall-T, Inc. | Sterling McCall Toyota Sterling McCall Scion | 9400 Southwest Freeway Houston, TX 77074 |
| Group 1 Automotive | McCall-TH, Inc. | Fort Bend Toyota Fort Bend Scion Sterling McCall Toyota of Fort Bend | 20465 Southwest Freeway Richmond, TX 77479 |
| Group 1 Automotive | McCall-TL, Inc. | Sterling McCall Lexus Lexus of Clear Lake Sterling McCall Restoration Center SMR Auto Glass Sterling McCall Collision Center of Clear Lake Sterling McCall Lexus | 10025 Southwest Freeway Houston, TX 77074 18160 Gulf Freeway Friendswood, TX 77546 |
| Group 1 Automotive | GP1 TX-DMII, Inc. | Mercedes-Benz of Clear Lake | 500 Gulf Freeway South League City, TX 770573 |
| Group 1 Automotive | GP1 TX-DMIII, Inc. | Mercedes-Benz of Boerne | 31445 110 West Boerne, TX 78006 |
| Group 1 Automotive | GP1 TX-DMJV, Inc. | Mercedes-Benz of Georgetown Sprinter of Georgetown smart center of Georgetown Georgetown Mercedes-Benz Georgetown Sprinter Georgetown smart center | 7401 South IH-35 Georgetown, Texas 78626 |
| Group 1 Automotive | GP1 TX-HGMIV, Inc. | Munday Chevrolet Sterling McCall Chevrolet Sterling McCall Collision Center North Sterling McCall Pre-Owned Center | 17800 North Freeway Houston, TX 77090 |
| Group 1 Automotive | GP1 TX-HGM, Inc. | Munday Mazda | 555 FM 1960 West Houston, TX 77090 |
| Group 1 Automotive | GP1 TX-HIII, Inc. | Fernandez Honda | 8015 1H 35 South San Antonio, TX 78224 |
| Group 1 Automotive | GP1 TX-NVI, INC. | Cedar Park Nissan | 2121 South Bell Blvd. Cedar Park, TX 78613 |
| Group 1 Automotive | GPITX-SVIII, Inc. | Volkswagen of Alamo Heights | 1402 NE Loop 410 Expressway San Antonio, TX 78209 |
| Group 1 Automotive | GPITX-ARG-MIII, Inc. | Cadillac of Arlington | 200 I North Collins Arlinoton, TX 76011 |
| Group 1 Automotive | GPITX-HGMII,lnc. | Sterling McCall Buick GMC | 10422 Southwest Freeway - Building D Houston, TX 77074 |
| Group 1 Automotive | GP1 TX-SHII, Inc. | Sterling McCall Hyundai South Loop Auto Needs Superstore.corn | 8811 Lakes@610 Drive (New) 8820 Lakes@ 610 Drive (Used)Hocston, TX 77054 |
| Group 1 Automotive | GP1 TX-SVlll, Inc. | Volkswagen of Alamo Heights | 1402 NE Loop 410 Expressway San Antonio, TX 78209 |
| Group 1 Automotive | McCall-SL, Ltd | Lotus of Clear Lake | 300 Gulf FWY South League City, TX 77573 |
| Group 1 Automotive | McCall-SI, Inc. | Sterling McCall Isuzu of Kingwood | (legal address) 800 Gessner Road, Suite 500 Houston, TX 77024 |
| Group 1 Automotive | Maxwell Ford, Inc. | Maxwell Ford Maxwell Ford Supercenter Maxwell Collision Center of Austin Maxwell Ford Collision Center | 5000 South IH-35 Austin, TX 787425 |
| Group 1 Automotive | Maxwell-GMII, Inc. | Freedom Chevrolet | 13483 1-10 West San Antonio, TX 78249 |
| Group 1 Automotive | Maxwell-N, Inc. | Town North Nissan | 9I60A Research Blvd. Austin, TX 78758 |

