# EXHIBIT 8

1   SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
    A Limited Liability Partnership
2   Including Professional Corporations
    SASCHA HENRY, Cal. Bar No. 191914
3   JONATHAN D. MOSS, Cal. Bar No. 252376
    ROBIN A. ACHEN, Cal. Bar No. 287033
4   333 South Hope Street, 43rd Floor
    Los Angeles, California 90071-1422
5   Telephone: 213.620.1780
    Facsimile: 213.620.1398
6   Email:      shenry@sheppardmullin.com
                jmoss@sheppardmullin.com
7               rachen@sheppardmullin.com

8   Attorneys for Defendant
    The Elations Company, LLC
9

10               UNITED STATES DISTRICT COURT

11       CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

12

13  ROBERT MCCRARY, individually and on        Case No. 5:13-cv-00242-JGB
    behalf of all others similarly situated,
14                                             *Honorable Jesus G. Bernal*
                Plaintiffs,
15                                             **CLASS ACTION**
          vs.
16                                             **DEFENDANT THE ELATIONS
    THE ELATIONS COMPANY, LLC, a              COMPANY, LLC'S OPPOSITION
17  Delaware limited liability company and     TO PLAINTIFF'S MOTION TO
    DOES 1-100, inclusive,                     EXCLUDE REBUTTAL REPORT,
18                                             OPINIONS AND TESTIMONY OF
                Defendants.                    RUSSELL W. MANGUM, III, Ph.D.**
19
20                                             Courtroom:    1
                                               Date:         November 10, 2014
21                                             Time:         9:00 a.m.

22                                             Trial Date:   March 17, 2015

23
24
25
26
27
28

## **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ........................................................................................... 1

    A.  The Motion is Premature ................................................................. 1

    B.  Summary of Opposition to Motion ................................................. 2

II.  DR. MANGUM IS EXCEPTIONALLY QUALIFIED ................................... 3

III.  DR. MANGUM'S OPINIONS DO NOT EXCEED THE
PERMISSIBLE SCOPE OF REBUTTAL OPINION ..................................... 4

IV.  DR. MANGUM'S REPORT DISCLOSES THE FACTS AND
EVIDENCE UPON WHICH HE RELIES ..................................................... 6

V.  DR. MANGUM'S CONCLUSIONS ARE WELL WITHIN HIS
EXPERTISE ................................................................................................... 8

VI.  ALL OF DR. MANGUM'S CONCLUSIONS ARE RELIABLE ................. 11

    A.  Opinion No. 1 is Reliable ............................................................. 11

    B.  Opinion No. 2 is Reliable ............................................................. 12

    C.  Opinion No. 3 is Reliable ............................................................. 15

    D.  Opinion No. 4 is Reliable ............................................................. 15

    E.  Opinion No. 5 is Reliable ............................................................. 19

VII.  DR. MANGUM'S OPINIONS ARE RELEVANT AND HELPFUL TO
THE TRIER OF FACT ................................................................................. 20

VIII.  CONCLUSION ............................................................................................ 21

SMRH:433634126.4
DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION TO EXCLUDE RUSSELL W. MANGUM, III, Ph.D

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3

## **Cases**

4    *Am. Express Co. v. Italian Colors Rest.*,

5       133 S. Ct. 2304 (2013) .................................................................. 2

6    *Brazil v. Dole Packaged Foods, LLC,*

7       2014 WL 2466559 (N.D. Cal. May 30, 2014) ................................. 14

8    *Caldera v. The J.M. Smucker Co.*,

       2014 WL 1477400 (C.D. Cal. April 15, 2014)................................. 14
9

     *Carson Harbor Village, Ltd. v. Unocal Corp.*,
10
        270 F.3d 863 (9th Cir. 2001) ........................................................ 7

11   *Comcast Corp. v. Behrend*,

12       133 S. Ct. 1426 (2013) ........................................................... 1, 16

13   *Conagra Foods, Inc.*,

14       2014 WL 2702726, *19 (N.D. Cal. June 13, 2014) ......................... 14

15   *Crowley v. Chait*,

16       322 F. Supp. 2d 530 (D. N.J. 2004)................................................ 6

17   *Daubert v. Merrell Dow Pharmaceuticals, Inc.*,

18       509 U.S. 579, 113 S.Ct. 2786 (1993) ........................................... 11

19   *Downs v. River City Group, LLC*,

        No. 3:11-cv-00885-LRH-WGC, 2014 WL 814303 (D. Nev. Feb. 28, 2014)...... 5
20

21   *Evans v. Mathis Funeral Home, Inc.*,

        996 F.2d 266 (11th Cir. 1993) ...................................................... 20
22

23   *Florek v. Village of Mundelein*,

        649 F.3d 594 (7th Cir. 2011) ....................................................... 20
24

25   *Kumho Tire Co., Ltd. v. Carmichael*,

        526 U.S 137, 119 S.Ct. 1167 (1999) ............................................ 11
26

27   *Lindner v. Meadow Gold Dairies, Inc.*,

        249 F.R.D. 625 (D. Haw. 2008) ..................................................... 5

28

SMRH:433634126.4

*In re Live Concert Antitrust Litigation,*
    863 F.Supp. 2d 966 (C.D. Cal. 2012) ............................................................ 17, 18

*Persinger v. Norfolk & Western Ry. Co.,*
    920 F.2d 1185 (4th Cir. 1990) ............................................................................ 20

*In re Vioxx Class Cases*
    180 Cal. App. 4th 116 (2009) ......................................................................... 1, 14

*Ward v. Dixie Nat'l Life Ins. Co.*
    595 F.3d 164 (4th Cir. 2010) ................................................................................ 7

*Werdebaugh v. Blue Diamond Growers*
    2014 WL 2191901 (N.D. Cal. May 23, 2014) ................................................... 14

**Other Authorities**

Fed. R. Evid. 703 ........................................................................................................ 7

SMRH:433634126.4

DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION TO EXCLUDE RUSSELL W. MANGUM, III, Ph.D

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

### A. The Motion is Premature

The plaintiff's Motion to Exclude Russell W. Mangum, III, Ph.D, is premature. Dr. Mangum is a rebuttal expert regarding the plaintiff's claimed class-wide damages. The defendant filed a motion to decertify the class and motion to exclude the plaintiff's damages expert, David C. Sharp, Ph.D., on August 11, 2014 and those two motions are currently set for hearing on November 10, 2014. (Dkt. Nos. 150 and 151.) If the Court were to grant either of those motions – as the Court should because the motions are meritorious and go to the heart of the obvious fatal flaws in the plaintiff's case – then this Motion would become moot. As the trial is currently set for March 17, 2015, at a minimum, there is no pressing need to have this Motion (filed on minimum time) heard months before trial.

