UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| IN RE: INTERIOR MOLDED DOORS INDIRECT PURCHASER ANTITRUST LITIGATION | Lead Case 3:18-cv-00850-JAG |

**MEMORANDUM IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS'
MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT WITH
DEFENDANTS AND FOR CONDITIONAL CERTIFICATION OF THE
PROPOSED SETTLEMENT CLASS**

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

I.      CASE HISTORY ................................................................................................... 2

II.     SUMMARY OF THE SETTLEMENT AGREEMENT ....................................... 3

III.    ARGUMENT ......................................................................................................... 4

        A.  The Proposed Settlement Agreement Falls Within the Range of Possible Approval
            and Should Be Preliminarily Approved ...................................................... 5

            1.  The Proposed Settlement Agreement is Procedurally Sound and
                Presumptively Fair .............................................................................. 5

            2.  The Proposed Settlement Agreement Is Within the Range of Reasonableness ...... 7

        B.  The Court Should Certify the Proposed Settlement Class ........................... 9

            1.  The Requirements of Rule 23(a) are Satisfied ................................... 10
                a.  Numerosity .................................................................................. 10
                b.  Common Questions of Law and Fact ........................................... 10
                c.  Typicality .................................................................................... 11
                d.  Adequacy .................................................................................... 12

            2.  The Proposed Settlement Class Satisfies Rule 23(b)(3) ..................... 13

        C.  The Court Should Authorize IPPs to Provide Notice to Settlement Class Members
            at a Later Date, As Soon as is Reasonably Practicable ............................. 16

        D.  The Court Should Stay All Proceedings in this Action Against Defendants
            Until the Settlement Agreement is Finally Approved ................................ 16

IV.     CONCLUSION ................................................................................................... 17

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*Alloways v. Cruise Web, Inc.*,
  No. CV CBD-17-2811, 2019 WL 1902813 (D. Md. Apr. 29, 2019)........................................... 6

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)................................................................................... 9, 12, 14, 15

*Bell v. WestRock CP, LLC*,
  2019 WL 1874694 ............................................................................................... 12

*Brady v. Thurston Motor Lines*,
  726 F.2d 136 (4th Cir. 1984) .................................................................................. 10

*Broussard v. Meineke Disc. Muffler Shops, Inc.*,
  155 F.3d 331 (4th Cir. 1998) .................................................................................. 11

*Brown v. Transurban USA, Inc.*,
  318 F.R.D. 560 (E.D. Va. 2016) ............................................................................. 11

*Deiter v. Microsoft Corp.*,
  436 F.3d 461 (4th Cir. 2006) .................................................................................. 12

*Durm v. Am. Honda Fin. Corp.*,
  No. CV WDQ-13-223, 2015 WL 6756040 (D. Md. Nov. 4, 2015)........................................... 5

*Erica P. John Fund, Inc. v. Halliburton Co.*,
  563 U.S. 804 (2011)............................................................................................. 14

*Gunnells v. Healthplan Servs., Inc.*,
  348 F.3d 417 (4th Cir. 2003) .................................................................................. 12

*Hughes v. Baird & Warner, Inc.*,
  No. 76 C 3929, 1980 WL 1894 (N.D. Ill. Aug. 20, 1980)....................................................... 14

*In re Capacitors Antitrust Litig. (No. III)*, Case No. 17-md-02801-JD,
  2018 WL 5980139 (N.D. Ca. Nov. 14, 2018)................................................................... 11

*In re Catfish Antitrust Litig.*,
  826 F. Supp. 1019 (N.D. Miss. 1993)......................................................................... 14

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
    308 F.R.D. 606 (N.D. Cal. 2015) ............................................................... 15

*In re Cmty. Bank of N. Va.*,
    418 F.3d 277 (3d Cir. 2005) ..................................................................... 9

*In re Foundry Resins Antitrust Litig.*,
    242 F.R.D. 393 (S.D. Ohio 2007) ............................................................ 14

*In re Jiffy Lube Sec. Litig.*,
    927 F.2d 155 (4th Cir. 1991) ................................................................ 6, 7

*In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Practices & Prod. Liab. Litig.*,
    952 F.3d 471 (4th Cir. 2020) .................................................................. 7

*In re Mid-Atl. Toyota Antitrust Litig.*,
    564 F. Supp. 1379 (D. Md. 1983) ............................................................ 5

*In re Montgomery Cnty. Real Estate Antitrust Litig.*,
    83 F.R.D. 305 (D. Md. 1979) .................................................................. 8

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
    522 F.3d 6 (1st Cir. 2008) .................................................................... 10

*In re Titanium Dioxide Antitrust Litig.*,
    284 F.R.D. 328 (D. Md. 2012) ............................................................... 10

