# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | |
|---|---|
| **IN RE:   INTERIOR MOLDED DOORS INDIRECT PURCHASER ANTITRUST LITIGATION** | Lead Civil Action No. 3:18-cv-00850-JAG |

**SETTLEMENT AGREEMENT**

This agreement (the "Settlement Agreement") is made and entered into this 4th day of September, 2020 (the "Execution Date"), by and between JELD-WEN, Inc. ("JELD-WEN") and Masonite Corporation ("Masonite") (collectively, "Defendants") and the Indirect Purchaser Plaintiffs ("Plaintiffs"), individually and on behalf of a class of indirect purchasers of interior molded doors ("IMDs"), as defined in Paragraph A.9.

WHEREAS, Plaintiffs allege that Defendants participated in a conspiracy to raise, fix, maintain, or stabilize prices for IMDs in violation of Section 1 of the Sherman Act and various state unfair competition, antitrust, unjust enrichment, and consumer protection laws as set forth in the Amended Consolidated Class Action Complaint (the "Complaint");

WHEREAS, Defendants deny Plaintiffs' allegations, have asserted defenses to Plaintiffs' claims, and have not conceded or admitted any liability;

WHEREAS, arm's-length settlement negotiations have taken place between Plaintiffs' Co-Lead Counsel and counsel for Defendants, and this Settlement Agreement has been reached as a result of those negotiations;

WHEREAS, Plaintiffs have conducted an investigation into the facts and the law regarding the claims asserted in the Indirect Purchaser action pending in the United States District Court for the Eastern District of Virginia, Lead Civil Action No. 3:18-cv-00815-JAG (the "Action"),

including having (1) briefed and argued in opposition to Defendants' motion to dismiss, (2) analyzed over 1.7 million pages of documents and participated in over 20 depositions of fact and expert witnesses, and (3) briefed Plaintiffs' motion for class certification and submitted corresponding expert reports, and have concluded that a settlement with Defendants according to the terms set forth below is fair, reasonable, adequate, and in the best interest of Plaintiffs and the Settlement Class Members, as defined in Paragraph A.18; and

WHEREAS, Defendants believe that they are not liable for the claims asserted and have good defenses to Plaintiffs' claims, but nevertheless have decided to enter into this Settlement Agreement in order to avoid further expense, inconvenience, and distraction from burdensome and protracted litigation; to obtain the releases, orders, and judgment contemplated by this Settlement Agreement; and to put to rest with finality all claims that Plaintiffs have or could have asserted against the Releasees, as defined in Paragraph A.12.

NOW, THEREFORE, in consideration of the agreements and releases set forth herein and other good and valuable consideration, and intending to be legally bound, it is agreed by and between Plaintiffs and Defendants that the Action be settled, compromised, and dismissed with prejudice, without costs or expenses to Plaintiffs, the Settlement Class Members, or Defendants except as provided for herein, subject to the approval of the Court, on the following terms and conditions:

A.    **Definitions**

The following terms, as used in this Settlement Agreement, have the following meanings:

1.   "Co-Lead Counsel" means the following law firms:

> GUSTAFSON GLUEK PLLC
> 120 South 6th Street, Suite 2600
> Minneapolis, MN 55402
> Tel: (612) 333-8844
> Fax: (612) 339-6622

JOSEPH SAVERI LAW FIRM
601 California Street, Suite 1000
San Francisco, CA 94108
Tel: (415) 500-6800
Fax: (415) 395-9940

ROBINS KAPLAN LLP
399 Park Avenue, Suite 3600
New York, NY 10022
Tel: (212) 980-7400
Fax: (212) 980-7499

2.      "Court" means the United States District Court for the Eastern District of Virginia.

3.      "Defendants" means JELD-WEN and Masonite.

4.      "Escrow Account" means the account with the Escrow Agent that holds the Settlement Fund.

5.      "Escrow Agent" means the bank into which the Settlement Fund shall be deposited and maintained as set forth in Section E of this Agreement.

6.      "Execution Date" means the date on which this Settlement Agreement is entered into and executed by all Settling Parties.