| | | | |
|---|---|---|---|
| Group 1 Automotive | Maxwell-NII, Inc. | Round Rock Nissan | 3050 N IH-35 Round Rock, TX 78681 |
| Group 1 Automotive | Maxwell Chrysler Jeep Dodge, Inc. | Maxwell Chrysler Dodge Jeep | 14 I 50 Highway 79 West Taylor, TX 76574 |
| Group 1 Automotive | Prestige Chrysler South Ltd. | Maxwell Chrysler South | 13401 North FM 620 Austin, TX 78717 |
| Group 1 Automotive | Maxwell-G Ltd. | Maxwell Pontiac GMC Truck | 3050 North 1H 35 Round Rock, TX 78681 |
| Group 1 Automotive | Maxwell Chrysler Jeep Dodge, Ltd. | Maxwell Superstore Maxwell Country | 13401 North FM 620 Austin, TX 78717 |
| Group 1 Automotive | Maxwell-SM, Ltd | Maxwell Mitsubishi North | 800 Gessner Road, Suite 500 Houston, TX 77024 |
| Group 1 Automotive | Highland Autoplex, Inc. | Maxwell Highland | 80C Gessner Road, Suite 500 Houston, TX 77024 |
| Group 1 Automotive | Maxwell-Fil, Ltd | Maxwell Ford of Elgin | 5000 South IH 35 Austin, TX 78745 |
| Group 1 Automotive | Highland Autoplex II, Ltd. | | 800 Gessner Road, Suite 500 Houston, TX 77024 |
| Group 1 Automotive | Town North Suzuki, Inc. | | 800 Gessner Road, Suite 500 Houston, TX 77024 |
| Group 1 Automotive | Chaperral Chrysler, Inc. | Dallas Dodge Chrysler Jeep | 11550 LBJ Freeway Dallas, TX 75238 |
| Group 1 Automotive | Colonial Chrysler - Plymouth, Ltd. | | 800 Gessner Road, Suite 500 Houston, TX 77024 |
| Group 1 Automotive | GP1TX-SV, Inc. | Metro Volkswagen | 2035 W. Airport Blvd. Irving, TX 75062 |
| Group 1 Automotive | Kutz-N, Inc. | Courtesy Nissan | 1777 N. Central Expressway Richardson, TX 75080 |
| Group 1 Automotive | Kutz-DC, Ltd. | McKinney Dodge Dr. Scratch Gene Messer Auto Group Gene Messer Ford Collision Center Gene Messer Collision Center of Lubbock | 800 Gessner Road, Suite 500 Houston, TX 77024 |
| Group 1 Automotive | Lubbock Motors-GM, Inc. | Gene Messer Chevrolet Gene Messer Accessories Gene Messer Collision Center Gene Messer Auto Group Gene Messer Quality Used Cars | 3907 Ave. Q Lubbock, TX 79412 |
| Group 1 Automotive | Lubbock Motors-S, Inc. | Gene Messer Volkswagen Gene Messer Used Cars Gene Messer Value Lot Wolfforth Gene Messer Auto Group Gene Messer Auto Group | 7007 University Ave. Lubcock, TX 79413 |
| Group 1 Automotive | Lubbock Motors-SH, Inc. | Gene Messer Hyundai Gene Messer Auto Group | 4025 W. Loop 289 Lubbock, TX 79407 |
| Group 1 Automotive | GPITX-SK, Inc. | Gene Messer Kia | 6006 19th St. Rear Lubbock, TX 79407 |
| Group 1 Automotive | Lubbock Motors-T, Inc. | Gene Messer Toyota/Scion Gene Messer Auto Group | 6102 19th St. Lubbock, TX 79407 |
| Group 1 Automotive | GP1 TX-HGM, Inc. | David Taylor Cadillac | I 0422 Southwest Freeway, Building B Houston, TX 77074 |
| Group 1 Automotive | GP1 TX-HGMII, Inc. | Sterling McCall Buick GMC | I 0422 Southwest Frwy. Houston, TX 7707 4 |
| Group 1 Automotive | GP1 TX-SBIII, Inc. | BMW of Arlington Mini of Arlington | 2001 N. Collins Arlington, TX 76011 |
| Group 1 Automotive | GP1 TX-ARGMIII, Inc. | Cadillac of Arlington | 2001 N. Collins Arlington, TX 76011 |
| Group 1 Automotive | GP1 TX-SKII, Inc. | Kia of South Austin | 5306 S. IH-35 Austin, TX 78745 |
| Group 1 Automotive | GP1 TX-A. Inc. | DFW Audi | 1701 W. Airport Blvd. Euless, TX 76040 |
| Group 1 Automotive | GP1 TX-All, Inc. | Audi Fort Worth | 116 University Drive Fort Worth, TX 76107 |
| Group 1 Automotive | GP1 TX-AIII, Inc. | Audi El Paso | 1444 Airway Blvd. El Paso, TX 79925 |
| Group 1 Automotive | GP1 TX-DMIV, Inc. | Mercedes-Benz of Georgetown Sprinter of Georgetown smart center of Georgetown | 7401 1-35 Georgetown, TX 78626 |
| Group 1 Automotive | GP1 TX-HAII, Inc. | Sterling McCall Acura Sugar Land | 7201 Addison Ave. Houston, TX 77074 |
| Group 1 Automotive | GP1 TX-P, Inc. | Porsche El Paso | 6421 S. Desert Blvd. El Paso, TX 79932 |
| Group 1 Automotive | GP1 SC, Inc. | Sterling McCall Collision Center of Jersey Sterling McCall Collision of Jersey Village | 18700 Northwest Frwy. Houston, TX 77065 |
| Group 1 Automotive | GP1 TX-SK, Inc. | Gene Messer Kia Gene Messer Auto Group | 6006 19th Street Lubbock, TX 79407 |
| Group 1 Automotive | GP1 TX-SU, Inc. | Subaru El Paso | 1414 Airway Blvd. |