Discovery from the plaintiff's own experts has revealed that the class should be decertified. The plaintiff's expert, Dr. Sharp, proposed Retail Price and Disgorgement Models, but those models fail because they do not measure the difference between the price paid and the value class members received, the only legally viable measure of damages. *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 131 (2009). The remaining models, called the "Price Premium Models," which do purport to measure the difference, are flawed in their methodology and rely on inadequate data. Equally significant, the Price Premium models cannot overcome the fact that both "'clinically proven'-labeled Elations six-packs and non-'clinically proven'-labeled Elations six-packs would more than likely have simultaneously occupied retailer shelves at some point after Aug 2010.…" and *both "would have been sold at the same price.*" (Dkt. No. 150-7, pp. 126-27, ¶ 25.) Without a viable damages model, the class should be decertified. *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013) (plaintiff bears the burden of submitting a viable class-wide

-1-

1  measure of damages and class certification is inappropriate when plaintiff fails to do

2  so).

3        The plaintiff's second expert, Thomas Maronick, Ph.D., established that the

4  allegedly false statement on Elations' packaging, "clinically proven," is not material

5  to consumers.  Among other things:

6  •    Only 14 out of 554 respondents in Dr. Maronick's survey mentioned

7         "clinical" or "clinically proven" when asked the open-ended question of

8         "what, if anything, does the package say or suggest about the product?";

9  •    Only 32 of the 302 respondents identified "clinically proven" as the *most*

10        important reason to buy Elations; and

11  •    Only 46.4% of respondents shared the perception that "clinically proven"

12        means "proven to work/works."

13        Dr. Maronick's results demonstrate that whether "clinically proven" was

14  material varied from class member to class member.  The U.S. Supreme Court has

15  recognized that Federal Rule of Civil Procedure 23 "imposes stringent requirements

16  for certification that in practice exclude most claims." *Am. Express Co. v. Italian*

17  *Colors Rest.*, 133 S. Ct. 2304, 2310 (2013).  It is now clear that the plaintiff class

18  does not meet these stringent requirements.

19      **B.**    **Summary of Opposition to Motion**

20        If the Court is inclined to consider the plaintiff's Motion to Exclude Dr.

21  Mangum now, the Court should deny it.  Unbelievably, the plaintiff asks the Court

22  to exclude Dr. Mangum but did not submit a copy of his expert report with the

23  Motion so that the Court could analyze it in its entirety.  (The defendant submits Dr.

24  Mangum's Report herewith as "Exhibit A" to the Declaration of Sascha Henry.)  It

25  seems that the plaintiff does not want to draw the Court's attention to Dr. Mangum's

26  report.

27        Dr. Mangum is an exceptional expert economist who is unquestionably

28  qualified to offer his rebuttal opinions in this case.  He rebuts the plaintiff's claimed

DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION TO EXCLUDE RUSSELL W. MANGUM, III, Ph.D

1  damages and Dr. Sharp's damages calculations; areas clearly within his expertise.

2  Dr. Mangum's expert report meticulously discloses the facts and evidence upon

3  which he relies.  The report includes 153 footnotes referencing the various materials

4  cited.

5      All of Dr. Mangum's opinions and conclusions are reliable and well-

6  supported.  His criticisms of Dr. Sharp's statistical analyses demonstrate that it is

7  *Dr. Sharp* -- not Dr. Mangum -- who should be excluded because his opinions are

8  not reliable, not scientific, not properly specified and rely on inadequate data.[1]

9  ## II.    DR. MANGUM IS EXCEPTIONALLY QUALIFIED

10     Dr. Mangum is a Senior Vice President of Nathan Associates Inc., an

11  economics and financial consulting firm.  He holds a Ph.D. and M.A. in economics

12  from the University of Southern California, and a B.A. in economics, with honors,

13  from California State University, Fullerton.  He served as an economist with the

14  U.S. Federal Trade Commission, Bureau of Economics, from July 1995 through

15  August 1998.  He has taught courses in undergraduate and graduate economics at

16  Johns Hopkins University, the University of Southern California, Pepperdine

17  University, and Concordia University Irvine, where he currently serves as full-time

18  Resident Faculty in the School of Business, Economics.  He is a member of several

19  professional associations, including the American Economic Association, the

20  Intellectual Property Law Association, the American Bar Association, and the

21  Licensing Executives Society, for which he serves as Chair of the Orange County

22

23

---

24  [1] Indeed, the defendant's Motion to Exclude Dr. Sharp (Dkt. No. 151) is meritorious
25  and a strong contrast from this Motion.  The defendant's motion demonstrates that
    three of Dr. Sharp's five damages models (retail price and two disgorgement
26  models) are not legally viable.  The remaining two price premium models are based
27  upon inadequate data and also ignore the fact that Elations with and without
    "clinically proven" was sold at the same price and that the "clinically proven"
28  language did not impact the consumer purchasing decision.

SMRH:433634126.4                    DEFENDANT'S OPPOSITION TO PLAINTIFF'S
                                    MOTION TO EXCLUDE RUSSELL W. MANGUM, III, Ph.D

1  Chapter.  (Declaration of Sascha Henry ("Henry Decl."), ¶ 2, Exh. A, Expert

2  Rebuttal Report of Russell W. Mangum, III, Ph.D. ("Mangum Report"), pp. 1-2.)

3  　　　Dr. Mangum regularly analyzes issues relating to commercial damages in

4  legal disputes, including in false advertising actions.  He has been qualified as an

5  expert in state and federal courts and provided opinions regarding damages in many

6  cases.  (Henry Decl., ¶ 2, Exh. A, Mangum Report, pp. 1-2.)  Since 2009 alone, Dr.