*In re Titanium Dioxide Antitrust Litig.*,
    No. CIV.A. RDB-10-0318, 2013 WL 5182093 (D. Md. Sept. 12, 2013) ............................. 16

*In re Vitamins Antitrust Litig.*,
    209 F.R.D. 251 (D.D.C. 2002) ................................................................ 12

*In re Vitamins Antitrust Litig.*,
    No. MDL 1285, 2001 WL 856292 (D.D.C. July 25, 2001) ....................................... 17

*In re Zetia (Ezetimibe) Antitrust Litig.*,
    No. CV 2:18MD2836, 2019 WL 6122038 (E.D. Va. Oct. 1, 2019) ............................... 4, 5

*Landis v. North American Co.*,
    299 U.S. 248 (1936) .......................................................................... 16

*Meijer, Inc. v. Warner Chilcott Holdings Co. III*,
    246 F.R.D. 293 (D.D.C. 2007) ................................................................ 11

*South Carolina Nat'l Bank v. Stone,*
   139 F.R.D. 335 (D.S.C. 1991) ................................................................. 5

*Tyson Foods, Inc. v. Bouaphakeo,*
   136 S. Ct. 1036 (2016) ........................................................................... 14

*Wal-Mart Stores, Inc. v. Dukes,*
   564 U.S. 338 (2011) ............................................................................... 10

*Wince v. Easterbrooke Cellular Corp.,*
   681 F. Supp. 2d 688 (N.D. W. Va. 2010) .............................................. 16

## <u>Rules</u>

Fed. R. Civ. P. 23(e) ........................................................................... 4, 5, 6

Fed. R. Civ. P. 23(e)(1)(B) ......................................................................... 5

Fed. R. Civ. P. 23(a)(1) ............................................................................. 10

Fed. R. Civ. P. 23(a)(2) ............................................................................. 10

Fed. R. Civ. P. 23 ................................................................................... 9, 16

Fed. R. Civ. P. 23(a) ............................................................... 9, 10, 12, 13

Fed. R. Civ. P. 23(a) and (b) ...................................................................... 9

Fed. R. Civ. P. 23(a)(3) ............................................................................. 11

Fed. R. Civ. P. 23(b) ................................................................................... 9

Fed. R. Civ. P. 23(b)(3) ........................................................... 10, 13, 14, 15

Fed. R. Civ. P. 23(e)(2) ............................................................................... 5

Fed. R. Civ. P. 23(e)(3) ............................................................................... 6

Fed. R. Civ. P. 23(f) .................................................................................... 8

Fed. R. Civ. P. 23(g) ................................................................................. 13

## <u>**Other Authorities**</u>

6 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 18:14 (4th ed. 2002) .......... 20

*Manual for Complex Litigation*, § 21.632 at 320–21 (4th ed. 2005) .............................................. 6

*Newberg on Class Actions* §§ 13:39 .......................................................................................... 4

**INTRODUCTION**

The Indirect Purchaser Plaintiffs ("IPPs") respectfully move the Court for preliminary approval of the Settlement Agreement[1] between IPPs and Defendants Masonite[2] and JELD-WEN[3] (together, "Defendants").[4] The Settlement Agreement was reached as a result of arm's-length, hard-fought negotiations, after significant litigation and discovery, and Interim Co-Lead Class Counsel believe that the Settlement Agreement is in the best interests of the class. Defendants have agreed to pay a total of $19.5 million ($19,500,000)—$9.75 million ($9,750,000) each—in monetary consideration to the Settlement Class.

IPPs and their Interim Co-Lead Class Counsel believe, for all the reasons set forth herein, that the Settlement Agreement with Defendants is in the best interest of the proposed Settlement Class and merits the Court's preliminary approval. IPPs therefore request the entry of an Order: (1) preliminarily approving the Settlement Agreement; (2) provisionally certifying the proposed Settlement Class solely for the purposes of this Settlement Agreement; (3) staying the proceedings against Defendants in accordance with the terms of the Settlement Agreement; (4) authorizing IPPs to provide notice of the Settlement Agreement to Settlement Class members at a later date as soon as practicable, in a form to be approved in advance by this Court; (5) appointing the Plaintiffs as representatives of the Settlement Class; and (6) appointing Interim Co-Lead Class Counsel for IPPs as Settlement Class Counsel and Willcox & Savage, P.C. as Liaison Counsel for the proposed Settlement Class.

---

[1] Unless otherwise set forth herein, all defined terms shall have the meaning set forth in the parties' September 4, 2020 settlement agreement ("Settlement Agreement").
[2] Masonite Corporation ("Masonite").
[3] JELD-WEN, Inc. ("JELD-WEN").
[4] The Settlement Agreement is attached as Exhibit 1 to the Declaration of Hollis L. Salzman ("Salzman Decl.").