7.      "Final Approval" means that the approval of the Settlement Agreement by the Court has become final when (a) the Court has entered (i) a final order certifying the Settlement Class described in Paragraph A.17 and approving this Settlement Agreement under Federal Rule of Civil Procedure 23(e), and (ii) a final judgment dismissing the Action against Defendants with prejudice and without costs; and (b) the time for appeal or to seek permission to appeal from the Court's approval of the Settlement and the entry of a final judgment has expired or, if appealed, approval of the Settlement and the final judgment have been affirmed in their entirety by the Court of last resort to which such appeal has been taken and such affirmance is no longer subject to

further appeal or review. Neither the provisions of Federal Rule of Civil Procedure 60 nor the All Writs Act, 28 U.S.C. § 1651, shall be taken into account in determining the above-stated times.

8.   "Indirect Purchaser States" means Arizona, Arkansas, California, Florida, Hawaii, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, New Hampshire, New York, North Carolina, North Dakota, Oregon, South Carolina, Tennessee, Utah, West Virginia, and Wisconsin.

9.   "Interior Molded Doors" or "IMDs" means a type of interior door made through a process of sandwiching a wood frame and hollow or solid core between two molded doorskins, rather than making the entire door from solid wood.  IMDs include slabs, which may be sold as a single slab or as "bifolds," as well as pre-hung IMDs, which consist of an IMD slab affixed to a door frame.

10.   "Opt-Out Deadline" means the deadline set by the Court for the timely submission of requests by Settlement Class Members to be excluded from the Settlement Class.

11.   "Plaintiffs" means Carlisle Construction Company, LLC, Margaret Preece, Trinidad Corona, Melanie Lopez, Robyn Adler, John Van Horn, Juan the Builder, Inc., EventHost, Inc. d/b/a National Builders, Marty Fahncke, Heller General Contracting, Richard Ranalli, Kenneth Dallamora, Arteva Construction, LLC, Sawbill Companies, Inc., Brenda Massey, Allison Dellatore, Orange Construction Solutions, Inc., Larry Day Fox, Patricia Olson, Chris Best, Julie Whalen, Nigel Gay, Geoffrey Hurdle, Mountain Top Customs, LLC d/b/a Mountain Top Custom Construction, Ronald Kade Asay, Collin Salazar Real Estate LLC, Albert Magnone Contracting & Remodeling, and Aker Custom Carpentry, Inc., as representatives of the Settlement Class.

12. "Releasees" means JELD-WEN and Masonite, and all of their respective current and former, direct and indirect parents, owners, subsidiaries, affiliates, divisions, predecessors, successors, assigns, insurers, and shareholders; and all respective current and former officers, directors, principals, partners, members, heirs, attorneys, representatives, agents, and employees of each of the foregoing entities.

13. "Releasors" means Plaintiffs and all persons and entities in the Settlement Class, as defined in Paragraph 17, including all of their current and former, direct and indirect parents, owners, subsidiaries, affiliates, divisions, predecessors, successors, assigns, insurers, and shareholders, and all respective current and former officers, directors, principals, partners, members, heirs, attorneys, representatives, agents, and employees of each of the foregoing entities; and assignees of any claim that is subject to release, as described in Paragraphs D.29 through D.31.

14. "Settlement" means the settlement of the Action contemplated by this Settlement Agreement.

15. "Settlement Amount" means $9.75 million ($9,750,000.00) in United States currency from each of JELD-WEN and Masonite.

16. "Settlement Class Period" means the period from and including March 1, 2014, to and including the Execution Date.

17. "Settlement Class" is defined as follows:

All persons and entities that, during the Settlement Class Period, indirectly purchased one or more Standalone Interior Molded Doors in the Indirect Purchaser States, that were manufactured or sold by either Defendant, not for resale. Excluded from the Settlement Class are the following:

(a) The officers, directors or employees of any Defendant;

(b) Any entity in which any Defendant has a controlling interest, and any affiliate;

(c) Legal representatives, heirs, or assigns of any Defendant; and

5

       (d)     Purchasers of Standalone Interior Molded Doors directly from Menards.