| | Bronx Ford, Inc. | City World Ford (fka Bronx Ford Lincoln Mercury, Inc. dba City World Ford Lincoln Mercury) | 3305 Boston Rd Bronx, NY 10469 |
|---|---|---|---|
| The Major Automotive Companies, Inc. (MAC) | Major Chevrolet Inc. | Major Chevrolet | 43-40 Northern Blvd Long Island City, NY 11101 |
| The Major Automotive Companies, Inc. (MAC) | Major Chrysler Jeep Dodge, Inc. | Major Chrysler Jeep Dodge | 50-30 Northern Blvd Long Island City, NY 11101 |
| | City World Motors LLC | City World Toyota Scion | 3333 Boston Rd Bronx, NY 10469 |

# Exhibit – 8



**AUTOMOBILE DEALERSHIP ACTIONS**

**SUPPLEMENTAL NOTICE MEDIA REPORT**

**STATISTICS THROUGH: 12/5/2019**

| PRINT ADVERTISING | Pub Date or Impressions | Clicks to the Case Website | Click-Thru-Rate (CTR) |
|---|---|---|---|
| 1x Full Page Insertion - Wards Autoworld Magazine | November 2019 Issue Date | | |
| 3x Full Page Insertion - Automotive News Magazine (weekly) | 10/14/2019, 10/21/2019, 10/28/2019 | | |
| 1x Full Page Insertion - Auto Dealer Monthly Magazine (monthly) | November 2019 Issue Date | | |
| WARDSAUTO DEALER EDITION E-Newsletter | 18,951 | 190 | 1.00% |
| **PAID ONLINE ADVERTISING** | | | |
| Automotive News - 166,000 Top Leaderboard and Medium Rectangle | TBD | TBD | TBD |
| Autodealer Monthly - Banner Embedded for 3 Months | 6,318 | 5 | 0.08% |
| Facebook Advertising | 1,098,820 | 7,996 | 0.73% |
| Twitter Promoted Tweet Advertising | 601,976 | 37,003 | 6.15% |
| | 1,707,114 | 45,004 | 2.64% |