7  Mangum has testified at deposition or in trial and/or submitted expert reports in 40

8  actions.  (*Id.*, Mangum Report, Exhibit 1.)

9  　　　The defendant engaged Dr. Mangum in this case as a rebuttal expert to

10  evaluate and comment on the opinions and analysis of the plaintiff's expert Dr.

11  David C. Sharp regarding claimed damages, plaintiff's expert Dr. Maronick

12  regarding survey research (insofar as that research relates to damages), and to form

13  his own opinions on the proper amount of damages, if any, owned by the defendant

14  in this matter.  (Henry Decl., ¶ 2, Exh. A, Mangum Report, p. 1.)

15  **III.**　**DR. MANGUM'S OPINIONS DO NOT EXCEED THE PERMISSIBLE**

16  　　　　**SCOPE OF REBUTTAL OPINION**

17  　　　The plaintiff engaged Dr. Sharp to testify as the plaintiff's expert on claimed

18  damages.  Dr. Sharp's Report purports to provide "restitution calculations for the

19  plaintiff Class based upon data and information available at that time."  (Henry

20  Decl., ¶ 3, Exh. B, Sharp Report, p. 2.)[2]  He prepared a Retail Price Model that

21  calculates the average retail price of Elations.  He also prepared two Disgorgement

22  Models that purport to calculate the effect that the defendant's use of "clinically

23  proven" had on the defendant's net revenues and profits.  (*Id.*, pp. 6-9.)  Finally, Dr.

24  Sharp's Price Premium Models purport to calculate the increase in Elations' retail

25  price attributable to the phrase "clinically proven."  (*Id.*, pp. 9-12.)

26  

27  _____

28  [2] For the Court's reference, a copy of Dr. Sharp's Report is attached as "Exhibit B"
to the Declaration of Sascha Henry.

-4-

DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION TO EXCLUDE RUSSELL W. MANGUM, III, Ph.D

1      Dr. Mangum was designated as a witness "to evaluate and comment on the

2 opinions and analysis of Dr. David C. Sharp regarding damages on behalf of the

3 Plaintiffs, the opinions and analysis of Dr. Maronick regarding survey research, and

4 to form [his] own opinions on the proper amount of damages, if any, owed by

5 Elations in this matter." (Henry Decl., ¶ 2, Exh. A, Mangum Report, p. 1.)

6      The plaintiff claims that Dr. Mangum's Opinion Nos. 1 and 3 exceed the

7 scope of permissible rebuttal opinion. (Motion at 9:18-10:4; 13:24-14:20.)[3] They

8 do not. Dr. Mangum concludes as follows:

9 •     Opinion No. 1: "The evidence in this case does not support the proposition

10       that allegedly false statements were expected to have, or in fact did have, a

11       meaningful effect on Elations' sales or prices of the accused products."

12       (Henry Decl., ¶ 2, Exh. A, Mangum Report, p. 3.)

13 •     Opinion No. 3: "Dr. Maronick's survey research conclusions, if taken at face

14       value, do not support the Plaintiff Class' purported calculations of damages in

15       this case." (*Id.*, p. 3.)

16       *Both conclusions clearly rebut the plaintiff's experts' opinions and Dr.*

17 *Sharp's purported restitution calculations for the plaintiff class*. Federal Rule of

18 Civil Procedure 26(a)(2)(D)(ii) allows rebuttal expert testimony if the evidence is

19 "intended solely to contradict or rebut evidence on the same subject matter

20 identified by another party." "Rebuttal expert reports are proper if they contradict or

21 rebut the subject matter of the affirmative expert report." *Downs v. River City*

22 *Group, LLC*, No. 3:11-cv-00885-LRH-WGC, 2014 WL 814303, *2 (D. Nev. Feb.

23 28, 2014); *see also Lindner v. Meadow Gold Dairies, Inc.*, 249 F.R.D. 625, 636 (D.

24 Haw. 2008) ("Thus, the O'Bryne and Glanville June 2007 Reports are proper

25 rebuttal reports if they contradict or rebut the subject matter of the Yost May 2007

26

27   [3] When citing to page/line numbers of the Motion, the defendant uses the pagination

28 appearing at the top of the ECF stamp.

    DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION TO EXCLUDE RUSSELL W. MANGUM, III, Ph.D

Report and the Closure Report.")  "Rebuttal evidence is properly admissible when it will 'explain, repel, counteract or disprove the evidence of the adverse party.'" *Crowley v. Chait*, 322 F. Supp. 2d 530, 551 (D. N.J. 2004) (quoting *United States v. Chrzanowski*, 502 F. 2d 573, 576 (3d Cir. 1974).)

Both Opinion Nos. 1 and 3 are proper rebuttal testimony.  Dr. Sharp's Disgorgement Models and Price Premium Models attempt to quantify the effect of "clinically proven" on the revenue, profits and price.   (Henry Decl., ¶ 3, Exh. B, Sharp Report, pp. 6-8.)  Dr. Sharp simply assumes that "clinically proven" had an effect on the sales of Elations, and creates models that purport to quantify the effect. In contrast, Dr. Mangum opines that the evidence does not support the assumption that "clinically proven" had an effect on the sales and prices.  (Opinion No. 1.) Thus, Dr. Mangum properly rebuts Dr. Sharp's assumptions that there was any causation, further demonstrating that Dr. Sharp's models are flawed.

With respect to Opinion No. 3, the plaintiff proffers Dr. Maronick's survey conclusions to establish that "clinically proven" was material to consumers.  But Dr. Sharp simply makes this assumption without considering Dr. Maronick's survey. The extent to which "clinically proven" actually effects the consumer purchasing decision bears directly on the value of the "clinically proven" claim, including whether the statement commanded a "price premium" in the market and, therefore, is relevant to the plaintiff's claimed damages.  As such, it is also properly the subject of Dr. Mangum's rebuttal testimony on damages and Dr. Sharp's damages calculations.

## IV.  DR. MANGUM'S REPORT DISCLOSES THE FACTS AND EVIDENCE UPON WHICH HE RELIES

The plaintiff argues that Dr. Mangum fails to disclose the facts upon which he relies and bases his opinions upon "hearsay facts" that economists would not ordinarily rely upon to formulate expert opinions.  (Motion at 10:5-9; 19:3-21:6.) The plaintiff is wrong.