## I.      CASE HISTORY

This is an antitrust class action filed against certain manufacturers of Interior Molded Doors ("IMDs"). IPPs allege that Defendants agreed to artificially increase and fix the prices of IMDs sold in the United States. *See* IPPs' Am. Consolidated Class Action Compl. ¶ 1 (ECF No. 134). This litigation commenced in December 2018. On December 26, 2018, the Court appointed the undersigned as Interim Co-Lead Class Counsel for the IPPs (*See* ECF No. 8).  Thereafter, IPPs filed a Consolidated Amended Complaint on February 1, 2019 (ECF No. 56) ("CAC"). On March 1, 2019, Defendants filed a motion to dismiss the CAC (ECF No.68), which the Court denied in part and granted in part on September 18, 2019 (ECF No. 106). The current, operative complaint, IPPs' Amended Consolidated Class Action Complaint, was filed on November 25, 2019 (ECF No. 134) (hereinafter, the "Complaint"). Defendants filed a motion to dismiss the Complaint (ECF No. 142), which the Court denied in part and granted in part on May 4, 2020. (ECF No. 196). Extensive fact discovery, including the review of nearly two million documents and over 20 depositions, continued through January 31, 2020. (*See* Scheduling Order, ECF No. 65).  Extensive expert discovery followed, including: (i) an opening and rebuttal report by IPPs' economic expert, Dr. Russell Mangum; (ii) four separate reports by four separate experts testifying on behalf of Defendants in response; and (iii) a rebuttal report submitted by IPPs' survey expert Dr. Thomas J. Maronick.  IPPs took the deposition of each of Defendants' four experts, and Defendants took two depositions of Dr. Mangum and one of Dr. Thomas J. Maronick.

IPPs engaged in settlement discussions with Defendant JELD-WEN from November 2019 through January 2020. IPPs resumed such discussions with both Defendants jointly in July 2020. These discussions culminated in a settlement with both Defendants for a total of $19.5 million—

$9.75 million for each Defendant—which was memorialized in a Settlement Agreement executed on September 4, 2020. *See* Salzman Decl. ¶¶ 3–5.

## II.     SUMMARY OF THE SETTLEMENT AGREEMENT

Both parties engaged in extensive arm's-length negotiations to reach the Settlement Agreement. *See id*. ¶¶ 6–7. During the course of these negotiations, the parties had numerous telephonic and email communications in which they exchanged information and settlement proposals. *Id.* Each side had the opportunity to be fully informed of the relative strengths and weaknesses of their relative positions and litigation risks. *See Id.* ¶ 8. IPPs agreed to settle with Defendants in return for their agreement to pay $9.75 million each ($19.5 million ($19,500,000) collectively) to the Settlement Class. *See* Settlement Agreement ¶¶ A.15, E.32. Within ten business days of entry of an order preliminarily approving the Settlement Agreement, each Defendant will wire $500,000 to be used towards the cost of providing notice to the Settlement Class and the cost of administration of the Settlement Fund. *Id.* ¶ E.33. In the event the Settlement Agreement does not receive Final Approval, notice and administration expenses (up to a maximum of $1 million) are not recoverable by Defendants to the extent such funds have been expended or incurred for notice and administration costs. *Id.* In return, IPPs and the proposed Settlement Class agreed to release claims against Defendants arising out of or related to the allegations in the Complaint. *Id.* ¶¶ A.12; D.29–31. The amount of the Settlement Fund will not be affected by any opt-outs to the Settlement Class. The Settlement Fund will be distributed in accordance with applicable orders of the Court for payments to the Settlement Class Members; reimbursement of notice and other claims administration costs; and payment of Court-approved service awards to Plaintiffs, attorneys' fees, and reimbursement of litigation expenses.

## III.    ARGUMENT

A class action can be settled only with the approval of the Court. *See* Fed. R. Civ. P. 23(e). The Rule 23(e) settlement approval procedure can be broken into three principal steps: (1) provisional certification of a settlement class and preliminary approval of the proposed settlement; (2) dissemination of notice of the settlement to all affected settlement class members; and (3) a final approval determination following a fairness hearing at which class members may be heard regarding the settlement, and at which counsel may introduce evidence and present arguments concerning the fairness, adequacy, and reasonableness of the settlement. *See* 4 William B. Rubenstein, Albert Conte & Herbert Newberg, *Newberg on Class Actions* §§ 13:39, *et seq.* (5th ed. 2014).