18.     "Settlement Class Member" means a member of the Settlement Class that does not timely and validly elect to be excluded from the Settlement Class.

19.     "Settlement Fund" shall be the Settlement Amount plus any income or accrued interest earned on that amount.

20.     "Settling Parties" means Plaintiffs and Defendants.

21.     "Standalone Interior Molded Doors" or "Standalone IMDs" means IMDs, including single slabs, bifolds, and pre-hung IMDs, that are not incorporated as part of a larger product (such as part of a purchase of a home) or service (such as installation of the door in a home).

**B.**    **Stipulation to Class Certification**

22.     The Settling Parties hereby stipulate for purposes of this Settlement only that the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(3) are satisfied and that subject to Court approval, the Settlement Class, as defined in Paragraph 17, shall be certified for settlement purposes as to Defendants. The Settling Parties stipulate and agree to the certification of the Settlement Class for purposes of this Settlement only. Should, for whatever reason, the Settlement not receive Final Approval or otherwise be rescinded, the Settling Parties' stipulation to class certification as part of the Settlement shall become null and void, and no party may cite to or refer to the Court's approval of the Settlement Class as persuasive or binding authority with respect to any motion to certify any such class or any Defendants' motion opposing such certification. Defendants expressly reserve their rights to oppose class certification should this Settlement not be granted Final Approval.

C.    **Approval of this Settlement Agreement and Dismissal of the Action**

23.    The Settling Parties agree to make reasonable best efforts to take actions to effectuate this Settlement Agreement and shall cooperate to promptly seek and obtain the Court's preliminary and Final Approval of this Settlement Agreement, including without limitation seeking the Court's approval of procedures (including the dissemination of class notice under Federal Rules of Civil Procedure 23(c) and (e), and scheduling a final fairness hearing) to obtain Final Approval of the Settlement and the final dismissal with prejudice of the Action as to Defendants and the Releasees.

24.    On or before September 14, 2020, Plaintiffs shall submit to the Court a motion requesting that the Court preliminarily approve the Settlement (the "Preliminary Approval Motion"). Thereafter, as soon as practicable, Plaintiffs shall submit to the Court a motion authorize dissemination of notice to the Settlement Class (the "Notice Motion"). The Preliminary Approval Motion shall include: (a) a proposed form of order preliminarily approving the Settlement; and (b) a proposed form of final judgment order—both of which shall be furnished to Defendants for review within forty-eight (48) hours of filing. Plaintiffs will consider in good faith any reasonable and timely proposed edits by Defendants. Notwithstanding the foregoing, if Plaintiffs include information in the Motion and accompanying material regarding the proposed distribution of Settlement Fund in this Action, such information shall not be subject to Defendants' review and prior approval. If the Settlement is preliminarily approved by the Court, as soon as reasonably practicable, Plaintiffs shall provide notice to the Settlement Class in accordance with Federal Rule of Civil Procedure 23 and Due Process.

25.    Within ten (10) calendar days after this Settlement Agreement and the accompanying motion papers seeking preliminary approval are filed with the Court, Defendants

shall cause notice of the Settlement Agreement to be served upon appropriate State and Federal officials as provided in the Class Action Fairness Act, 28 U.S.C. § 1715.

26.     Following the Court's approval of the Preliminary Approval and Notice Motions, Plaintiffs shall promptly seek Final Approval of the Settlement and entry of a final judgment order as to Defendants, the text of which shall be furnished to Defendants for review. Plaintiffs will consider in good faith any reasonable and timely proposed edits by Defendants. The text shall include the following provisions:

(a)     certifying the Settlement Class as described in Paragraph 17 under Federal Rule of Civil Procedure 23(b)(3), solely for the purpose of this Settlement;

(b)     granting final approval of the Settlement as fair, reasonable, and adequate within the meaning of Federal Rule of Civil Procedure 23(e), and directing the consummation of the Settlement according to its terms;

(c)     directing that, as to Defendants, the Action be dismissed with prejudice and, except as provided for herein, without costs;

(d)     reserving exclusive jurisdiction over the Settlement and this Settlement Agreement, including its administration and consummation, to the United States District Court for the Eastern District of Virginia, Richmond Division; and

(e)     directing entry of final judgment as to Defendants.