-6-

"An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted." Fed. R. Evid. 703. Experts may express opinions based on information made known to them before trial through means other than the expert's own percipient observations. Fed. R. Evid. 703; Advisory Committee Notes. The facts or data relied upon need not be admissible in evidence so long as they are of a type reasonably relied on by experts in the particular field in forming opinions or inferences on the subject. Fed. R. Evid. 703; *Carson Harbor Village, Ltd. v. Unocal Corp.*, 270 F.3d 863, 873 (9th Cir. 2001) ("experts are entitled to rely on hearsay in forming their opinions"); *Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164, 181-82 (4th Cir. 2010) (district court did not abuse its discretion under Federal Rule of Evidence 703 by allowing plaintiff's expert to rely on data in spreadsheets prepared by litigants and counsel, even if hearsay, to form opinion on damages for class members).

Dr. Mangum's report is meticulously footnoted to reference the sources he relied upon to formulate his opinions. Indeed, there are **153 footnotes** in the report referencing materials cited. (Henry Decl., ¶ 2, Exh. A.) Dr. Mangum also disclosed the full list of documents and materials that he reviewed to formulate his opinions, which included, *inter alia*, documents produced in this litigation (identified by bates number), pleadings, disclosures, the plaintiff's expert witness reports, witness declarations, deposition transcripts and exhibits, and discovery responses. (Henry Decl., ¶ 2, Exh. A, Mangum Report, Exhibit 2.)

The plaintiff criticizes Dr. Mangum for relying on conversations he had with the defendant's employees, including Michael Burton (Vice President of Shelf Stable Brands), Brooke Erin Niehoff (assistant brand manager/former marketing specialist), and Ross Dick (finance manager.). (Motion at 12:5-13:17; 19:1-21:6.) According to the plaintiff, this was improper because Dr. Mangum purportedly

-7-

1   ignored the "deposition testimony of these individuals and the discovery produced

2   in litigation" (Motion at 19:19-21.)  This is incorrect.  In fact, in his deposition,

3   Dr. Mangum testified that his discussions with Mr. Burton, Ms. Niehoff and

4   Mr. Dick were "confirmatory" and that "[i]t was more of we had an idea of what he

5   already understood from documents and from depositions.  But I just wanted to talk

6   to them personally to confirm."  (Henry Decl., ¶ 5, Exh. D, Deposition of Russell

7   W. Mangum III, Ph.D. ("Mangum Depo.") at 55:20-56:18.)  As set forth in Dr.

8   Mangum's detailed footnote citations, he relied on the documents and depositions in

9   the record and cited them.  (*See e.g.* Henry Decl., ¶ 2, Exh. A, Mangum Report, p. 9,

10  n. 33 (citing EC00000163-164); p. 10, n. 25 (citing EC00011144-11170); p. 12, n.

11  44-46 (citing the depositions of Ed Klene and Ross Dick); p. 16, n. 58 (citing the

12  Sharp deposition); p. 32, n. 123 (citing DS001220 and EC00011296); p. 34, n.

13  128(citing the Sharp deposition), *etc.*)

14         Far from inappropriate, Dr. Mangum's conversations with Mr. Burton, Ms.

15  Niehoff and Mr. Dick demonstrate that Dr. Mangum was thorough and conducted

16  his due diligence to confirm that the information in his report was accurate.  (Henry

17  Decl., ¶ 5, Exh. D, Mangum Depo. at 55:20-58:18.)  Experts are permitted to rely

18  upon information learned in the course of their assignment to formulate

19  opinions—even where that information is hearsay or otherwise inadmissible—if

20  experts in their field would reasonable rely on such information.  Fed. R. Evid. 703.

21  Undoubtedly, information gleaned from the defendant's key employees who

22  handled the sales and marketing of Elations constitutes facts an expert would (and

23  should) reasonably rely upon.

24  **V.     DR. MANGUM'S CONCLUSIONS ARE WELL WITHIN HIS**

25         **EXPERTISE**

26         The plaintiff argues that Dr. Mangum is not qualified to render Opinion

27  Nos. 1 and 3 because he is an economist and "not an expert in consumer behavior,

28  labeling, grocery-store-shelf placement, or drug efficacy."  (Motion at 16:23-24.)

-8-

*First*, the plaintiff misstates Dr. Mangum's deposition testimony. Citing only an abbreviated portion of his deposition transcript, the plaintiff misleadingly states that Dr. Mangum testified he would not describe himself as a marketing expert or a survey research expert. (Motion at 16:24-28.) To the contrary, Dr. Mangum testified in his deposition that he has provided expert economic analysis that relates to marketing, that his work involves "quite a lot of marketing research", and that much of the work he has done involves marketing strategies. (Henry Decl., ¶ 5, Exh. D, Mangum Depo. at 13:23-15:22.) With respect to surveys, Dr. Mangum testified that he is qualified as an expert to issue opinions relative to surveys *when the survey relates to economic topics*, as opposed to the technical or statistical means by which the survey was conducted. (*Id*. at 23:1-12.)

*Second*, the plaintiff misunderstands Dr. Mangum's opinions. Dr. Mangum's opinions ultimately concern the plaintiff's claimed damages, which he is undisputedly qualified to rebut as an expert economist. Dr. Mangum is not rendering an opinion regarding whether Dr. Maronick's survey meets generally accepted standard for survey research or whether Dr. Maronick's survey provides reliable measures and conclusions. Those topics are properly the subject of Bruce Isaacson, Ph.D.'s rebuttal opinion (the defendant's rebuttal expert on this issue). Rather, Dr. Mangum is rendering an opinion on damages, relying on Dr. Maronick's survey among other evidence in the record. This is permissible under Federal Rule of Evidence 703. In fact, Dr. Mangum makes clear in his report that he "takes Dr. Maronick's opinions at face value" and restricts his commentary on Dr. Maronick's opinions to those "relevant to [his] economic analysis." (Henry Decl., ¶ 2, Exh. A, Mangum Report, p. 13.)