Rule 23(e) was amended, effective December 2018, to codify the factors that affect whether a court should approve a class action settlement, including for a class that has not yet been certified. Specifically, in the context of preliminary approval, the amendments direct interim class counsel to provide the court with information sufficient to enable the court to determine that the settlement is fair, reasonable, and adequate; that certification for purposes of settlement is warranted; and that notice is justified because the court will likely grant final approval to the settlement. These amendments largely mirror current practice under applicable law. As discussed in more detail below, courts in the Fourth Circuit have applied similar principles as part of their analysis of preliminary approval motions for many years. All such factors weigh in favor of preliminary approval here.

At the preliminary approval stage, the Court must determine whether "the proposed settlement is within the range of possible approval or, in other words, whether there is probable cause to notify the class of the proposed settlement." *In re Zetia (Ezetimibe) Antitrust Litig.*, No.

4

CV 2:18MD2836, 2019 WL 6122038, at *3 (E.D. Va. Oct. 1, 2019), *report and recommendation adopted*, No. 2:18MD2836, 2019 WL 5712472 (E.D. Va. Nov. 5, 2019). The Court must also decide to certify the class for settlement purposes. *Id*. at *2.

> **A.    The Proposed Settlement Agreement Falls Within the Range of Possible Approval and Should Be Preliminarily Approved.**

At the preliminary approval stage, the Court must determine that it will "likely find" at the final approval hearing that the Settlement Agreement is "fair, reasonable, and adequate." *See* Fed. R. Civ. P. 23(e)(1)(B). This preliminary determination "is not definitive—indeed, it is the court's duty 'to make clear that [a] determination permitting notice to members of the class is not a finding that the settlement is fair, reasonable, and adequate.'" *Zetia*, at *3 (citing *In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1383 (D. Md. 1983)).

A hearing is neither necessary nor required under Fed. R. Civ. P. 23(e) at the preliminary approval stage. In some cases, the initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by parties. *Manual for Complex Litigation*, § 21.632 at 320–21 (4th ed. 2005).

> **1.   The Proposed Settlement Agreement is Procedurally Sound and Presumptively Fair.**

"[T]here is a strong initial presumption that the compromise is fair and reasonable" when it is entered into during arm's-length negotiations between experienced attorneys. *See Durm v. Am. Honda Fin. Corp.*, No. CV WDQ-13-223, 2015 WL 6756040, at *4 (D. Md. Nov. 4, 2015) (citations omitted); *South Carolina Nat'l Bank v. Stone,* 139 F.R.D. 335, 339 (D.S.C. 1991). Under Rule 23(e)(2), a Court considers several factors in determining whether a settlement is "fair, reasonable, and adequate", specifically whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account

  (i) the costs, risks, and delay of trial and appeal;

  (ii) the effectiveness of any proposed method of distributing relief to the class,

  including the method of processing class member claims;

  (iii) the terms of any proposed award of attorney's fees, including timing of

  payment; and

  (iv) any agreement required to be identified under Rule 23(e)(3);[5] and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e).[6]

  In determining whether a proposed settlement was negotiated at arm's-length, in good faith, and without collusion such that it is procedurally fair, courts in the Fourth Circuit have generally considered "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the [particular] area of … class action litigation." *Alloways v. Cruise Web, Inc.*, No. CV CBD-17-2811, 2019 WL 1902813, at *9 (D. Md. Apr. 29, 2019) (quoting *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158–59 (4th Cir. 1991)).

  After analyzing these factors, the Settlement Agreement meets these standards of fairness. First, the case is at an advanced procedural posture. IPPs filed their initial complaint in

---

[5] There are no such agreements other than the Settlement Agreement.

[6] As discussed below, IPPs will file separately with the Court a motion for approval of a notice plan, claims administration process, and proposed schedule for the Final Fairness Hearing and attendant briefing, including a proposed plain of allocation (addressing 23(e)(C)(ii) and (D)).  In addition, IPPs will file a separate motion for attorneys' fees, reimbursement of expenses and awards for named Plaintiffs (addressing 23(e)(C)(iii)) contemporaneously with their final approval motion. IPPs address the other Rule 23(e) factors, in the context of Fourth Circuit precedent, *infra*.

late 2018 and vigorously litigated the case for almost two years. The Settling Parties briefed and argued motions to dismiss and reached the Settlement Agreement on the eve of a class certification hearing and filing of dispositive motions. Salzman Decl. ¶¶ 5–8. This critical time in the procedural posture of the case represented significant risk to both sides. Second, IPPs conducted extensive discovery, including reviewing 1.7 million pages of documents and taking over 20 depositions. *Id.* ¶ 8. Third, the Settlement Agreement was executed after extensive negotiations that involved compromises on both sides. *Id.* ¶¶ 3–7. Finally, IPPs are represented by experienced counsel who have litigated many complex antitrust class actions Interim Co-Lead Class Counsel are well-informed of the facts and the benefits, risks, and consequences of the Settlement Agreement with Defendants. *Id.* ¶¶ 7–8.