Plaintiffs shall inform Defendants of the date by which Plaintiffs will move for Final Approval, at least fourteen (14) calendar days before filing the motion.

27.     On the Execution Date, the Settling Parties shall be bound by the terms of this Settlement Agreement, and this Settlement Agreement shall not be rescinded except in accordance with Section G.

28.     Neither this Settlement Agreement (whether or not it becomes final) nor the final judgment, nor any and all negotiations, documents, and discussions associated with them, shall be deemed or construed to be an admission by Defendants, or evidence of any violation of any statute

or law or of any liability or wrongdoing whatsoever by Defendants, or of the truth of any of the claims or allegations contained in any complaint or any other pleading filed in the Action; and evidence thereof shall not be discoverable or used directly or indirectly, in any way, whether in the Action, or in any other arbitration, action or proceeding whatsoever, against Defendants. Neither this Settlement Agreement, nor any of its terms and provisions, nor any of the negotiations or proceedings connected with it, nor any other action taken to carry out this Settlement Agreement by Defendants, shall be referred to, offered as evidence, or received in evidence in any pending or future civil, criminal, or administrative action, arbitration, or proceedings, except in a proceeding to enforce this Settlement Agreement, or to defend against the assertion of Released Claims, as defined in Section D, or as otherwise required by law.

**D.**    **Releases, Discharge, and Covenant Not to Sue**

29.    Upon Final Approval and in consideration of payment of the Settlement Amount into the Escrow Account as specified in Section E, Releasees shall be fully, finally, and forever released and discharged by Releasors from any and all causes of action asserted or that could have been or could still be alleged or asserted, including without limitation claims, demands, actions, suits, injuries, causes of action, damages, judgments, losses, and rights of action of any nature, whenever and however incurred (whether actual, punitive, treble, compensatory, or otherwise), including without limitation costs, fees, expenses, penalties, and attorneys' fees, whether class, individual, or otherwise in nature, that Releasors, or any of them, ever had, now has, or hereafter can, shall, or may have, directly, representatively, derivatively, or in any other capacity, against Releasees (or any of them), whether known or unknown, suspected or unsuspected, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, asserted or unasserted, whether in law or equity or otherwise, in whole or in part or arising out of or relating in any way to any conduct, act, or omission of Releasees (or any of them) prior to and including the Execution Date, based

upon any of the facts, occurrences, transactions, agreements, conspiracies, communications, announcements, notices, or other matters alleged in the Action, under the Sherman Act, 15 U.S.C. § 1, *et seq.*, or any other antitrust, unjust enrichment, unfair competition, unfair practices, trade practices, price discrimination, unitary pricing, racketeering, contract, civil conspiracy or consumer protection law, whether under federal, state, local or foreign law, or any facts, circumstances, acts or omissions arising out of or related to the allegations, including without limitation in any other complaints filed in this Action or any related actions (the "Released Claims"); provided, however, that nothing herein shall release: (1) any claim relating to any direct purchase of IMDs from Defendants; (2) any claim involving any negligence, personal injury, breach of contract, bailment, failure to deliver lost goods, damaged or delayed goods, product defect, securities, or similar claims relating to IMDs; and (3) any claim for damages under the laws of any jurisdiction other than an Indirect Purchaser State; (4) any claim relating to any purchase of a service or a product other than a Standalone IMD; and (5) any claim relating to the purchase of a Standalone IMD from Menards. Releasors covenant and agree that they will not, after the Execution Date of this Settlement Agreement, seek to recover from any Releasee based, in whole or in part, upon any of the Released Claims or conduct at issue in the Released Claims.

30.     In addition to the provisions of Paragraph 29, Releasors hereby expressly waive and release, upon Final Approval of this Settlement Agreement, any and all provisions, rights, and benefits conferred by Section 1542 of the California Civil Code, which states:

> Certain claims not affected by general release. A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party;

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code. Each Releasor may hereafter discover facts other than or different from those the Releasor knows or believes to be true with respect to the claims that are released pursuant to provisions of Paragraph 29, but each Releasor hereby expressly waives and fully, finally, and forever settles and releases, upon this Settlement Agreement becoming final, any known or unknown, suspected or unsuspected, contingent or non-contingent claim with respect to the subject matter of the provisions of Paragraph 29, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

31.     Upon Final Approval, Defendants shall be deemed to have fully released Releasors from any claims relating to the institution or prosecution of the Action.