And while it may require expertise to opine on the scientific and/or technical quality of the Dr. Maronick's survey, it does not take an expert to understand that the results of Dr. Manorick's survey demonstrate that "clinically proven" was not material to Elations' consumers. For instance:

-9-

- His survey asked: "What, if anything does the package say or suggest about the product? [Please Specify]." (Henry Decl., ¶ 4, Exh. C, Maronick Report, Exhs. 3-4, Q8, Q18, Q28.)  He then asked the follow-up question:  "Anything else?"  (*Id.*, Q9, Q19, Q29.)  The respondents were given an empty box to provide their answers.  Of a total sample size of 554, **only 14** respondents mentioned "clinical" or "clinically proven" in response to seeing the label images in Dr. Maronick's survey.  (Dkt. 150-2, p. 3 and Exh. A; Dkt 176-7, Exh. Q.)

- Dr. Maronick also asked respondents to choose from eight possible responses as to what was the "<u>most important reason</u> for buying the product."  (Henry Decl., ¶ 4, Exh. C, Maronick Report, Exhs. 3, 4, Q10 (emphasis in original).)  Dr. Maronick referred to this type of questioning as "forced response."  Even when suggested this way, only **32 of 302 --** roughly 10% **--** respondents chose "clinically proven formula" as the most important reason to buy Elations based on their review of the product label.  (*Id.*, pp. 8, 11.)  Joint comfort, healthier joints and glucosamine all were chosen by more respondents than "clinically proven formula."  (*Id.*)

- When asked what "clinically proven" meant to them, the respondents gave a broad array of definitions.  Only 46.4% of respondents in the Part 1 study and 54.1% of the respondents in the Part 2 study thought that "clinically proven formula" mean "[p]roven to work/works."  (Henry Decl., ¶ 4, Exh. C, Maronick Report at p. 9, Table 3, p. 12, Table 6.)  Respondents also believed that "clinically proven formula" meant, among other things, "tested (general)," "scientific study done," "tested in a clinic," and "tested on actual people."  (*Id.* at p. 9, Table 3.)  For a significant portion of the study participants (11.9% for Label 1, Part 1; 15.3% for Label 1, Part 2; **23% for Label 2**), the respondents gave a variety of answers that did not fit into *any* of

-10-

DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION TO EXCLUDE RUSSELL W. MANGUM, III, Ph.D

1         Dr. Maronick's eight categories, so he referred to them simply as

2         "Miscellaneous." (*Id.*, p. 9, 12.)

3  •     In Part 2 of his survey, Dr. Maronick posed a list of possible definitions of

4         "clinically proven," consisting of six that he considered "exhaustive" and,

5         notably, all of which differed from the actual substantive responses he

6         received from the consumer participants in Part 1.

7 Dr. Mangum may consider this highly relevant information in formulating his expert

8 opinions regarding the plaintiff's claimed damages and Dr. Sharp's damages

9 calculations. They certainly corroborate Dr. Mangum's opinion that "clinically

10 proven" did not have a meaningful effect on Elations' sales or prices and that

11 Dr. Sharp's purported class-wide damages calculations are not supported.

12 **VI.   ALL OF DR. MANGUM'S CONCLUSIONS ARE RELIABLE**

13       Expert opinion testimony is deemed sufficiently reliable if the expert has

14 "good grounds" for his or her testimony, *i.e.* if the expert's conclusions are based on

15 the knowledge and experience of his or her discipline rather than on "subjective

16 belief or unsupported speculation." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*,

17 509 U.S. 579, 589-90, 113 S.Ct. 2786, 2795-2796 (1993); *Kumho Tire Co., Ltd. v.*

18 *Carmichael,* 526 U.S 137, 152, 119 S.Ct. 1167, 1176 (1999). All of Dr. Mangum's

19 conclusions are reliable.

20     **A.   Opinion No. 1 is Reliable.[4]**

21       Dr. Mangum's Opinion No. 1 is: "The evidence in this case does not support

22 the proposition that allegedly false statements were expected to have, or in fact did

23 have, a meaningful effect on Elations' sales or prices of the accused products." In a

24 circular argument, the plaintiff essentially claims that Opinion No. 1 is not reliable

25 because Mangum found that the presence of the statement "clinically proven" on the

---

[4] Dr. Mangum identifies five "conclusions." (Henry Decl., ¶ 2, Exh. A, Mangum
Report, p. 3.) The plaintiff refers to them as Dr. Mangum's five "opinions." For the
sake of uniformity, the defendant will also refer to them as "opinions."

    DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION TO EXCLUDE RUSSELL W. MANGUM, III, Ph.D

1   Elations overwrap did not impact the sale or price of Elations.  (Motion at 21:7-
2   22:7.)

3        In the plaintiff's twisted view, a defendant cannot proffer a damages expert in
4   a false advertising lawsuit where there are no damages because the damages expert
5   <u>must find</u>, at the outset, that the accused advertising is both deceptive and material
6   to consumers.  (Motion at 21:12-15.)  Such a requirement turns rebuttal damages
7   analysis on its head.

8        The facts remain that "clinically proven" was not material to consumers, not
9   material to the defendant in determining Elations' price, and that the addition or
10  removal of "clinically proven" to Elations overwrap did not impact the pricing of
11  Elations or Elations' sales.  Dr. Sharp simply assumes there to be a cause and effect
12  relationship between the presence of "clinically proven" on the overwrap and the
13  revenue, profits and price to reach his damages calculation.  Dr. Mangum rebuts the
14  damages calculation by pointing out the flaws in the assumption.

15       **B.**     **<u>Opinion No. 2 is Reliable.</u>**

16       Dr. Mangum's Opinion No. 2 is:  "Elations sale of the accused ready to drink
17  product have not been profitable, with regard to damages based on disgorgement,
18  the lack of profits indicates a lack of damages."  Dr. Mangum concluded that the
19  defendant did not earn any profits on sales of the accused products.  (Henry Decl., ¶
20  2, Exh. A, Mangum Report, p. 12.)  Taking into account the defendant's heavy
21  investment in advertising and promotion during the product's launch in order to
22  establish brand awareness, the defendant suffered losses on Elations.  (*Id.*, p. 13.)
23  There is nothing to disgorge.