Thus, based on the arm's-length negotiations between the parties and the extensive discovery record at the time of settlement, Interim Co-Lead Class Counsel believe this is a fair settlement for the Settlement Class. These considerations under the Federal Rules of Civil Procedure and Fourth Circuit precedent, counsel in favor of preliminary approval of the Settlement Agreement.

## 2. The Proposed Settlement Agreement Is Within the Range of Reasonableness.

To determine reasonableness—or adequacy—the district court should consider: (1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expenses of additional litigation; (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement. *In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Practices & Prod. Liab. Litig.*, 952 F.3d 471, 484 (4th Cir. 2020) (citing *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991)). The Court must "weigh the likelihood of the plaintiffs' recovery on the

7

merits against the amount offered in settlement. It is not, of course, necessary or desirable to try the case to determine whether a settlement is adequate, since the very purpose of the settlement is to avoid the trial of sharply disputed issues and to dispense with wasteful litigation." *In re Montgomery Cnty. Real Estate Antitrust Litig.*, 83 F.R.D. 305, 315–16 (D. Md. 1979) (internal citations omitted).

Defendants vigorously deny any liability with respect to the alleged coordinated conduct and maintain IPPs suffered no damages. There are many contingencies that could affect a determination on the merits in favor of the IPPs, including the risk of whether or not a class or is certified; whether the overcharge can be demonstrated on a class-wide basis to the indirect purchaser class; assuming the class is certified, whether it will encompass fewer transactions than proposed by IPPs; whether or not Defendants will prevail on liability; and, even assuming liability is found, the amount of damages that were passed through to the indirect class. To continue to litigate the case would require substantial additional time and expense, including arguing the pending class certification motion (and the potential for a Rule 23(f) appeal by Defendants if IPPs prevail), summary judgement and *Daubert* motions, preparing for and conducting a trial, and (assuming IPPs succeed at trial) the possibility of post-trial motions and appeals. Although IPPs currently have no reason to believe there would be difficulties in recovering a litigated judgment, it is possible circumstances could change during the pendency of the litigation and potential significant delay in the case of appeals. IPPs are not aware of any opposition to the settlement, but will be able to better address this factor after notice is sent out and Settlement Class Members have an opportunity to object.

In sum, the Settlement Agreement: (1) provides substantial benefits to the Settlement Class; (2) is the result of extensive good faith negotiations between knowledgeable and skilled

counsel; (3) was entered into after extensive factual investigation, discovery, and legal analysis; and (4) in the opinion of experienced class counsel, is fair, reasonable, and adequate to the Settlement Class. Accordingly, Interim Co-Lead Class Counsel believe that the Settlement Agreement is in the best interests of the Class Members and should be preliminarily approved by the Court.

**B.       The Court Should Certify the Proposed Settlement Class.**

At the preliminary approval stage, the Court must also determine whether the proposed Settlement Class should be provisionally certified for settlement purposes. Under Rule 23, class actions may be certified for settlement purposes only. *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Certification of a settlement class must satisfy each requirement set forth in Rule 23(a), as well as at least one of the separate provisions of Rule 23(b). *Id*. at 613–14; *see also In re Cmty. Bank of N. Va.*, 418 F.3d 277, 299 (3d Cir. 2005) ("[C]ertification of classes for settlement purposes only [is] consistent with Fed. R. Civ. P. 23, provided that the district court engages in a Rule 23(a) and (b) inquiry[.]"). IPPs seek provisional certification of the following Settlement Class:

> All persons and entities that, during the Settlement Class Period, indirectly purchased one or more Standalone Interior Molded Doors in the Indirect Purchaser States, that were manufactured or sold by either Defendant, not for resale. Excluded from the Settlement Class are the following:
>
> (a)  The officers, directors or employees of any Defendant;
>
> (b)  Any entity in which any Defendant has a controlling interest, and any affiliate;
>
> (c)  Legal representatives, heirs, or assigns of any Defendant; and
>
> (d)  Purchasers of Standalone Interior Molded Doors directly from Menards.

(Settlement Agreement ¶ 17). This is, in all material respects, the same class defined in Exhibit 1 to IPPs' Reply Memorandum of Law in Support of IPPs' Motion for Class Certification filed on June 30, 2020 (ECF No. 208). As detailed below, this proposed Settlement Class meets the requirements of Rule 23(a) as well as the requirements of Rule 23(b)(3).