**E.      Payment of the Settlement Amount**

32.     The Settlement Amount includes the full and complete cost of the settlement notice, claims administration, Settlement Class Members' compensation, class representatives' service awards, attorneys' fees, and reimbursement of all actual expenses of the Action, any other litigation costs of Plaintiffs, and all applicable taxes, if any, assessable on the Settlement Fund or any portion thereof (subject to Court approval as appropriate). In no event shall each of JELD-WEN's or Masonite's individual liability with respect to the Settlement exceed $9.75 million ($9,750,000.00). Releasors shall look solely to the Settlement Amount for settlement and satisfaction against the Releasees of all Released Claims and shall have no other recovery against the Releasees.

33.     Within ten (10) business days of the entry of an order preliminarily approving the Settlement, JELD-WEN and Masonite shall each pay or cause to be paid by wire transfer $500,000 of the Settlement Amount to an account at a bank to be designated by Co-Lead Counsel, to be used

towards the cost of providing notice to the Settlement Class and the costs of administration of the Settlement Fund. The notice and administration expenses (up to the maximum of $1 million ($1,000,000)) are not recoverable by Defendants if this Settlement does not receive Final Approval or is terminated to the extent such funds have actually been expended or incurred for notice and administration costs.

34.     No later than ten (10) business days after entry of the final judgment order, each Defendant shall pay or cause to be paid by wire transfer the remainder of that party's Settlement Amount into the Escrow Account. The Settling Parties understand and agree that neither Masonite nor JELD-WEN shall be responsible for the payment of the other's share of the Settlement Amounts. Those amounts, along with any interest earned thereon and any funds that may remain from the $1 million ($1,000,000) provided for notice costs pursuant to Paragraph 33 shall be held in escrow and constitute the Settlement Fund. The Escrow Account and the Settlement Fund shall be administered in accordance with the provisions of Section F.

35.     Subject to Court approval, any person or entity seeking exclusion from the Settlement Class must file a written request for exclusion by the Opt-Out Deadline. Any person or entity that files such a request shall be excluded from the Settlement Class and shall have no rights with respect to this settlement. Subject to Court approval, a request for exclusion that does not comply with all of the provisions set forth in the applicable Court-approved notice of settlement to be disseminated to the members of the Settlement Class will be invalid, and the person(s) or entity(ies) serving such an invalid request shall be deemed Settlement Class Member(s) and shall be bound by the Agreement upon final approval. Co-Lead Counsel shall, within ten (10) business days of the Opt-Out Deadline, provide Defendants with a list and copies of all opt-out requests

they receive in the Action and shall file with the Court a list of all members of the Settlement Class who timely and validly opted out of the settlement.

36.     Subject to Court Approval, any member of the Settlement Class who submits a valid and timely request for exclusion will not be a Settlement Class Member and shall not be bound by the terms of this Agreement. Defendants reserve all of their legal rights and defenses, including but not limited to any defenses relating to whether any excluded member of the Settlement Class is a member of the Settlement Class or has standing to bring any claim against Defendants.

37.     Subject to Court Approval, in the written request for exclusion, the member of the Settlement Class must state his, her, or its full name, street address, and telephone number. Further, the member of the Settlement Class must include a statement in the written request for exclusion that he, she, or it wishes to be excluded from the Settlement Class. Any member of the Settlement Class that submits a written request for exclusion must also identify the number of IMDs purchased during the Settlement Class Period.

### F.     The Settlement Fund

38.     The Escrow Account shall be established as a "qualified settlement fund" as defined in Section 1.468B-1(a) of the United States Treasury Regulations.

39.     The cost of settlement notice, claims administration, class representatives' incentive awards, attorneys' fees, reimbursement of all actual expenses of the Action, any other litigation costs of Plaintiffs, and all applicable taxes, if any, shall be paid from the Settlement Fund.