24       The plaintiff claims that Opinion No. 2 is not reliable because Dr. Mangum
25  "employs a wildly unique measure of 'costs' in determining net profits."  (Motion at
26  22:9-10.)  This is incorrect.  Dr. Mangum used Cost of Goods Sold ("COGS"), a
27  standard and well-accepted measure of costs.  He notes, however, that "COGS
28  represents only a portion of the costs Elations incurred in connection with making

-12-

1   and selling the accused products. . . . Elations invested heavily in advertising and

2   promotions during the product's launch in order to establish brand awareness . . . .

3   After deducting these additional expenses, Elations did not earn any profits on the

4   accused products during the Class Period, but rather suffered losses." (Henry Decl.,

5   ¶ 2, Exh. A, Mangum Report, pp. 12-13.) Strangely, the plaintiff takes this to mean

6   that Dr. Mangum opined that "fixed costs" like advertising should be added.

7   (Motion at 22:15-17.) But Dr. Mangum does not say that "fixed costs" need to be

8   added to reach his opinions. His actual approach – deducting variable costs – is not

9   rejected by economists in his field. Advertising is *not* a fixed cost. Indeed,

10  Dr. Sharp agreed in deposition that advertising is *not a fixed cost* and testified that

11  Elations' total incremental costs include marketing costs. (Henry Decl., ¶ 6, Exh. E,

12  Deposition of David C. Sharp, Ph.D., Vol. 2 at 194:7-196:9) ("But yeah, the total

13  cost includes all costs that Elations provided, which is costs of goods sold and other

14  marketing costs and all of that.")

15      The plaintiff fails to establish how Dr. Mangum's disagreement with

16  Dr. Sharp is a basis to exclude Dr. Mangum. Indeed, this is the very point of

17  rebuttal opinion. Dr. Mangum possesses sufficient expertise to conclude that the

18  defendant incurred other additional costs in the sale and marketing of Elations,

19  including in advertising and promotions, and articulates those costs in his report.

20  (Henry Decl., ¶ 2, Exh. A, Mangum Report, pp. 12-13, 21-22, and Exhibit 3.)

21      The plaintiff argues that Dr. Mangum "claims that regression analysis is

22  inherently flawed." (Motion at 22:13.) This is incorrect. To the contrary, he

23  testified in his deposition that regression analysis may be appropriately used in

24  many circumstances. (Henry Decl., ¶ 5, Exh. D, Mangum Depo. at 136:8-24;

25  137:17-25.) However, the point is that Dr. Sharp's particular implementation of

26  regression analysis in this case is deeply flawed because "he presumes the very

27  relationships to be evaluated (the effects of an accused statement on sales prices)

28

DEFENDANT'S OPPOSITION TO PLAINTIFF'S
                                          MOTION TO EXCLUDE RUSSELL W. MANGUM, III, Ph.D

1  and builds a model to measure the relationship he has assumed." (Henry Decl., ¶ 2,

2  Exh. A, Mangum Report, p. 17.)

3      *Third*, the plaintiff claims that Opinion No. 2 is not reliable because it is

4  "founded on incorrect legal presumptions with respect to what constitutes

5  'restitution.'" (Motion at 23:6-7.) But the plaintiff fails to articulate exactly how

6  Dr. Mangum's conclusion that Elations was not profitable is contrary to the law

7  regarding restitution. The plaintiff has not identified a single case holding that

8  disgorgement of profits and revenue are proper measures in false advertising cases.

9  Properly calculated, restitution in false labeling cases is "the difference between

10 what the plaintiff paid and the value of what the plaintiff received." *In re Vioxx*

11 *Class Cases*, 180 Cal. App. 4th 116, 131 (2009); *Caldera v. The J.M. Smucker Co.*,

12 2014 WL 1477400, *4 (C.D. Cal. April 15, 2014) (citing *Vioxx* as describing the

13 "proper measure of restitution"); *see also Conagra Foods, Inc.*, 2014 WL 2702726,

14 *19 (N.D. Cal. June 13, 2014) ("Return of the full retail or wholesale prices is not a

15 proper measure of restitution, as it fails to take into account the value class members

16 received by purchasing the products"); *Werdebaugh v. Blue Diamond Growers*,

17 2014 WL 2191901, *22 (N.D. Cal. May 23, 2014) (rejecting expert's proposed full

18 refund model to calculate classwide relief for allegedly falsely-advertised almond

19 milk because "consumers received benefits in the form of nutrition, vitamins, and

20 minerals"); *Brazil v. Dole Packaged Foods, LLC*, 2014 WL 2466559, *15 (N.D.

21 Cal. May 30, 2014) (rejecting plaintiff's proposed full refund model for classwide

22 damages because "consumers received benefits in the form of calories, nutrition,

23 vitamins, and minerals"). Courts often refer to this measure as the "price premium."

24 *Brazil*, 2014 WL 2466559, *15 (stating the UCL and FAL "authorize the recovery

25 only of whatever price premium is attributable to Dole's use of the allegedly

26 misleading label statements…"). Only Dr. Sharp's two Price Premium Models

27 attempt to measure this difference.

28

SMRH:433634126.4

DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION TO EXCLUDE RUSSELL W. MANGUM, III, Ph.D

C.     <u>**Opinion No. 3 is Reliable.**</u>

Dr. Mangum's Opinion No. 3 is:  "Dr. Maronick's survey research conclusions, if taken at face value, do not support the Plaintiff Class' purported calculations of damages in this case."  The plaintiff claims that Opinion No. 3 is unreliable because Dr. Mangum is not qualified to testify regarding consumer survey results and his statements are purportedly not supported by citations.  (Motion at 23:12-20.)

But, as set forth above, Dr. Mangum's Opinion No. 3 concerns Dr. Sharp's damages calculations, which is properly the subject of rebuttal testimony.  He is not opining on the methodology or quality of Dr. Maronick's survey (or in this case, lack thereof).  That is the subject of Dr. Isaacson's rebuttal testimony.

The plaintiff cherry-picks a single page of the report, page 13, arguing that page 13 demonstrates that Opinion No. 3 is "not supported by any citations."  (Motion at 23:16-17.)  This is absurd.  Again, Opinion No. 3 concerns the "Plaintiff Class' purported calculations of damages in this case."  (Henry Decl., ¶ 2, Exh. A, Mangum Report, p. 3.)  Dr. Mangum's criticism of the damages calculations is supported by **<u>153 footnote citations</u>** to referenced authorities.  Page 13 is a summary of Dr. Maronick's conclusions that were relevant to Dr. Mangum's damages analysis.  No footnote citation was necessary because it is clear that the information came from the Maronick survey and report.