### 1. The Requirements of Rule 23(a) are Satisfied.

#### a. Numerosity

Federal Rule of Civil Procedure 23(a)(1) requires that the class be so numerous as to make joinder of its members "impracticable." While there is no mechanical test for numerosity, classes of forty or more generally satisfy the requirement. *Zetia,* at *2 (citing *In re Titanium Dioxide Antitrust Litig.,* 284 F.R.D. 328, 337 (D. Md. 2012)); *see also Brady v. Thurston Motor Lines*, 726 F.2d 136, 145 (4th Cir. 1984). Here, there are, at the very least, hundreds of thousands of indirect purchasers of IMDs making up the proposed Settlement Class. Therefore, there is no question that there is significantly more than forty class members. The numerosity requirement has been satisfied.

#### b. Common Questions of Law and Fact

Federal Rule of Civil Procedure 23(a)(2) requires that there be "questions of law or fact common to the class." Plaintiffs must show that resolution of an issue of fact or law "is central to the validity of each" class member's claim and "[e]ven a single [common] question will" satisfy the commonality requirement. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011).

The commonality requirement "is a low bar, and courts have generally given it a permissive application." *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 19 (1st Cir. 2008) (internal citation omitted). The requirement is satisfied if even one question is common to the class. *Wal-Mart*, 564 U.S. at 359. "[I]n the antitrust context, courts have

generally held that an alleged conspiracy or monopoly is a common issue that will satisfy [the Commonality requirement]." *Zetia*, at *2 (citing *Meijer, Inc. v. Warner Chilcott Holdings Co. III*, 246 F.R.D. 293, 300 (D.D.C. 2007)); *see also In re Capacitors Antitrust Litig. (No. III)*, Case No. 17-md-02801-JD, 2018 WL 5980139, at *5 (N.D. Ca. Nov. 14, 2018) ("[T]he claim of a conspiracy to fix prices inherently lends itself to a finding of commonality and predominance, even when the market involves different products and prices.").

Here, common questions of law or fact exist as to all members of the Settlement Class, the most important of which center on Defendants' unlawful anticompetitive conduct. These key questions include:

a. Whether Defendants engaged in a combination or conspiracy amongst themselves to fix, raise, maintain, and/or stabilize the prices of IMDs in the United States;

b. Whether the alleged conspiracy violated state antitrust, unfair competition, and/or consumer protection laws;

c. Whether Defendants unjustly enriched themselves to the detriment of members of the Class, thereby entitling members of the Class to disgorgement of all benefits derived by Defendants as alleged in the Complaint; and

d. The appropriate measure and amount of damages to which Class members are entitled.

### c.   Typicality

IPPs' named Plaintiffs' claims are also typical of the claims of the Settlement Class. Typicality under Rule 23(a)(3) is satisfied when the named plaintiffs "possess the same interest[s] and suffer the same injury as the class members." *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 338 (4th Cir. 1998); *Brown v. Transurban USA, Inc.,* 318 F.R.D. 560, 567 (E.D. Va. 2016) (citation omitted) (Typicality established where "claims arise from the same

events and are premised on the same legal theories as the claims of the class members"). "The essence of the typicality requirement is captured by the notion that as goes the claim of the named plaintiff, so go the claims of the class." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006) (internal citations omitted).

In the antitrust context, typicality is established "by plaintiffs and all class members alleging the same antitrust violations by defendants.'" *Am. Sales Co. v. Pfizer, Inc.* (*Celebrex*), Civil Action No. 2:14cv361, 2017 WL 3669604, at *11 (E.D. Va. July 28, 2017) (citing *In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 260 (D.D.C. 2002) (typicality established in price-fixing conspiracy for vitamins)).

IPPs satisfy the typicality requirement because the named Plaintiffs' claims stem from the same course of conduct that forms the basis of the claims of the Settlement Class—namely, Defendants' allegedly unlawful anticompetitive scheme to raise prices on IMDs. Defendants' purported agreement to raise prices on IMDs allegedly caused the named Plaintiffs and the Settlement Class to suffer the same injury: paying supracompetitive prices for IMDs. The claims of the named Plaintiffs are based on the same legal theories as other Settlement Class members' claims, and the typicality requirement is therefore satisfied.

> **d.  Adequacy**

"The adequacy inquiry . . . serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem*, 521 U.S. at 625; *Bell v. WestRock CP, LLC*, 2019 WL 1874694, at *4. "For a conflict of interest to prevent plaintiffs from meeting the requirement of Rule 23(a), that conflict 'must be fundamental. It must go to the heart of the litigation.'" *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 430–31 (4th Cir. 2003) (quoting 6 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 18:14 (4th ed. 2002)).

Relative to the proposed Settlement Class, the named Plaintiffs suffered the same injury, and have the same interest in proving that Defendants acted unlawfully and that IPPs paid overcharges as a result. Therefore, the adequacy requirement is also satisfied.