40.     The Settlement Fund shall be invested in short-term instruments backed by the full faith and credit of the United States Government or fully insured in writing by the United States Government, or money market funds rated Aaa and AAA, respectively, by Moody's Investor Services and Standard and Poor's.

41.     Defendants shall not have any responsibility, financial obligation, or liability whatsoever with respect to the investment, distribution, use, or administration of the Settlement Fund, including, but not limited to, the costs and expenses of such investment, distribution, use, or administration, except as expressly otherwise provided in this Settlement Agreement.

42.     Each Defendant's only payment obligation is to pay the Settlement Amount. Except as provided in Paragraphs E.33 and 39, Defendants shall not be liable for any costs, expenses, or fees of any of Plaintiffs' respective attorneys, experts, advisors, agents, or representatives. Payment of all such costs, expenses, and fees, as approved by the Court, shall be paid only out of the Settlement Fund.

43.     The distribution of the Settlement Fund shall be administered pursuant to a plan of allocation (the "Plan of Allocation") proposed by Co-Lead Counsel and subject to the approval of the Court. If such approval is not obtained, Co-Lead Counsel shall revise the Plan of Allocation as necessary until approval of the Court is obtained. Defendants shall have no participatory or approval rights with respect to the Plan of Allocation, and the Court's rejection of the Plan of Allocation shall not affect the validity or enforceability of this Settlement Agreement.

**G.    Rescission**

44.     If the Court refuses to approve this Settlement Agreement or any material part hereof, including if the Court does not certify the Settlement Class in accordance with the specific Settlement Class definition set forth in this Settlement Agreement; or if such approval is modified in material way or set aside on appeal; or if a final judgment order with the provisions generally described in Paragraph C.26 is not entered; or if the Court enters the final judgment order and appellate review is sought, and on such review, such final judgment order is not affirmed in material part, then Defendants, on the one hand, and Plaintiffs, on the other, shall each, in their sole discretion, have the option to rescind this Settlement Agreement in its entirety (except as

hereafter provided in this Paragraph) by written notice to the Court and to counsel for the other Settling Parties filed and served within fourteen (14) calendar days of the entry of an order not granting court approval or Final Approval, or having the effect of disapproving or materially modifying the terms of the Settlement Agreement. A modification or reversal on appeal of any amount of the Settlement Fund that the Court authorizes to be used to pay Plaintiffs' attorneys fees or litigation expenses shall not be deemed a modification of all or part of the terms of this Settlement Agreement or such final judgment order, and shall not be grounds for rescission.

45.     A decision by either Defendant to rescind this Settlement Agreement, for any reason under this Section G will have the effect of rescinding the Settlement Agreement as to both Defendants.

46.     If the Settlement or Settlement Agreement is rescinded for any valid reason, then the balance of the Settlement Amount in the Settlement Fund, excluding any unpaid expenses, shall be returned to Defendants within fourteen (14) calendar days. In the event the Settlement Agreement is rescinded, the funds already properly expended for the costs of notice and administration will not be returned to Defendants. Additionally, in such event, funds to pay for notice, administration expenses, or taxes that have been properly incurred but not yet paid will also not be returned to Defendants.

47.     If the Settlement or Settlement Agreement is rescinded for any valid reason before payment of claims to Settlement Class Members, then the Settling Parties will be restored to their respective positions in the Action as of the Execution Date. This includes the tolling of all applicable statutes of limitation for class and individual claims. In that event, the Action will proceed as if this Settlement Agreement had never been executed, and this Settlement Agreement, and representations made in conjunction with this Settlement Agreement, may not be used in the

Action or otherwise for any purpose. Plaintiffs and Defendants expressly reserve all rights if the Settlement Agreement does not become effective or if it is rescinded by Plaintiffs or Defendants pursuant to this Section G.

48.     Defendants' right to rescind this Settlement Agreement is a material term of this Settlement Agreement.

49.     Defendants reserve all of their legal rights and defenses with respect to any potential Settlement Class Member that seeks to exclude itself from the Settlement.