D.     <u>**Opinion No. 4 is Reliable.**</u>

Dr. Mangum's Opinion No. 4 is:  "Dr. Sharp's statistical analysis of Elations' sales, retail prices, and variable costs are not necessary, scientific, properly specified, or reliable to address the issue of damages in this case."

The plaintiff admits that Dr. Mangum presents a "multi-faceted attack on the reliability of Dr. Sharp's methods" and groups the attack into seven categories of criticism.  (Motion at 23:22-24:2.)  Here, the plaintiff is correct.  Dr. Mangum's critique of Dr. Sharp's methodology is extensive and well-articulated.  His

-15-

1  criticisms span 24 pages of the report.  (Henry Decl., ¶ 2, Exh. A, Mangum Report,

2  pp. 17-41.)

3       In response, the only criticism that the plaintiff specifically addresses is that

4  Dr. Sharp used incorrect time periods.  (Motion at 24:9-25:10.)  But whether or not

5  Dr. Sharp used correct time periods *is not a basis to disqualify Dr. Mangum*.  The

6  plaintiff has no answer to the six other categories of criticism other than making the

7  blanket statement that Dr. Mangum's criticisms are "*Ipse Dixit*."

8       The plaintiff's complaint seems to boil down to the fact that Dr. Mangum did

9  not run his own competing regression analysis.  *But that is not the defendant's*

10  *burden*.  It is *the plaintiff's burden* to establish the admissibility of his expert's

11  testimony and the existence of a viable damages model to maintain the case as a

12  class action.  *Comcast v. Behrend*, 133 S.Ct. 1426 (2013).  The plaintiff has not

13  done so here.

14       Dr. Mangum did not undertake Dr. Sharp's job, to support the plaintiff in the

15  case and develop a viable, reliable regression model.  That plaintiff suggests

16  Dr. Mangum should have done so incorrectly *presumes* that it is possible to do so.

17  This is not the case.  The fact that a lawsuit is filed does not mean there must be a

18  viable method to estimate damages based on regression analysis.  Because

19  regression analysis is *not necessary or appropriate in this case*, Dr. Mangum did not

20  use it to conduct his analysis of the plaintiff's damages.  A trier of fact may be

21  convinced that Dr. Sharp regression models and approaches are unreliable without

22  having to find in favor of other regression models.  His regression models are

23  flawed because, *inter alia*,  they ignore actual evidence (Report, pp. 18-19), are a

24  "conclusion-driven analysis" that assumes that the Elations' packaging affected

25  prices and excludes observations that could have suggested otherwise (Report, p.

26  20), exclude consideration of certain costs (Report, pp. 21-22), omit key variables

27  (Report, pp. 24-26) and rely on inadequate data (Report, pp. 29-30.)

28

-16-

1       The plaintiff's suggestion that Dr. Mangum ran the "same analysis" as

2   Dr. Sharp and got the "very same results" is misleading.  (Motion at 25:24:-27.)  All

3   that Dr. Mangum testified to in his deposition was that he replicated Dr. Sharp's

4   results.  That is, he simply loaded Dr. Sharp's computer programs and ran then in

5   order to verify that they produced the results that Dr. Sharp claimed they did in his

6   report.  (Henry Decl., ¶ 5, Exh. D, Mangum Depo. at 115:12-15.)  The plaintiff has

7   misunderstood the term "replicate."  Dr. Mangum did not reach the same damages

8   conclusions as Dr. Sharp.  To the contrary, Dr. Mangum dedicates 24 pages of his

9   report to explaining why Dr. Sharp's methodology was incorrect.

10      The plaintiff cites three cases – *Sobel, In re Polypropyelene Carpet Antitrust*

11  *Litigation* and *In re Live Concert Antitrust Litigation* – to suggest that Dr. Mangum

12  should have run a competing regression analysis.  (Motion at 25:19-27:7.)  But none

13  of the cases excluded a rebuttal expert on the grounds that the expert did not create a

14  competing damages model.  They are irrelevant to the plaintiff's motion.

15      In fact, as set forth in the defendant's Motion to Exclude Dr. Sharp, *In re Live*

16  *Concert Antitrust Litigation* actually confirms *why Dr. Sharp should be excluded*

17  from offering opinions or testimony in this case.  (Dkt. No. 151-1 at 12-13.)  In *In re*

18  *Live Concert Antitrust Litigation*, 863 F.Supp. 2d 966 (C.D. Cal. 2012), the court

19  excluded the plaintiff's two proposed models that purported to calculate damages by

20  analyzing the impact of defendant's conduct on the prices of concert tickets.  The

21  plaintiff's "yardstick" approach compared the average ticket prices for concerts

22  promoted by the defendant to the average ticket prices for concerts promoted by

23  other promoters.  This approach assumed that the difference in average ticket prices

24  was due entirely to the defendant's allegedly anticompetitive conduct, and did not

25  account for any other possible explanations for the disparity in ticket price.  The

26  court noted that "[c]ommon sense dictates that a more popular music artist typically

27  will command higher ticket prices than a less popular artist."  *Id*. at 975.  Because

28  "artist popularity is undoubtedly a 'major factor' in determining ticket prices," the

-17-

1 failure to include it in the analysis rendered the model "so incomplete as to be

2 inadmissible as irrelevant." *Id.* at 976 (quoting *Bazemore v. Friday*, 478 U.S. 385,

3 400, n. 10. (1986).)

4       The district court also excluded the plaintiff's "before-and-after" model,

5 because it accounted only for the variable of time. The model compared ticket

6 prices before the defendant entered the market and after, and assumed that the

7 increase in average ticket prices resulted entirely because of the defendant's

8 anticompetitive conduct. The court noted at least two other major variables that

9 would have affected prices and that should have been included, including changes in

10 artist quality and the emergence of digital downloading of music. Having failed to

11 include those "common sense" factors, the court excluded both models.