Moreover, IPPs are represented by experienced counsel who have previously prosecuted claims similar to those in this case, and who have vigorously litigated this case and will continue to do so. The Court previously appointed Gustafson Gluek PLLC, Robins Kaplan LLP, and Joseph Saveri Law Firm as Interim Co-Lead Class Counsel after reviewing their credentials and entertaining argument. The Court also appointed Willcox & Savage P.C. as Liaison Counsel. (ECF No. 8). Both Interim Co-Lead Class Counsel and Liaison Counsel have fulfilled their obligations and commitments required under Rule 23(g) diligently and faithfully, and are committed to continuing to do so. Over the past years, courts have recognized that Interim Co-Lead Class Counsel possess the experience and skills necessary to bring this type of case to a successful conclusion and appointed them as Co-Lead counsel in similar antitrust litigation. Counsel satisfy the requirements of Rule 23(g) and, therefore, respectfully request to be appointed as Settlement Class Counsel and Liaison Counsel.

### 2. The Proposed Settlement Class Satisfies Rule 23(b)(3).

Once Rule 23(a)'s four prerequisites are met, IPPs must show the proposed Settlement Class satisfies Rule 23(b)(3) by demonstrating that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

This Predominance requirement is satisfied where "common, aggregation-enabling, issues in the case are *more prevalent or important* than the non-common, aggregation-defeating,

13

individual issues." *Tyson Foods, Inc. v. Bouaphakeo,* 136 S. Ct. 1036, 1045 (2016) (emphasis added). A common question is one where "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Id.* By contrast, an individual question is one where "members of a proposed class will need to present evidence that varies from member to member." *Id.* "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Id.* (internal citations omitted).

In antitrust conspiracy cases such as this one, courts consistently find that common issues of the existence and scope of the conspiracy predominate over individual issues. *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393, 408 (S.D. Ohio 2007); *see also In re Catfish Antitrust Litig.*, 826 F. Supp. 1019, 1039 (N.D. Miss. 1993) ("As a rule of thumb, a price fixing antitrust conspiracy model is generally regarded as well suited for class treatment."). This follows from the central nature of a conspiracy in such cases. *Hughes v. Baird & Warner, Inc.*, No. 76 C 3929, 1980 WL 1894, at *3 (N.D. Ill. Aug. 20, 1980) ("Clearly, the existence of a conspiracy is the common issue in this case. That issue predominates over issues affecting only individual sellers."); *see also Amchem*, 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws.").

The Predominance inquiry begins with elements of the underlying cause of action. *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). In antitrust cases, this requires (1) an unlawful conspiracy to fix prices; (2) an antitrust injury, or the antitrust "impact", resulting from the Defendants' unlawful activity; and (3) the measure of damages caused by

14

Defendants' antitrust violation. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, 308 F.R.D. 606, 620 (N.D. Cal. 2015). For the reasons set forth below, IPPs satisfy the Predominance requirement because: (1) the various state claims brought by IPPs are premised on the same alleged facts and can be proven using common evidence; (2) IPPs can rely on common evidence to demonstrate antitrust impact; and (3) damages can be calculated using proof common to the Settlement Class. Provisional certification of the Settlement Class should therefore be granted.

Plaintiffs must also show that a class action is superior to individual actions, which is evaluated by four considerations:

> (A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of the class action.

Fed. R. Civ. P. 23(b)(3).

Here, any Settlement Class Member's interest in individually controlling the prosecution of separate claims is outweighed by the efficiency of the class mechanism. Hundreds of thousands of individuals and businesses purchased IMDs during the Settlement Class Period; settling these claims in the context of a class action conserves both judicial and private resources and hastens Settlement Class Members' recovery. Finally, while IPPs see no management difficulties in this case, this final consideration is not pertinent to approving a settlement class. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

Accordingly, the proposed Settlement Class is superior to other available methods (if any) for the fair and efficient adjudication of the controversy relating to Defendants.

**C.     The Court Should Authorize IPPs to Provide Notice to Settlement Class Members at a Later Date, As Soon as is Reasonably Practicable.**

Under Federal Rule of Procedure 23(e), the court must approve any proposed settlement in a class action and ensure that notice of the settlement is provided to all class members. In accordance with the Settlement Agreement, the Court should authorize IPPs to provide Notice to the Settlement Class Members at later date as soon as is reasonably practicable, in a form to be approved in advance by this Court. *See* Settlement Agreement ¶ 24. Under Rule 23, the last step in the preliminary settlement approval process is IPPs' motion for final approval of the Settlement Agreement and a final approval hearing. IPPs intend to propose a schedule for final approval as part of the Notice Motion.[7]

**D.     The Court Should Stay All Proceedings in this Action Against Defendants Until the Settlement Agreement is Finally Approved.**