**H.     Taxes**

50.     Co-Lead Counsel or their agents shall be solely responsible for filing all informational and other tax returns necessary to report any net taxable income earned by the Settlement Fund, shall file all informational and other tax returns necessary to report any income earned by the Settlement Fund, and shall be solely responsible for taking out of the Settlement Fund, when legally required, any tax payments, including interest and penalties due on income earned by the Settlement Fund. All taxes (including any interest and penalties) due with respect to the income earned by the Settlement Fund shall be paid from the Settlement Fund. Defendants shall have no responsibility to make any filings related to the Settlement Fund and shall have no responsibility to pay taxes on any income earned by the Settlement Fund. However, in the event the Settlement does not become final and any funds including interest or other income are returned to Defendants, Defendants shall be responsible for the payment of all taxes (including any interest or penalties), if any, on said interest or other income. Defendants make no representations regarding, and shall not be responsible for, the tax consequences of any payments made pursuant to this Settlement Agreement to Co-Lead Counsel or to any Settlement Class Member.

## I.   **Miscellaneous**

51.     This Settlement Agreement constitutes the entire agreement between Plaintiffs and Defendants pertaining to the Settlement of the Action against Defendants. This Settlement Agreement may be modified or amended only by a writing executed by Plaintiffs and Defendants.

52.     Neither this Settlement Agreement nor any negotiations or proceedings connected with it shall be deemed or construed to be an admission by any party or any Releasee of any wrongdoing or liability or evidence of any violation by Defendants of any federal or state statute or law either in the Action or in any related actions or proceedings, and evidence thereof shall not be discoverable or used, directly or indirectly, in any way, except in a proceeding to interpret or enforce this Settlement Agreement. This Settlement Agreement represents the settlement of disputed claims and does not constitute, nor shall it be construed as, an admission or disparagement of the correctness of any position asserted by any party, or an admission of liability or lack of liability or of any wrongdoing or lack of any wrongdoing by any party, or as an admission of any strengths or weaknesses of Plaintiffs' claims or Defendants' defenses. The Settlement Amount is paid as a commercial settlement and not as a fine. Defendants specifically deny any wrongdoing or liability by any of the Releasees.

53.     This Settlement Agreement may be executed in counterparts by Plaintiffs and Defendants, and a fax or scanned signature shall be deemed an original signature for purposes of executing this Settlement Agreement.

54.     Neither Plaintiffs nor Defendants shall be considered the drafter of this Settlement Agreement or any of its provisions for the purpose of any statute, the common law, or rule of interpretation that would or might cause any provision of this Settlement Agreement to be construed against the drafter.

55.     The provisions of this Settlement Agreement shall, where possible, be interpreted in a manner to sustain their legality and enforceability.

56.     The Court shall retain jurisdiction over the implementation and enforcement of this Settlement Agreement and the Settlement.

57.     Any disputes between Plaintiffs and Defendants concerning this Settlement Agreement shall, if they cannot be resolved by the Settling Parties, be submitted to the Court.

58.     This Settlement Agreement shall be governed and interpreted according to the substantive laws of the Commonwealth of Virginia, without regard to its choice of law or conflict of law principles.

59.     Each Settling Party acknowledges that it has been and is being fully advised by competent legal counsel of such party's own choice and that such party's execution of this Settlement Agreement is with the advice of such party's counsel and of such party's own free will. Each Settling Party represents and warrants that it has sufficient information regarding the transaction and the other Settling Parties to reach an informed decision, and has, independently and without relying upon the other Settling Parties, and based on such information as it has deemed appropriate, made its own decision to enter into this Settlement Agreement, and was not fraudulently or otherwise wrongfully induced to enter into this Settlement Agreement.

60.     Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Settlement Agreement, subject to approval of this Settlement Agreement by the Boards of Directors of JELD-WEN and Masonite, and their approval to execute this Settlement Agreement. This Settlement Agreement shall have no effect until approved by both Defendants' Boards of Directors. Defendants shall notify Co-

Lead Counsel within seven (7) business days of the Execution Date as to whether such approval has been obtained.