12       Similarly, Dr. Sharp's Disgorgement Models assume that the defendant's

13 change in revenue was entirely caused by two factors alone, the removal of the

14 language from the overwrap and some negative press regarding glucosamine

15 supplements. His Disgorgement Models omitted other basic, though highly

16 relevant, real world "common sense" factors, including changes with respect to

17 marketing the product, shifts in the economy in general, disposable income, changes

18 in the distribution channel, and relationship issues with retailers. The Models are

19 therefore unreliable and should be excluded.

20       Finally, that Dr. Mangum was excluded in a single case, *ePlus, Inc. v. Lawson*

21 *Software, Inc.*, has no bearing here. (Motion at 27:8-23.) The circumstances and

22 facts of that case are completely different than those in this case. In *ePlus*,

23 Dr. Mangum was excluded from testifying as the plaintiff's expert with respect to

24 the plaintiff's case in chief, not from offering rebuttal expert testimony. The

25 analysis at issue in that case related to the use of settlement license agreements (not

26 at issue in this case), converting a lump royalty payment to a running royalty (not at

27 issue in this case), and use of *Georgia-Pacific* factors to determine a reasonably

28 royalty (not at issue in this case). *ePlus* involved patents; this case involves false

-18-

1   advertising.  *ePlus* involved reasonably royalty damages; this case involves

2   disgorgement.  Additionally, this case involves regression analysis and profits

3   calculations, which were not at issue in *ePlus*.

4       Presented with a list of 40 actions in which Dr. Mangum has been engaged as

5   an expert since 2009, the plaintiff found a single case where he was excluded as a

6   result of "*Ipse Dixit*."  (Henry Decl., ¶ 2, Exh. A, Mangum Report, Exhibit 1.)  This

7   is no basis to exclude Dr. Mangum from offering his rebuttal opinions in this case.

8       **E.       Opinion No. 5 is Reliable.**

9       Dr. Mangum's Opinion No. 5 is:  "Dr. Sharp inappropriately concludes that

10  his estimates of damages applies to all class members."  The plaintiff claims that

11  Opinion No. 5 is unreliable because it relies on a flawed legal premise.  (Motion at

12  28:14-15).

13      Dr. Mangum does not rely on a flawed legal premise.  Nor does he make any

14  legal opinions.  His economic analysis evaluates whether class damages have been

15  reliably and appropriately quantified by Dr. Sharp based on the available evidence.

16  He makes the point that Dr. Sharp's damage class-wide damages calculations, in the

17  aggregate, are improper because they: (1) rely solely on averages; (2) do not account

18  for differences in purchase decision making across the class; (3) do not account for

19  lack of materiality to the class; and (4) ignores that his damages findings may not

20  apply to all class members.  (Henry Decl., ¶ 2, Exh. A, Mangum Report, pp. 40-41.)

21  Even Dr. Maronick's survey results show a lack of uniformity among class

22  members.[5]

23  _____

24  [5] When asked what the phrase meant to them, the respondents (151 for Label 1, Part

25  1; 98 for Label 1, Part 2; 148 for Label 2) gave many meanings, including:
    (1) "study/clinical study done," (2) "tested (general)," (3) "scientific study done,"

26  (4) "tested in a clinic," (5) "tested on actual people," (6) "proven to work/works,"

27  (7) "FDA approved," and (8) "don't know/not sure/nothing."  (Henry Decl., ¶ 4,
    Exh. C, Maronick Report, pp. 8-9, 12.)  Further, a significant portion of the study

28  participants (11.9% for Label 1, Part 1; 15.3% for Label 1, Part 2; **23% for Label 2**)

-19-

## VII.  DR. MANGUM'S OPINIONS ARE RELEVANT AND HELPFUL TO THE TRIER OF FACT

Finally, the plaintiff makes the unbelievable, untenable argument that Dr. Mangum's opinions "mostly" consist of "layperson observations available to any person with a pair of eyes." (Motion at 28:16-30:11.)

The plaintiff is correct that matters within "common knowledge" are not helpful to the jury and therefore not normally a proper subject for expert testimony. *Persinger v. Norfolk & Western Ry. Co*., 920 F.2d 1185, 1188 (4th Cir. 1990) ("the typical juror knows that it is more difficult to lift objects from the seated position"). However, the types of expert "conclusions" excluded as "common knowledge" are those that a layperson can make on their own, employing common sense.  *See e.g. Evans v. Mathis Funeral Home, Inc*., 996 F.2d 266, 268 (11th Cir. 1993) (expert opinion on probable cause of Plaintiff's fail (*e.g.* uneven risers, height of handrail, dim lighting) properly excluded as within juror's common knowledge); *Florek v. Village of Mundelein*, 649 F.3d 594, 603 (7th Cir. 2011) ("everyday experience teaches people how long it takes to walk from room to room.")

Dr. Mangum applies sophisticated reasoning to rebut Dr. Sharp's unfounded damages models.  Dr. Sharp's damages models (and the flaws therein) are hardly common knowledge.  If so, then Dr. Sharp should be excluded for this additional reason too.

The plaintiff argues that because Dr. Mangum does not believe that damages/restitution are appropriate in this case, he therefore "offers nothing to the fact finder."  Not so.  Dr. Mangum is a proper rebuttal witness designated to challenge Dr. Sharp's testimony to the extent Dr. Sharp is permitted to testify in this case.  But, for all the reasons stated in Defendant's Motion to Exclude Dr. Sharp,

_____

gave a variety of answers that did not fit into any of Dr. Maronick's defined categories, so he referred to those responses simply as "Miscellaneous."  (*Id*., p. 9, 12.)

DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION TO EXCLUDE RUSSELL W. MANGUM, III, Ph.D

1  Motion to Decertify, and this Opposition, Dr. Sharp should not be able to testify at

2  all, which would render the issue of Dr. Mangum's rebuttal testimony moot.

3  **VIII.  <u>CONCLUSION</u>**

4        For all the foregoing reasons, the defendant respectfully requests that the

5  Court deny the plaintiff's motion to exclude Dr. Mangum in its entirety.

6  Dated:  October 20, 2014

7                      SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

8

9              By            */s/Sascha Henry*

10                      SASCHA HENRY

11                      Attorneys for Defendant
                    The Elations Company LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-21-