A stay of proceedings against Defendants in this action is both necessary and appropriate. It is beyond dispute that this "Court possesses the inherent authority to stay a matter in furtherance of judicial economy." *Wince v. Easterbrooke Cellular Corp*., 681 F. Supp. 2d 688, 692 (N.D. W. Va. 2010) (citing *Landis v. North American Co*., 299 U.S. 248, 254–55, 57 (1936)). "Courts routinely exercise this power and grant[] stays when a pending nationwide settlement could impact the claims." *Id.* (collecting cases); *see also In re Titanium Dioxide Antitrust Litig*., No. CIV.A. RDB-10-0318, 2013 WL 5182093, at *6 (D. Md. Sept. 12, 2013) (ordering in an antitrust case that "[a]ll litigation proceedings shall remain stayed until this Court

---

[7] A proposed Final Approval Order and Judgment is attached to the Salzman Declaration as Exhibit 2.

finally approves the Settlements and enters a final judgment . . ."). Indeed, courts have granted such stays under similar circumstances. *See, e.g.*, *In re Vitamins Antitrust Litig.*, No. MDL 1285, 2001 WL 856292, at *1–2 (D.D.C. July 25, 2001) (where settlement agreement required the settling class plaintiffs to move "for a formal stay of proceedings," the court granted the requested stay, recognizing it as "reasonable" and "routine[]"). The Court should likewise stay all proceedings against Defendants in this action.

## IV.    CONCLUSION

For the foregoing reasons, IPPs respectfully request that the motion for preliminary approval be granted and that the Court enter the accompanying Proposed Order: (1) preliminarily approving the settlement; (2) provisionally certifying the proposed Settlement Class; (3) staying the proceedings against Defendants in accordance with the terms of the Settlement Agreement; (4) authorizing IPPs to provide notice of the Settlement Agreement to Settlement Class members at a later date as soon as practicable, in a form to be approved in advance by this Court; (5) appointing the Plaintiffs as representatives of the Settlement Class; and (6) appointing Interim Co-Lead Class Counsel for IPPs as Settlement Class Counsel and appointing Willcox & Savage, P.C. Liaison Counsel for the proposed Settlement Class.

*Signature Block on Next Page*

Dated:  September 14, 2020

Respectfully submitted,

INDIRECT PURCHASER PLAINTIFFS

/s/ _____
Conrad M. Shumadine (VSB #4325)
**WILLCOX & SAVAGE, P.C.**
440 Monticello Avenue, Suite 2200
Norfolk, Virginia 23510
Tel: (757) 628-5500
Fax: (757) 628-5566
Email: cshumadine@wilsav.com

*Interim Liaison Counsel for Plaintiffs and the Proposed Settlement Class*

| | |
|---|---|
| Daniel E. Gustafson | Joseph R. Saveri |
| Daniel C. Hedlund | Steven N. Williams |
| Michelle J. Looby | Kyle P. Quackenbush |
| Kaitlyn L. Dennis | **JOSEPH SAVERI LAW FIRM** |
| **GUSTAFSON GLUEK PLLC** | 601 California Street, Suite 1000 |
| 120 South 6th Street, Suite 2600 | San Francisco, CA 94108 |
| Minneapolis, MN 55402 | Tel: (415) 500-6800 |
| Tel: (612) 333-8844 | Fax: (415) 395-9940 |
| Fax: (612) 339-6622 | Email: jsaveri@saverilawfirm.com |
| Email: dgustafson@gustafsongluek.com | swilliams@saverilawfirm.com |
| dhedlund@gustafsongluek.com | kquackenbush@saverilawfirm.com |
| mlooby@gustafsongluek.com | |
| kdennis@gustafsongluek.com | |

Hollis Salzman
William V. Reiss
**ROBINS KAPLAN LLP**
399 Park Avenue, Suite 3600
New York, NY 10022
Tel: (212) 980-7400
Fax: (212) 980-7499
Email: HSalzman@RobinsKaplan.com
        WReiss@RobinsKaplan.com

*Interim Co-Lead Class Counsel for Plaintiffs and the Proposed Settlement Class*
(admitted *pro hac vice*)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 14th day of September 2020, a copy of the foregoing document was filed electronically on the Court's Electronic Case Filing (ECF) system. A Notice of Electronic Filing (NEF) will be sent by operation of the Court's ECF system to the filing party, the assigned Judge, and any registered user in the case as indicated on the NEF.

To the best of my knowledge, there are no other attorneys or parties who require service by U.S. Mail.

*/s/*_____
Conrad M. Shumadine
VSB #4325
**Willcox & Savage, P.C.**
440 Monticello Avenue, Suite 2200
Norfolk, VA 23510
Telephone: (757) 628-5500
Facsimile: (757) 628-5566
cshumadine@wilsav.com

*Interim Liaison Counsel for Plaintiffs and the*
*Proposed Indirect Purchaser Settlement Class*

19