Agreed to on behalf of Indirect Purchaser Plaintiffs and the Proposed Class:

*Conrad M. Shumadine*

Conrad M. Shumadine (VSB No. 4325)
WILLCOX & SAVAGE, P.C.
440 Monticello Avenue, Suite 2200
Norfolk, Virginia 23510
Tel: (757) 628-5500
Fax: (757) 628-5566
cshumadine@wilsav.com

*Interim Liaison Counsel for Indirect
Purchaser Plaintiffs and the Proposed Class*

*Daniel C. Hedlund*

Daniel E. Gustafson (*admitted pro hac vice*)
Daniel C. Hedlund (*admitted pro hac vice*)
Michelle J. Looby (*admitted pro hac vice*)
Kaitlyn L. Dennis (*admitted pro hac vice*)
GUSTAFSON GLUEK PLLC
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
Tel: (612) 333-8844
Fax: (612) 339-6622
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com
kdennis@gustafsongluek.com

*Steve Williams*

Joseph R. Saveri (*admitted pro hac vice*)
Steve N. Williams (*admitted pro hac vice*)
Kyle P. Quackenbush (*admitted pro hac vice*)
JOSEPH SAVERI LAW FIRM
601 California Street, Suite 1000
San Francisco, CA 94108
Tel: (415) 500-6800
Fax: (415) 395-9940
jsaveri@saverilawfirm.com
swilliams@saverilawfirm.com
kquackenbush@saverilawfirm.com

*Hollis Salzman*

Hollis Salzman (*admitted pro hac vice*)
William V. Reiss (*admitted pro hac vice*)
ROBINS KAPLAN LLP
399 Park Avenue, Suite 3600
New York, NY 10022
Tel: (212) 980-7400
Fax: (212) 980-7499
HSalzman@RobinsKaplan.com
WReiss@RobinsKaplan.com

*Interim Co-Lead Counsel for Indirect Purchaser Plaintiffs and the Proposed Class*

Agreed to on behalf of Defendant JELD-WEN, Inc.:

_Craig S Primis_

Craig S. Primis (*admitted pro hac vice*)
Katherine R. Katz (*admitted pro hac vice*)
Tracie Lynn Bryant (*admitted pro hac vice*)
Matthew S. Owen (*admitted pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue N.W.
Washington, DC 20004
Tel: (202) 389-5000
Fax: (202) 389-5200
cprimis@kirkland.com
katherine.katz@kirkland.com
tracie.bryant@kirkland.com
matt.owen@kirkland.com

Richard Cullen (VA Bar No. 16765)
Brian C. Riopelle (VA Bar No. 36454)
Seth A. Schaeffer (VA Bar No. 74509)
McGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
Tel: (804) 775-1000
Fax: (804) 775-1061
rcullen@mcguirewoods.com
briopelle@mcguirewoods.com
sschaeffer@mcguirewoods.com

*Counsel for Defendant JELD-WEN, Inc.*

Agreed to on behalf of Defendant Masonite Corporation:

Nathan P. Eimer (*admitted pro hac vice*)
Vanessa G. Jacobsen (*admitted pro hac vice*)
Benjamin Waldin (*admitted pro hac vice*)
Alec Solotorovsky (*admitted pro hac vice*)
EIMER STAHL
224 S. Michigan Avenue, Suite 1100
Chicago, IL 60604
Tel: (312) 660-7600
Fax: (312) 692-1718
neimer@eimerstahl.com
vjacobsen@eimerstahl.com
bwaldin@eimerstahl.com
asolotorovskv@eimerstahl.com

Calvin W. Fowler, Jr. (VSB No. 27982)
Lynn K. Brugh, IV (VSB No. 36778)
Brendan O'Toole (VSB No. 71329)
Gregory Crapanzano (VSB No. 93044)
WILLIAMS MULLEN
200 South 10th Street, Suite 1600
Richmond, VA 23219
Tel: (804) 420-6000
Fax: (804) 420-6507
wfowler@williamsmullen.com
lbrugh@williamsmullen.com
botoole@williamsmullen.com
gcrapanzano@williamsmullen.com

*Counsel for Defendant Masonite Corporation*

21